IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO,<br><br>     Plaintiff<br><br>  v.<br><br>FEDERAL LABOR RELATIONS AUTHORITY, FEDERAL SERVICE IMPASSES PANEL, and UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION,<br><br>     Defendants | )<br>)<br>)<br>)<br>)<br>)  No. 1:08CV00481 (RMC)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION OF THE FEDERAL LABOR RELATIONS AUTHORITY AND THE FEDERAL SERVICE IMPASSES PANEL TO DISMISS COMPLAINT, OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Federal Service Impasses Panel and the Federal Labor Relations Authority (collectively "FLRA defendants") hereby move this Court to dismiss the complaint for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted. Alternatively, pursuant to Fed. R. Civ. P. 56, the FLRA defendants respectfully move the Court to enter summary judgment for the FLRA defendants and against the plaintiffs. As grounds for this alternative motion, defendants state that there are no material facts in dispute in this action and that the FLRA defendants are entitled to judgment as a matter of law.[*]

---

[*] On May 1, 2008, the Plaintiff, the National Air Traffic Controllers Association, AFL-CIO (NATCA), filed a Motion for Summary Judgment. This Motion to Dismiss includes the FLRA defendants' response to NATCA's summary judgment motion.

In support of this Motion, the FLRA defendants refer the Court to the attached Memorandum in Support of Motion to Dismiss Complaint which is submitted with attached exhibits, and a Statement of Material Facts Not in Dispute.

Respectfully submitted.

_____/s/_____
ROSA M. KOPPEL
Solicitor


_____/s/_____
WILLIAM R. TOBEY
Deputy Solicitor

_____/s/_____
JAMES F. BLANDFORD
Attorney

Federal Labor Relations Authority
1400 K Street, NW.
Washington, DC  20424-0001
(202) 218-7999; FAX (202) 343-1007

May 20, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL AIR TRAFFIC CONTROLLERS )
ASSOCIATION, AFL-CIO, )
                              Plaintiff )
                                     )
                 v. )      No. 1:08CV00481 (RMC)
                                       )
FEDERAL LABOR RELATIONS AUTHORITY, )
FEDERAL SERVICE IMPASSES PANEL, and )
UNITED STATES DEPARTMENT OF )
TRANSPORTATION, FEDERAL AVIATION )
ADMINISTRATION, )
                         Defendants )

## MEMORANDUM IN SUPPORT OF FLRA DEFENDANTS'
## MOTION TO DISMISS COMPLAINT

### I. INTRODUCTION

The National Air Traffic Controllers Association, AFL-CIO (NATCA) seeks to invoke the jurisdiction of this Court in a suit against the Federal Labor Relations Authority ("FLRA" or "Authority"), the Federal Service Impasses Panel (Panel), and the United States Department of Transportation, Federal Aviation Administration (FAA).  As shown below, the Court should dismiss this case against the FLRA and the Panel (collectively "FLRA defendants") for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  Alternatively, the Court should grant summary judgment in favor of the FLRA defendants.

The FLRA is the federal agency responsible for administering the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2000) (Statute). *See* 5 U.S.C. §§ 7104 and 7105.  Under the Statute, the specific responsibilities of the

Authority include adjudicating unfair labor practice complaints, negotiability disputes, bargaining unit and representational election matters, and resolving exceptions to arbitration awards. *See* 5 U.S.C. § 7105(a)(2). More generally, the Authority is charged with "provid[ing] leadership in establishing policies and guidance relating to matters under the [Statute]." 5 U.S.C. § 7105(a)(1).

The Panel is "an entity within the [FLRA], the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1); *see also Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499 (D.C. Cir. 1984) (*Brewer*). The administrative action at issue here is a decision of the Panel declining to assert jurisdiction over a case involving NATCA and the FAA.

It is well established that decisions of the Panel are not subject to judicial review in either the district or the circuit courts. *Brewer*, 735 F.2d at 1498. Furthermore, the narrow exception to this rule under *Leedom v. Kyne*, 358 U.S. 184 (1958) (*Leedom*) is not applicable here. *See Nat'l Air Traffic Controllers Ass'n, et al. v. FSIP and FLRA*, 437 F.3d 1256, 1263-64 (D.C. Cir. 2006) (*NATCA II*). Accordingly, the Court should grant the motion to dismiss, or in the alternative, grant summary judgment for the FLRA defendants.

2

## II. STATEMENT OF THE CASE

This case arose out of contract negotiations between the FAA and NATCA. In April 2006, NATCA filed a request with the Panel for assistance in resolving impasses in these negotiations. In response, the FAA contended that the FAA personnel system, authorized under 49 U.S.C. §§ 106(l) and 40122, divested the Panel of jurisdiction over the collective bargaining dispute. After receiving legal arguments on the issue of the Panel's jurisdiction from the parties, the Panel declined to assert jurisdiction over the bargaining dispute.

Subsequently, NATCA filed charges with the FLRA's General Counsel (General Counsel) against the FAA alleging, among other things, that the FAA's failure to accede to the Panel's jurisdiction and its ultimate implementation of contract terms constituted unfair labor practices (ULPs) under § 7116(a) of the Statute. The General Counsel determined not to issue complaints in these cases.

Now NATCA seeks from this Court a judgment declaring that the Panel has jurisdiction over the parties' impasses and an award of appropriate injunctive relief. This is the second time that NATCA has attempted to bring the question of the Panel's authority before this Court. After the Panel declined to assert jurisdiction in substantially identical circumstances in 2004, this Court ruled that it was without jurisdiction to review the Panel's determination. *Nat'l Air Traffic Controllers Ass'n, et*

3

*al. v. FSIP and FLRA*, No. 04-0138, 2005 U.S. Dist. LEXIS 2964 (D. D.C. Feb. 22, 2005), *aff'd* 437 F.3d 1256 (D.C. Cir. 2006). (*NATCA I*).[2]

## III. STATEMENT OF FACTS

### A.    The Panel

The Panel was originally created by Executive Order 11491, 3 C.F.R. 861, 864 (1966-70 Compilation) and was designated as an entity within the Federal Labor Relations Council (FLRC). *See Brewe*r, 735 F.2d at 1499 n.2. The FLRC was created by the Executive Order as the central policy-making and adjudicative agency for federal sector labor-management relations. Exec. Order 11491, § 4. The Panel was composed of at least three members appointed by the President, serving on a part-time basis. Under the Executive Order, the Panel had the authority to recommend procedures for the resolution of collective bargaining impasses or to settle the impasse "by appropriate action." Exec. Order 11491, §§ 5 and 17. Under regulations promulgated by the Panel, the Panel also had the discretion to "dismiss" a request for assistance in resolving an impasse. 5 C.F.R. § 2471.6 (1978).

---

[2]  The Court's Memorandum Opinion (Mem.) is attached as Exhibit (Exh.) 1.

4

The Panel was reconstituted by § 7119 of the Statute essentially as it had existed under the Executive Order, as an "entity within" the FLRA.[3] *See Brewer*, 735 F.2d at 1499-1500.   Under the Statute, the Panel is composed of a Chairman and at least six other members, all of whom are appointed by the President "solely on the basis of fitness to perform duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations." 5 U.S.C. § 7119(c)(2).  The Panel's function continued to be to "provide assistance in resolving negotiation impasses between agencies and exclusive representatives" of agency employees.  5 U.S.C. § 7119(c)(1).  Any party engaged in collective bargaining under the Statute may request the Panel's assistance in resolving an impasse.  5 U.S.C. § 7119(b).   Upon the submission of a request for Panel assistance, the Panel "shall promptly investigate any impasse presented to it" and assist the parties in resolving the impasse through whatever means the Panel "may consider appropriate." 5 U.S.C. § 7119(c)(5)(A).  If the parties are unable to settle the dispute voluntarily, the Panel then "may . . . take whatever action is necessary and not inconsistent with [the Statute] to resolve the impasse." 5 U.S.C. § 7119(c)(5)(B)(iii).

---

[3]   The Statute was enacted as part of the Civil Service Reform Act of 1978. *See generally Dep't of Defense v. FLRA*, 659 F.2d 1140, 1144 (D.C. Cir 1981).

The Panel has published regulations implementing § 7119 of the Statute. 5 C.F.R. §§ 2470.1-2473.1 (2008). As relevant here, the regulations provide that after having conducted an investigation and having given due consideration, the Panel shall either: "[d]ecline to assert jurisdiction in the event that it finds that no impasse exists or that there is other good cause for not asserting jurisdiction. . . .;" or take jurisdiction and take steps to resolve the impasse. 5 C.F.R. § 2471.6(a)(1).

## B.    The FAA personnel system

The genesis of this litigation is found in the FAA's unique personnel system. Congress has granted the FAA the authority to establish its own personnel system, exempt from many of the provisions of Title 5 of the United States Code and other federal personnel laws. The relevant statutory provisions are found at 49 U.S.C. §§ 106(l) and 40122. The general grant of the authority to establish the FAA personnel system appears at 49 U.S.C. § 40122(g)(1), where Congress required that, in order to address "the unique demands on the agency's work force[,]" the system must provide for flexibility in "hiring, training, compensation, and location of personnel." 49 U.S.C. § 40122 (g)(1). Despite the FAA's exemption from many of the provisions of Title 5 that govern federal employment, certain of these provisions were to continue to apply.

Among those provisions remaining applicable to the FAA are those in the Statute relating to collective bargaining.[4]  49 U.S.C. § 40122(g)(2).

Thus, the FAA was to be subject to the collective bargaining requirements of the Statute, including § 7119 relating to impasse resolution procedures before the Panel. However, Congress established a special procedure for the FAA to follow when negotiating over "changes to the [FAA] personnel management system."  49 U.S.C § 40122(a).  Specifically, 49 U.S.C § 40122(a) provides:

(a) In General.—

(1) Consultation and negotiation.--In developing and making changes to the personnel management system initially implemented by the Administrator of the Federal Aviation Administration on April 1, 1996, the Administrator shall negotiate with the exclusive bargaining representatives of employees of the Administration certified under section 7111 of title 5 and consult with other employees of the Administration.

(2) Mediation.--If the Administrator does not reach an agreement under paragraph (1) with the exclusive bargaining representatives, the services of the Federal Mediation and Conciliation Service shall be used to attempt to reach such agreement. If the services of the Federal Mediation and Conciliation Service do not lead to an agreement, the Administrator's

---

[4]  As the current 49 U.S.C. § 40122(g) was originally enacted, the FAA was exempt from the Statute.  Pub. L. No. 104-50 § 347, 109 Stat. 460 (1995).  Congress subsequently amended § 347 and added "chapter 71, relating to labor management relations[,]" to those provisions of Title 5 that were to remain applicable to the FAA. Pub. L. 104-122 § 1, 110 Stat. 876 (1996).  The legislative evolution of the relevant provisions of Title 49 is set out in the D.C. Circuit's decision in *NATCA II*, 437 F.3d at 1259-60.

proposed change to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change, along with the objections of the exclusive bargaining representatives to the change, and the reasons for such objections, to Congress. The 60-day period shall not include any period during which Congress has adjourned sine die.

Finally, Congress expressly provided the FAA's Administrator with the authority to fix the compensation of FAA employees. 49 U.S.C. § 106(l). Section 106(l) also provides that, "[i]n fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels."[5]  49 U.S.C. § 106(l).

---

[5]  Generally, where employee compensation is not fixed by law, but is left to the discretion of the employing agencies, agencies are obligated to bargain over compensation. *See FDIC v. FLRA*, 977 F.2d 1493, 1494 (D.C. Cir. 1992) (citing *Fort Stewart Schools v. FLRA*, 495 U.S. 641 (1990)).

## C.  Factual background and related prior litigation[6]

### 1.  Background to *NATCA I*

In 2003, separate contract negotiations between the FAA and NATCA, and the FAA and the Professional Airways Systems Specialists, AFL-CIO (PASS), another union that represented FAA employees, resulted in impasses.  In July 2003, NATCA and PASS filed requests for Panel assistance in resolving the bargaining impasses.  In response to the unions' petitions to the Panel, the FAA contended that 49 U.S.C. §§ 106 and 40122(a) divested the Panel of jurisdiction over the collective bargaining disputes at issue.  Thereafter the Panel solicited, and the parties provided, legal arguments on the issue of the Panel's jurisdiction.  *NATCA I*, Mem. at 2-3.

On January 9, 2004, the Panel issued its decisions.  In each case, the Panel concluded that "it is unclear whether the Panel has the authority to resolve the parties' impasse[s]."  *NATCA I*, Mem. at 3.  The Panel noted that it was not endorsing, either

---

[6]  With the following exceptions, the FLRA defendants do not object to NATCA's Statement of Material Facts as to Which There is no Genuine Dispute, submitted with NATCA's Motion for Summary Judgment.  In ¶ 12, NATCA states that it has been prevented from presenting the issue of the Panel's jurisdiction to the FLRA.  Similarly, in ¶ 14, NATCA states that the issue "has evaded review by the FLRA."  Initially, whether FLRA review was available is a question of law rather than fact.  Secondly, and as demonstrated below (pp. 22-24), the FLRA processes were available and NATCA pursued them.

explicitly or implicitly, the FAA's statutory interpretations. *NATCA II*, 437 F.3d at 1262.

### 2.    This Court's decision in *NATCA I*

Following receipt of the Panel's decisions, NATCA and PASS jointly filed suit in this Court seeking an order declaring that the Panel's decisions violated specific provisions of the Statute, and requiring the Panel to resolve the impasses as requested by the unions. The Court dismissed the case for lack of jurisdiction.

The Court first identified the "relevant question" in the proceeding as "who should determine the interplay between [the Statute] . . . and the particular statutory provisions that affect labor relations at the FAA[.]" *NATCA I*, Mem. at 5. Finding that the Authority is the appropriate forum to decide the question in the first instance, the Court concluded "that it is without jurisdiction" to entertain the union's complaint. *Id.* at 7. In so holding, the Court stated that what was at issue before the Panel was essentially an "obligation to bargain issue" and that the Panel does not have the authority to resolve such issues (citing *Am. Fed. of Gov't Employees v. FLRA*, 778 F.2d 850, 854 (D.C. Cir. 1985) and *Interpretation and Guidance*, 11 F.L.R.A. 626, 628 (1983)). *Id.* at 6-7. According to the Court, such questions are to be decided by the Authority. *Id.* at 7.

10

Noting the general rule that decisions of the Panel are not subject to judicial review, the Court also stated that a district court could exercise jurisdiction to invalidate a Panel order made "in excess of its delegated powers and contrary to a specific prohibition of the [Statute]" (citing *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1500-1501 (D.C. Cir. 1984) (in turn citing *Leedom v. Kyne*, 358 U.S. 184, 188 (1958)). *NATCA I*, Mem. at 8.  However, according to the Court, "[t]he Panel's refusal to resolve the parties' impasse in light of arguable legal questions concerning the Panel's authority cannot be deemed a violation of a clear and mandatory statutory provision." *Id.* at 8 (internal quotations omitted).  In so finding, the Court recognized that the Panel must initially determine whether the impasse at issue is subject to its procedures, noting that impasses *in fact* may not necessarily be impasses legally subject to procedures under § 7119 of the Statute. *Id.* at 7-8.

For the reasons discussed above, the Court entered an order dismissing the unions' complaints. *NATCA I*, Mem. at 8.

### 3.    The D.C. Circuit's decision in *NATCA II*

On appeal, the D.C. Circuit affirmed this Court's decision.  Citing *Brewer*, the circuit court first stated that determinations of the Panel are not subject to judicial review.  *NATCA II*, 437 F.3d at 1262.  In addition, the court held that *Leedom* jurisdiction is not available.  In that regard, the court stated that by declining to assert

11

jurisdiction where there was a reasonable question as to jurisdiction, the Panel did not violate a specific and unambiguous statutory directive as required for *Leedom* jurisdiction. *Id.* at 1264. The court also held that the proper forum for addressing the underlying question of the Panel's jurisdiction is the Authority, and that "if the Unions' interpretation of the disputed statutory provisions is correct, then . . . they have viable unfair labor practice charges that can be raised and addressed by the FLRA." *Id.* at 1265.

### 4.    The current dispute between FAA and NATCA

By letter dated April 7, 2006 (Exh. 2), NATCA requested assistance of the Panel in resolving a collective bargaining impasse resulting from negotiations between NATCA and the FAA. On May 8, 2006, the FAA filed with the Panel its "Agency Statement of Position on Jurisdiction" (Exh. 3) arguing, as it had in the past, that 49 U.S.C. §§ 106 and 40122(a) divested the Panel of jurisdiction over the collective bargaining disputes at issue. On May 17, 2008, NATCA submitted its Statement of Position (Exh. 4) contending that the Panel did have jurisdiction over the parties' impasse.

The Panel issued its determination (Exh. 5) on July 6, 2006, declining to assert jurisdiction over the impasse. The Panel stated that the FAA had raised arguable questions concerning whether the panel has authority to resolve the collective

bargaining disputes at issue.  The Panel further stated that it was not endorsing, either explicitly or implicitly, the FAA's statutory interpretations.

NATCA also filed ULP charges arising from these negotiations.  As relevant here, one of the charges alleged that the FAA's implementation of contract terms without submission of the impasses to the Panel constituted bargaining in bad faith under § 7116(a)(5) of the Statute.  On July 25, 2007, the FLRA's San Francisco Regional Director (RD) dismissed this charge.  Exh. 6.  In dismissing NATCA's charges, the RD stated that "fairly construed, [49 U.S.C.] §§ 40122(a)(1) and (2) replaced the provisions of the Statute for resolution of impasses." [7]  Exh. 6 at  2.

NATCA filed the instant action on March 21, 2008.

---

[7]  A subsequent appeal of the RD's determination to the General Counsel and a request for reconsideration were denied without further analysis. The denials of the appeal and the request for reconsideration are attached as part of Exhibit 6.

13

# IV. ARGUMENT

As it did in *NATCA I*, NATCA is asking the Court to review and effectively overturn a determination of the Panel to decline to assert jurisdiction over NATCA's bargaining dispute with the FAA. As discussed above, this Court has held, and the D.C. Circuit has affirmed, that the Court was without jurisdiction to entertain such a claim. Nothing in the circumstances of this case warrants a different result. Accordingly, the complaint in this case should be dismissed.

## A.  NATCA's complaint should be dismissed for lack of subject matter jurisdiction

### 1.  Decisions of the Panel are not subject to district court jurisdiction

The D.C. Circuit first looked at the question of judicial review of Panel determinations in *Brewer*. There, after examining the relevant statutory provisions and legislative history, the D.C. Circuit held that Congress precluded direct judicial review of Panel orders, except in extraordinary circumstances. 735 F.2d at 1498. In so holding, the court held that the specific statutory scheme in § 7123(a) for judicial review renders inapplicable general jurisdictional grants that might otherwise provide original jurisdiction over Panel decisions in federal district courts. *Id.* at 1500. Applying *Brewer*, this Court held in *NATCA I* that, with very narrow exceptions not there present, it was without jurisdiction to review a Panel determination to decline

14

jurisdiction in circumstances substantially identical to those present in the instant case. *NATCA I*, Mem. at 8. On appeal, the D.C. Circuit affirmed, stating that "an order of [the Panel] is not reviewable except in extraordinary circumstances, because Congress precluded direct judicial review of Panel orders." *NATCA II*, 437 F.3d at 1262 (internal quotations omitted).

### 2.    The narrow *Leedom* v. *Kyne* exception to nonreviewability does not apply in this case.

#### a.    The *Leedom* exception is extremely narrow

Under *Leedom*, an otherwise nonreviewable agency action may be reviewable where an agency has "contravened a clear and specific statutory mandate." *United Food and Commercial Workers, Local 400 v. NLRB*, 694 F.2d 276, 278 (D.C. Cir. 1982). The D.C. Circuit has stressed that the *Leedom* exception is "intended to be of extremely limited scope." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988) (internal quotes omitted) (*Griffith*). Noting that the limitations on *Leedom* jurisdiction are "nearly insurmountable," the D.C. Circuit has held that *Leedom* jurisdiction is not available to review agency decisions for errors of fact or law. *United States Dep't of Justice, Fed. Bureau of Prisons v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir. 1993); *see also Boire v. Greyhound*, 376 U.S. 473, 481 (1964) (*Leedom* should "not . . . be extended to permit plenary district court review of [National Labor Relations] Board orders . . . whenever it can be said that an erroneous assessment of the particular facts

15

. . . has led it to a conclusion that does not comport with law."). As further explained by the D.C. Circuit, "[g]arden variety errors of law or fact are not enough [to confer *Leedom* jurisdiction]." *Griffith*, 842 F.2d at 493.

Analysis of the Supreme Court's *Leedom* decision demonstrates the rigorous character of the exception's requirements. In *Leedom,* the National Labor Relations Board (NLRB) had determined that employees, who were held not to be professional employees within the meaning of the National Labor Relations Act (NLRA), 29 U.S.C. § 152(12), should be included in a bargaining unit of acknowledged professional employees. *Leedom*, 358 U.S. at 185-86. This determination by the Board directly contravened the NLRA's explicit requirement that "'the Board shall not (1) decide that any unit is appropriate . . . if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for inclusion in such unit.'" *Id.* at 188-89 (quoting § 9(b) of the NLRA, 29 U.S.C. § 159(b)). Because of the NLRB's patent violation of the NLRA, the Court affirmed the district court's assertion of jurisdiction.

As will be discussed below, the Panel here, unlike the NLRB in *Leedom*, did not contravene a clear and specific statutory mandate.

16

### b.    *Leedom* Jurisdiction Is Not Available in this Case

As noted above, this Court has previously determined that *Leedom* jurisdiction was not available in circumstances substantially identical to those in this case.  As the Court stated, "[t]he Panel's refusal to resolve the parties' impasse in light of arguable legal questions concerning the Panel's authority cannot be deemed a violation of a clear and mandatory statutory provision." *NATCA I*, Mem. at 8.  The D.C. Circuit affirmed stating that it also could not conclude that the Panel's decision not to assert jurisdiction contravened a clear and specific statutory mandate. *NATCA II*, 437 F.3d 1264.

This Court and the court of appeals both properly determined that the Panel acts within its statutory authority when it declines jurisdiction in the face of colorable challenges to its power to act.  The Panel's authorities and obligations are set out in § 7119(c)(5) of the Statute.[8]  Although § 7119(c)(5)(A) makes no explicit provision

---

[8] Section 7119(c)(5) states in pertinent part:

> 5)(A) The Panel or its designee shall promptly investigate any impasse presented to it under subsection (b) of this section. The Panel shall consider the impasse and shall either—
> (i) recommend to the parties procedures for the resolution of the impasse; or
> (ii) assist the parties in resolving the impasse through whatever methods and procedures, including factfinding and recommendations, it may consider appropriate to accomplish the purpose of this section.
>
> <span style="float:right">(footnote continued on next page)</span>

17

for a Panel determination not to assert jurisdiction over a bargaining dispute, such authority is implicit.  As this Court reasonably held, in considering any request for assistance filed by a party to a collective bargaining dispute, the Panel must always determine in the first instance whether the matter is subject to the Panel's authority. *NATCA I*, Mem. at 7.  To accept the union's invitation to rule otherwise would convert § 7119 into a mandate compelling the Panel to sweep aside valid legal impediments to its exercise of jurisdiction in order to resolve any dispute satisfying the generic definition of an "impasse."  Such a contention is thoroughly implausible.  *See United States v. Wilson*, 290 F.3d 347, 361 (D.C. Cir. 2002) (statutory constructions leading to absurd results are disfavored).  In this connection, agencies have implicit powers that are necessary to implement the legislative design.  *See Ass'n of Admin. Law Judges v. FLRA*, 397 F.3d 957, 962 (D.C. Cir. 2005).  Certainly, for the Panel to make a threshold determination regarding its authority over a dispute, or the parties thereto, is such a necessary tool in implementing the Statute.

---

(B) If the parties do not arrive at a settlement after assistance by the Panel under subparagraph (A) of this paragraph, the Panel may—
    (i) hold hearings;
    (ii) administer oaths, take the testimony or deposition of any person under oath, and issue subpenas as provided in section 7132 of this title; and
    (iii) take whatever action is necessary and not inconsistent with this chapter to resolve the impasse.

18

Further, declining to assert jurisdiction in cases where there are colorable arguments regarding the Panel's authority to resolve an impasse is a long-standing and recognized administrative practice.   The D.C. Circuit has noted that where Congress has not overturned by legislation a consistent course of administrative practice, congressional approval may be implied.   *Office of Communication of the United Church of Christ v. FCC*, 707 F.2d 1413, 1429 n.50 (D.C. Cir. 1983).   The Panel's practice has its origin under the Executive Order program that governed federal sector labor relations before enactment of the Statute. In that regard, regulations promulgated by the Panel under the Executive Order program provided that the Panel was not bound to resolve every "impasse" presented to it.  Instead, the Panel could "dismiss" a request for assistance as it deemed appropriate. *See* 5 C.F.R. § 2471.6 (1978).

After the Statute's enactment, the Panel evidenced its intent to continue the practice of, where appropriate, dismissing requests for assistance by promulgating regulations incorporating that practice.  In this regard, the Panel's current regulations provide that after having conducted an investigation and having given due consideration, the Panel shall either:  "[d]ecline to assert jurisdiction in the event it finds that no impasse exists or that there is other good cause for not asserting

jurisdiction . . . .;" or assert jurisdiction and take steps to resolve the impasse.[9] 5 C.F.R. § 2471.6(a). This action reflects the Panel's understanding that Congress intended that the authorities the Panel exercised under the Executive Order were to continue under the Statute. *See NTEU v. MSPB*, 743 F.2d 895, 917 (D.C. Cir. 1984) (deference is due agency interpretation where the rule promulgated was a continuation of a long-standing practice that Congress evidenced no intent to change and where rule is promulgated more or less contemporaneously with enactment of the statute).

Finally, the Panel's authority to decline jurisdiction has been expressly noted with approval by the Authority and the D.C. Circuit. In that regard, the Authority first examined the Panel's power to determine its jurisdiction in *Interpretation and Guidance*, 11 F.L.R.A. 626, 628-629 (1983). Rejecting a claim that the Panel's authority pursuant to § 7119 of the Statute to resolve impasses under the Statute is "virtually limitless," the Authority held that the Congress had not granted the Panel the power to resolve underlying duty-to-bargain questions. *Interpretation and Guidance*, 11 F.L.R.A. at 626-28. Rather, the Authority ruled, these questions must be resolved by the Authority in the first instance. *Id.* at 629. As the Authority discussed, questions

---

[9] Section 2471.6(a) was initially promulgated as an interim regulation on July 30, 1979, approximately 6 month's after the effective date of the Statute. 44 Fed. Reg. 44740, 44774 (1979). The rule became final on January 17, 1980. 45 Fed. Reg. 3482, 3521 (1980). Section 2471.6(a) has continued unchanged to the present.

concerning the "obligation to bargain" include not only disputes over whether the obligation extends to the matter proposed to be bargained (negotiability disputes), but also whether the agency has an obligation to bargain in the particular circumstances of the case. *Id.* at 628. The former class of disputes is subject to resolution in negotiability appeals to the Authority under § 7117(c) of the Statute. *Id.* The latter class is resolved under the Authority's ULP procedures set forth in § 7118 of the Statute. *Id.* Subsequently, the D.C. Circuit Court affirmed that the Panel could not resolve questions regarding a party's obligation to bargain and noted the Panel's practice of declining to assert jurisdiction when "threshold questions exist concerning a party's obligation to bargain over a proposal." [10]  *Am. Fed. of Gov't Employees v. FLRA*, 778 F.2d 850, 854 (D.C. Cir. 1985).

---

[10] Here the Panel was being asked to resolve questions concerning the FAA's obligation to bargain. Under the Statute, impasse resolution procedures are simply one aspect of the collective bargaining process. *Interpretation and Guidance*, 11 F.L.R.A. at 628 n.5; *NATCA II*, 437 F.3d at 1265. The question raised by the FAA was whether its obligation to bargain under the Statute and other applicable laws extended to participation in the Panel's impasse resolution procedures. Applying the rule first set forth in the *Interpretation and Guidance*, the Panel properly declined to resolve the underlying obligation to bargain questions and, therefore, declined to assert jurisdiction over the case.

In sum, there is no basis for *Leedom* jurisdiction.  The Panel acted within its statutory authority when it declined to assert jurisdiction in the face of colorable challenges to its power to act.  *NATCA II*, 437 F.3d at 1264.

### 3.    NATCA had an appropriate forum to pursue its concerns

As the D.C. Circuit pointed out, even if NATCA's view of the Panel's authority was correct, it could still not assert district court jurisdiction under *Leedom* because "[NATCA has] not been 'wholly deprived . . . of a meaningful and adequate means of vindicating [their alleged] statutory rights." *NATCA II*, 437 F.3d at 1264-65 (quoting *Bd. of Governors, Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 43 (1991)).  In agreement with this Court, the D.C. Circuit stated that the appropriate forum to seek vindication of NATCA's alleged statutory rights is the FLRA's ULP procedure under § 7118 of the Statute.  *NATCA II*, 437 F.3d at 1264-65.

As discussed above (p. 12), NATCA pursued the course suggested by the courts and filed ULP charges with the General Counsel.  However, in her unreviewable discretion, the General Counsel refused to issue complaints based on NATCA's charges.[11]  Contrary to NATCA's contention (Complaint at ¶19), this fact does not

---

[11]  It is beyond dispute that determinations of the General Counsel of the FLRA, just as those of her counterpart with the National Labor Relations Board (NLRB), not to issue a ULP complaint are not subject to judicial review.  *Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752-53 (D.C. Cir. 1997).

make this case "ripe for the Court's jurisdiction." NATCA pursued vindication of its alleged statutory rights through the appropriate mechanism. *See Karahalios v. NFFE, Local 1263*, 489 U.S. 527, 533-34 (1989) (*Karahalios*) (FLRA's processes are the exclusive means of vindicating rights under the Statute). No private judicial remedy exists to enforce rights granted under the Statute. *Id.*

That the General Counsel's determination not to issue a complaint is final and unreviewable does not render the process inadequate. Modeling the Statute's ULP procedures after those of the NLRB, Congress created a comprehensive remedial scheme for the disposition and review of the merits of ULP charges, including the unreviewable discretion of the General Counsel to issue complaints. *See NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 131 (1987) (explaining the purposeful and comprehensive nature of the NLRB's ULP procedure). Where Congress has provided such a comprehensive scheme, courts "should conclude that Congress provided precisely the remedies it considered appropriate." *Karahalios*, 489 U.S. at 533.

As demonstrated above, and contrary to NATCA's contentions, NATCA had meaningful and adequate means of vindicating its alleged statutory rights. Accordingly, such a contention cannot form the basis for this Court's jurisdiction. [12]

### 4.    District court jurisdiction is not available under the Declaratory Judgment Act

NATCA mistakenly contends (Plaintiff's Memorandum of Law in Support of Summary Judgment (Memorandum of Law) at 3) that "[the] Court has jurisdiction and authority under 28 U.S.C. § 2201 [the Declaratory Judgment Act]" to resolve the matter at issue here. However, it is well established that the Declaratory Judgment Act "is not an independent source of federal jurisdiction." *C&E Serv., Inc. of Washington v. Dist. of Columbia Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)). Rather, "the availability of declaratory relief presupposes the existence of a judicially remediable right." *Id.* (internal quotes omitted). Federal courts may not declare a plaintiff's rights under a federal statutory scheme that Congress intended to be enforced exclusively through an

---

[12]    Even if it could be demonstrated that Authority review of the underlying question concerning the FAA's obligations was not available, *Leedom* jurisdiction remains foreclosed. As the D.C. Circuit has stressed, "it is not the unavailability of a remedy which triggers the [*Leedom*] exception, but the violation of a clear statutory demand." *Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 499 (D.C. Cir. 1980). Since there has been no such violation in this case, the Court is without jurisdiction.

administrative process if the administrative process is itself unreviewable. *Id.* As discussed above (p. 22-23), Congress intended that the FLRA's processes here involved are to be the exclusive means of vindicating the pertinent rights under the Statute and that no private judicial remedy exists to enforce such rights. *Karahalios,* 489 U.S. at 533-34.

Further, none of the cases cited by NATCA (Memorandum of Law at 3) are to the contrary. In all of the cited cases, jurisdiction was either not in dispute or based on federal statutes other than the Declaratory Judgment Act. Moreover, the "compelling circumstances" cited by NATCA (Memorandum of Law at 3-4) allegedly "warranting the issuance of a declaratory judgment" are not drawn from judicial discussions of the appropriateness of declaratory relief, but rather from considerations of ripeness (*Nat'l Automatic Laundry and Cleaning Council v. Shultz*, 443 F.2d 689, 695 (D.C. Cir. 1971)) or mootness (*Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122 (1974); *PETA v. Gittens*, 396 F.3d 416, 423 (D.C. Cir. 2005). Neither ripeness nor mootness is at issue here.

In this case, NATCA has not established an independent jurisdictional basis for its request for declaratory relief. Accordingly, the Complaint should be dismissed.

**B.    The Union Has Failed To State a Claim Upon Which Relief Can Be Granted**

If a defendant can show that the plaintiff does not set forth a set of facts consistent with allegations of a plausible entitlement to relief, then the complaint should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). Much of what has been said in Part A. of this argument, concerning the Court's lack of subject matter jurisdiction, applies here as well. Even taking the allegations in the NATCA's complaint as true, NATCA cannot establish any facts sufficient to overcome the well-established prohibition on judicial review of Panel decisions.

## V.  CONCLUSION

For the foregoing reasons, this complaint should be dismissed because the Court lacks subject matter jurisdiction and because the complaint fails to state a claim upon which relief can be granted.  In the alternative, this Court should grant summary judgment in favor of the defendants and deny NATCA's motion for summary judgment.

Respectfully submitted.

_____/s/_____
ROSA M. KOPPEL
Solicitor


_____/s/_____
WILLIAM R. TOBEY
Deputy Solicitor

_____/s/_____
JAMES F. BLANDFORD
Attorney

Federal Labor Relations Authority
1400 K Street, NW.
Washington, DC  20424-0001
(202) 218-7999; FAX (202) 343-1007

May 20, 2008

27

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL AIR TRAFFIC CONTROLLERS )
ASSOCIATION, AFL-CIO, )
                     Plaintiff )
                              )
         v. )      No. 1:08CV00481 (RMC)
                              )
FEDERAL LABOR RELATIONS AUTHORITY, )
FEDERAL SERVICE IMPASSES PANEL, and )
UNITED STATES DEPARTMENT OF )
TRANSPORTATION, FEDERAL AVIATION )
ADMINISTRATION, )
                   Defendants )

## FLRA DEFENDANTS' STATEMENT OF MATERIAL
## FACTS NOT IN DISPUTE

Defendants Federal Labor Relations Authority (FLRA) and Federal Service

Impasses Panel (Panel) hereby submit their Statement of Material Facts Not in Dispute.

1. The National Air Traffic Controllers Association, AFL-CIO (NATCA) is a

labor organization within the meaning of § 7103(a)(4) of the Federal Service Labor-

Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2000) (Statute) and was at all

times material to this case the exclusive bargaining representative for units of

employees of the Federal Aviation Administration (FAA).

2. The FLRA is an independent agency of the Executive Branch of the United

States Government established pursuant to the Statute. 5 U.S.C. §§ 7104, 7105. The

Panel is "an entity within the [FLRA], the function of which is to provide assistance in

resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119.

3. In April 2006, pursuant to § 7119(b) of the Statute, NATCA filed a request for Panel assistance in resolving a bargaining impasse.

4. In response to NATCA's request for Panel assistance, the FAA filed a "Statement of Position on Jurisdiction", contending that 49 U.S.C. §§ 106 and 40122(a) divested the Panel of jurisdiction over collective bargaining between the unions and the FAA. Thereafter, NATCA submitted a Statement of Position contending that the Panel did have jurisdiction over the parties' impasse.

5. On July 6, 2006, the Panel declined to the assert jurisdiction over the matter. The Panel concluded that "it is unclear whether the Panel has the authority to resolve the parties' impasse", and that these questions "must be addressed in an appropriate forum before the Panel commits its resources to assist the parties in resolving the merits of their impasses". *See* Exhibit 5 attached to Memorandum In Support Of FLRA Defendants' Motion To Dismiss Complaint.

6. On or about July 11, 2006 NATCA filed unfair labor practice charges with the FLRA's General Counsel raising, among other things, the question of the Panel's jurisdiction. On July 25, 2007, the FLRA's San Francisco Regional Director (RD) dismissed the charges. In dismissing NATCA's charges, the RD stated that

2

"fairly construed, [49 U.S.C.] §§ 40122(a)(1) and (2) replaced the provisions of the Statute for resolution of impasses." *See* Exhibit 6 attached to Memorandum In Support Of FLRA Defendants' Motion To Dismiss Complaint.   Subsequent appeals to the General Counsel were denied.

     Respectfully submitted.


              /s/
           ROSA M. KOPPEL
           Solicitor


              /s/
           WILLIAM R. TOBEY
           Deputy Solicitor

              /s/
           JAMES F. BLANDFORD
           Attorney

           Federal Labor Relations Authority
           1400 K Street, NW.
           Washington, DC  20424-0001
           (202) 218-7999; FAX (202) 343-1007

May 20, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL AIR TRAFFIC CONTROLLERS )
ASSOCIATION, AFL-CIO, )
                        Plaintiff )
                      )
       v. )      No. 1:08CV00481 (RMC)
                      )
FEDERAL LABOR RELATIONS AUTHORITY, )
FEDERAL SERVICE IMPASSES PANEL, and )
UNITED STATES DEPARTMENT OF )
TRANSPORTATION, FEDERAL AVIATION )
ADMINISTRATION, )
                    Defendants )

## CERTIFICATE OF SERVICE

     I certify that a copy of the Defendants' Motion to Dismiss Complaint, Or, In The Alternative, For Summary Judgment has been served this day, by mail, upon the following:

                William W. Osborne, Jr.
                Osborne Law Offices, P.C.
                4301 Connecticut Avenue, N.W.
                Suite 108
                Washington, D.C. 20008

                Beverly Russell
                Assistant United States Attorney
                502 3rd Street, N.W.
                Washington, D.C. 20001

                             /s/
                    James F. Blandford
                    Attorney, FLRA & FSIP

May 20, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO and PROFESSIONAL AIRWAYS SYSTEMS SPECIALISTS, AFL-CIO, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 04-0138 (RMC) |
| FEDERAL SERVICE IMPASSES PANEL and FEDERAL LABOR RELATIONS AUTHORITY | ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION

Two federal unions, the National Air Traffic Controllers Association ("NATCA") and the Professional Airways Systems Specialists ("PASS"), sue to force the Federal Service Impasses Panel ("Panel") to assist them in resolving bargaining impasses with the Federal Aviation Administration ("FAA"). There is no doubt that the FAA and NATCA and the FAA and the PASS reached impasses in bargaining after lengthy good-faith efforts. The current dispute centers around whether the Panel properly declined to exercise its authority to resolve these impasses. Because the Court cannot conclude that the Panel violated a mandatory statutory duty in refusing to invoke its jurisdiction, the Court will grant summary judgment to the Federal Defendants and dismiss Plaintiffs' complaint.

Exh. 1

## I. BACKGROUND FACTS

NATCA represents 16,000 employees of the FAA, approximately 1,800 of whom are affected by the current dispute. PASS represents approximately 11,000 FAA employees, approximately 4,000 of whom are affected.[1] The two unions are labor organizations within the meaning of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. §§ 7101 *et seq.* (also referred to as "Chapter 71"). The Federal Labor Relations Authority ("FLRA" or "Authority"), a defendant here, was established by Congress under the CSRA to protect the rights of federal employees to organize, bargain collectively, and participate through labor organizations. *See* 5 U.S.C. § 7104 and § 7105. The Panel is an "entity within the Authority . . . to provide services and assistance to agencies and [unions] in the resolution of negotiation impasses . . . ." 5 U.S.C. § 7119(c)(1). The Panel's processes, whereby it might impose contract terms if the parties in the federal sector fail to agree, replace the traditional economic weapons of strike or lockout used by the private sector to resolve disputes.

After lengthy negotiations failed to reach accord, NATCA filed a formal Request for Assistance on July 8, 2003, requesting that the Panel consider an impasse reached in collective bargaining negotiations with the FAA (Case No. 03 FSIP 144). PASS filed similar formal Requests of Assistance on various dates in July 2003 requesting Panel assistance due to impasses in bargaining with the FAA (Case Nos. 03 FSIP 149, 150, 151 and 157). The FAA filed statements of position with the Panel on September 22, 2003, asserting that the Air Traffic Management System Performance Act of 1996 completely divested the Panel of any jurisdiction over the impasses. The

---

[1] The facts are taken from Plaintiffs' Statement of Material Facts as to Which There is No Genuine Issue ("Pls.' Facts").

FAA does not dispute the fact that there were impasses after good faith negotiations. In light of the FAA's argument concerning the Panel's jurisdiction, the Panel solicited legal positions from all of the parties on the issue and, on January 9, 2004, issued companion decisions. In the decisions, the Panel declined to address the impasses "because it is unclear whether the Panel has the authority to resolve the parties' impasse[s]." Compl., Ex. A at 1, Ex. B at 1. It added that,

> This determination to decline to assert jurisdiction is made without prejudice to the right of either party to file another request for assistance if the underlying threshold question is resolved in the appropriate forum consistent with the Union's interpretation of the applicable statutory provisions.

Compl. Ex. A at 4, Ex. B at 4.

NATCO and PASS filed the instant action on January 30, 2004, seeking resolution of this jurisdictional question. Specifically, they ask the Court to declare that the Panel's decisions of January 9, 2004, violate its statutory authority, exceed its jurisdiction under 5 U.S.C. § 7119, and deprive NATCA, PASS and their respective represented employees of their statutory rights. The unions ask the Court to order the Panel to resolve the existing impasses. In the meantime, the FAA submitted its final bargaining proposals that were the subjects of impasses in its negotiations with NATCA and stated that it "plans to put into effect these important changes . . . absent Congressional action, sixty (60) days after submission, excluding any period during which Congress has adjourned *sine die*[,] or on March 30, 2004." Pls.' Facts ¶ 11. At the time of the briefing, the FAA was prepared to take the same action with respect to the PASS proposals on which impasses had occurred. *Id.* ¶ 12.

## II. STATUTORY PROVISIONS

The FLRA is the federal agency responsible for administering the CSRA. It

adjudicates unfair labor practice complaints, negotiability disputes, bargaining unit and representational election matters, and exceptions to arbitration awards. *See* 5 U.S.C. § 7105(a)(2). The Panel is "an entity within the Authority, the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1).

On November 15, 1995, Congress enacted Section 347 of the 1996 Department of Transportation ("DOT") Appropriations Act, Pub. L. No. 104-50, § 347, 109 Stat. 460 (1995), directing the FAA to develop and implement a new personnel management system, to address "the unique demands on the agency's workforce." Section 347(b) specifically stated that Chapter 71 of the CSRA, which authorizes collective bargaining for federal employees and enforcement through the FLRA and the Panel, would not apply to the new FAA personnel management system, except for the prohibition of the right to strike in 5 U.S.C. § 7116(b)(7). *See* Pub. L. No. 104-50, § 347(b).

On March 28, 1996, the FAA issued a new Personnel Management System ("PMS"), organized in chapters addressing various aspects of the management of the agency's human resources. Chapter V dealt with Labor Relations and provided:

> EMPLOYEE RIGHTS
>
> The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71.

Pls.' Facts ¶ 15. This provision remains part of the FAA's PMS. *Id.* On March 29, 1996, Congress passed House Joint Resolution 170, Pub. L. 104-122, 110 Stat. 876 (1996), which amended Section 347 of the 1996 DOT Appropriations Act to *require* application of Chapter 71, relating to labor-

management relations, to the PMS at FAA. *Id.* ¶ 17.

Thereafter, on October 9, 1996, Congress enacted the Air Traffic Management System Performance Improvement Act of 1996, Pub. L. 104-264, Title II, 110 Stat. 3227 (1996) ("the 1996 FAA Act") to establish a procedure for "developing and making changes to the personnel management system initially implemented by the Administrator [of the FAA] . . . on April 1, 1996 . . . ." 49 U.S.C. § 40122(a); Pls.' Facts ¶ 18. The 1996 FAA Act required the FAA to negotiate with the unions representing FAA employees over changes to the PMS and to engage in mediation if the negotiations did not reach agreement. However, if negotiations end in an impasse, the 1996 FAA Act "provided for the FAA Administrator to transmit its proposals, along with the bargaining representative's objections, to Congress. Proposed changes to the PMS were not to take effect until sixty days after the Agency's submission to Congress." *Id.* at ¶ 19 (citing 49 U.S.C. § 40122(a)).

In 2000, Congress codified the provisions of House Joint Resolution 170 by adding subsection (g) to 49 U.S.C. § 40122 to specify that Chapter 71 of Title 5, "relating to labor-management relations" would apply to the FAA PMS. Pub. L. No. 106-181, Title III, § 307(a), 114 Stat. 124 (2000). *Id.* at ¶ 21.

## III. ANALYSIS

The relevant question here is who should determine the interplay between Chapter 71, the basic guide to federal labor-management relations, and the particular statutory provisions that affect labor relations at the FAA, found at 49 U.S.C. § 40122 and 49 U.S.C. § 106? Because the Authority is the expert agency charged with "provid[ing] leadership in establishing policies and guidance relating to matters under . . . [Chapter 71]," 5 U.S.C. § 7105(a)(1), Defendants argue that

the question should be presented to the Authority in the guise of an unfair labor practice proceeding.

Defendants suggest that the best way to present the issue is the filing of unfair labor practice charges

by the unions challenging the FAA's actions as a failure to bargain in good faith. *See* Defendants'

Memorandum In Reply to Plaintiffs' Opposition to Defendants' Motion To Dismiss ("Defs.' Reply")

at 5-6. The FAA contends that, in light of the 1996 FAA Act, its obligation to bargain in this matter

does not extend to participation in the Panel's impasse resolution procedures. Thus, Defendants

argue that if the FAA is indeed required to bargain under 5 U.S.C. § 7119, "a refusal to submit the

impasse to the Panel would constitute an unfair labor practice." *Id.* Similarly, Defendants assert that

"the unfair labor practice forum could also be open to the unions were the FAA to implement its

proposals [unilaterally]." *Id.* at 6.

The Court agrees that the unfair labor practice processes for the federal sector would

allow the unions to take these issues to the Authority and then to the Circuit Court of Appeals for

review, as necessary. In addition, the Authority correctly argues that the unions essentially raise an

"obligation to bargain" issue, *i.e.*, a question of whether the exact issues that led to the impasses[2]

constitute "conditions of employment" within the meaning of 5 U.S.C. § 7102 and under the FAA.[3]

*See* Defs.' Reply at 3; *see also Am. Fed. of Gov't Employees v. FLRA*, 778 F.2d 850, 854 (D.C. Cir.

---

[2] The issues that led to the impasses were not described in the parties' briefs, but they were articulated by the parties as "primarily if not purely economic" at a telephone hearing held on March 31, 2004.

[3] 5 U.S.C. § 7102(2) defines employee's rights to include the right "to engage in collective bargaining with respect to conditions of employment . . . ." 5 U.S.C. § 7103(a)(14) defines "conditions of employment" to mean "personnel policies, practices, and matters . . . affecting working conditions, except that such term does not include policies, practices, and matters – (C) to the extent such matters are specifically provided for by Federal statute."

1985)(negotiability issues are subject to determination by the Authority, not the Panel); *Interpretation and Guidance*, 11 FLRA 626, 628-29 (1983)(Panel authority under § 7119(c)(5) does not include the authority to resolve questions concerning the underlying obligation to bargain.). The Panel's impasse resolution procedures constitute simply one aspect of the collective bargaining process and complaints about an agency's participation – or lack thereof – in those procedures could be deemed unfair labor practices. *See Interpretation and Guidance*, 11 FLRA at 628 n.5.

When agency action constitutes an arguable unfair labor practice, jurisdiction rests exclusively with the Authority and the Courts of Appeals. *See* 5 U.S.C. § 7123; *Steadman v. Governor, U.S. Soldiers' and Airmen's Home*, 918 F.2d 963, 966 (D.C. Cir. 1990). For these reasons, the Court concludes that it is without jurisdiction and should defer to the FLRA.

The unions argue with some force and logic that the Panel failed to perform specific mandatory statutory duties, and that such failure ultimately gives this court jurisdiction over the matter. They rely on the Supreme Court's decision in *Leedom v. Kyne*, 358 U.S. 184 (1958), for the proposition that "district courts have jurisdiction to remedy actions by federal agencies that are contrary to express statutory authority and that have 'deprived . . . employees of a right assured to them by Congress.'" Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary ("Pls.' Mot.") at 11 (citing *Leedom*, 358 U.S. at 189); *see also Railway Labor Executives' Association v. National Mediation Board*, 29 F.3d 655, 661 (D.C. Cir. 1994)("Federal courts have jurisdiction to review action[s] taken in excess of delegated power")(internal quotations and citation omitted); *United Food and Commercial Workers, Local 400 v. NLRB*, 694 F.2d 276, 278 (D.C. Cir. 1982)(an otherwise nonreviewable agency action may be reviewable where the agency has "contravened a clear and specific statutory mandate.").

Thus, although the general rule is that the Panel's orders are unreviewable, "in exceptional circumstances, a district court may exercise federal jurisdiction to invalidate a Panel order made 'in excess of its delegated powers and contrary to a specific prohibition of the Act.'" *Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1500-1501 (D.C. Cir. 1984)(quoting *Leedom*, 358 U.S. at 188). However, this Circuit has held that the *Leedom* exception is very narrow and "intended to be of extremely limited scope." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988); *see also Brewer*, 735 F.2d at 1500-1501 ("The invocation of *Leedom* jurisdiction is extraordinary; to justify such jurisdiction, there must be a specific provision of the Act which, although it is clear and mandatory, was nevertheless violated by the Panel.")(internal quotations and citations omitted).

The unions argue that the CSRA contains mandatory commands to the Panel that it "*shall* promptly investigate any impasse," "*shall* consider the impasse," and "*shall* either – (i) recommend . . . procedures for the resolution of the impasse; or (ii) assist the parties in resolving the impasse . . . ." 5 U.S.C. § 7119(5)(A). In response, Defendants argue that the Panel fulfilled these mandates, but the record clearly suggests otherwise. While the Panel may have *initiated* an investigation of the respective impasses, the immediate and adamant position of the FAA that the Panel had no authority to proceed caused a premature termination in the impasse resolution process.

Despite the attractive invitation to decide these important issues, the Court concludes that this is not an appropriate fact pattern for the invocation of district court jurisdiction pursuant to *Leedom v. Kyne*. The Panel's refusal to resolve the parties' impasses in light of arguable legal questions concerning the Panel's authority cannot be deemed a violation of a "clear and mandatory" statutory provision. *See Leedom*, 398 U.S. at 188. In considering an impasse, the Panel must always determine in the first instance whether the impasse at issue is subject to its jurisdiction. The fact that

-8-

the FAA and the unions here agree that there are impasses *in fact* in their negotiations does not

necessarily translate to impasses that are subject to the Chapter 71 procedures. The Panel did not

specify its reasoning when it declined to complete its own procedures. The Panel's decision can

easily be read to mean that it declined to decide whether the impasses involved bargaining subjects

under Chapter 71 insofar as it is applicable to the FAA. It cannot be said that such a result

contravened an explicit or mandatory statutory obligation. Recognizing that the Authority might be

said to lack expertise to interpret the 1996 FAA Act, the Court still concludes that it is the better

forum to decide whether the FAA is required to follow the entire impasse-resolution process of

Chapter 71 for these particular impasses.

Accordingly, Plaintiffs' motion for summary judgment will be DENIED and

Defendants' motion for summary judgment will be GRANTED.

A memorializing Order accompanies this Memorandum Opinion.


Dated: February 22, 2005.                     _____/s/_____

                                              ROSEMARY M. COLLYER
                                              United States District Judge

# National Air Traffic Controllers Association
## AFL-CIO



April 7, 2006

**VIA HAND DELIVERY**

Mr. H. Joseph Schimansky
Executive Director
Federal Service Impasses Panel
1400 K Street, N.W.
Washington, D.C.  20424

Re:     Request for Assistance with Negotiation
        Impasse Between National Air Traffic
        Controllers Association and Federal
        Aviation Administration (Collective
        Bargaining Agreement Covering Air Traffic
        Controllers, Traffic Management
        Coordinators, and NOTAM Specialists)

Dear Mr. Schimansky:

      Pursuant to 5 U.S.C. § 7119 and 5 C.F.R. §2471.1, the National Air Traffic
Controllers Association hereby formally requests the assistance of the Federal Service
Impasses Panel with the resolution of twelve issues on which NATCA and the Federal
Aviation Administration were unable to reach agreement during negotiations for a new
collective bargaining agreement covering the units of federal air traffic controllers, traffic
management coordinators, and NOTAM specialists represented by NATCA.  The FAA
declared an impasse in those negotiations on April 5, 2006.  Upon the Agency's
declaration of impasse, NATCA sent the Agency an acknowledgment of the Agency's
impasse declaration and formal notice of NATCA's intent to request the assistance of the
FSIP with the resolution of all outstanding issues (a copy of that letter is enclosed).

      Attached is a list of the twelve issues on which the parties did not reach
agreement.  Three of these issues are also the subjects of bad faith bargaining and/or
refusal to bargain unfair labor practice charges filed by the Union and currently pending
before the Federal Labor Relations Authority.  A copy of the Union's final proposal on
each of the twelve issues is included; a copy of the Agency's final proposal on ten of the
issues is also included (the Agency did not submit a proposal on two of the issues).  In
addition, the attached list contains the requisite information on the negotiation and
mediation sessions held and provides the names of the individuals authorized to act on
behalf of the parties as well as their contact information.

*Exh. 2*

Letter to Federal Service Impasses Panel
Request for Assistance in Air Traffic Controller Negotiations
April 7, 2006
Page 2

     Finally, you are no doubt aware that the issue of the Panel's jurisdiction to resolve negotiation impasses between the FAA and the unions that represent Agency employees was recently before the U.S. Court of Appeals for the District of Columbia Circuit. In a decision issued on February 17, 2006, that court explicitly noted that, pursuant to the provisions of the Federal Service Labor-Management Relations Statute, the statutory obligation to bargain includes participation in proceedings before the Panel. See NATCA v. FSIP, 437 F.3d 1256, 1265 (D.C. Cir. 2006). It is NATCA's position that the current impasse is one governed by the federal labor relations statute and, as such, clearly within the purview of the Panel's jurisdiction.

     NATCA respectfully requests as immediate an investigation of this matter as possible and appreciates the Panel's assistance with the resolution of this matter.

Sincerely,

John Carr
National President

cc:    The Honorable Marion C. Blakey, Administrator
       Federal Aviation Administration

UNITED STATES OF AMERICA    RECEIVED
BEFORE THE FEDERAL SERVICE IMPASSES PANEL
WASHINGTON, DC    6  MAY 15

|  |  |
|---|---|
| DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION, ) ) ) | |
| Agency, ) ) | |
| and ) ) ) | Case No. 06 FSIP 68 |
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, ) ) | |
| Union. ) ) | |

## AGENCY'S STATEMENT OF POSITION ON JURISDICTION

The Department of Transportation, Federal Aviation Administration ("FAA" or "the Agency"), by and through its undersigned representatives, submits its Statement of Position on Jurisdiction of the Federal Services Impasses Panel ( "FSIP" or "the Panel") in response to the National Air Traffic Controllers Association's ("NATCA" or the "the Union") Request for Assistance filed on April 7, 2006. Under the personnel reform statutes applicable to the FAA, Congress decreed that when a bargaining impasse occurs between the Agency and one of its unions regarding changes to the FAA Personnel Management System (PMS), including compensation and benefits matters, the Agency's proposed changes may take effect only after sixty days have elapsed from the date the FAA Administrator transmitted the proposed changes and the union's objections to Congress. The statutory scheme does not prescribe a role for the FSIP in bargaining disputes involving changes to the FAA PMS. Therefore, the Panel should not assert jurisdiction over this matter.



Exh. 3

The disputed issues contained in the Union's Request for Assistance all deal with matters related to the FAA Personnel Management System (PMS), including compensation and benefits for bargaining unit employees. The Agency submitted the bargaining dispute to Congress on April 5, 2006, pursuant to the applicable personnel reform statutes.[1] Moreover, the Union submitted a similar Request for Assistance involving different bargaining units in 2003, over which the Panel declined to assert jurisdiction. There has been no change in the statutory scheme since then that would now confer Panel jurisdiction over the instant Request for Assistance. Indeed, the U.S. Court of Appeals has found the Agency's interpretation of these very provisions from its governing statute – an interpretation that is entitled to deference -- to be "compelling." Moreover, the Union has publicly admitted that current law divests the FSIP of jurisdiction and is actively seeking legislation to change that law.

A.    **The FAA's Governing Statutes Requires that Bargaining Impasses Over Changes in the FAA Personnel Management System Be Reviewed By Congress, Not the FSIP.**

1.    **Congress fundamentally altered the FAA's labor-management procedures for matters addressed by the FAA Personnel Management System, including compensation and benefits.**

In a series of legislative actions in 1995 and 1996, Congress directed the FAA to establish, *inter alia*, a new personnel system independent of most of the rules applicable to the rest of the federal government and then fundamentally changed the way the FAA and its labor organizations negotiate over matters encompassed by the FAA's new personnel system, including compensation and benefits. In 1995, Congress enacted the Department of Transportation and Related Agencies Appropriation Act of 1996, Pub. L. No. 104-50, 109 Stat.

---

[1] The FAA's submission to Congress is available at http://employees.faa.gov/news/natca_negotiations/. It should be noted that NATCA's Request for Assistance to the FSIP does not contain all proposals in dispute that were submitted by the FAA to Congress on April 5, 2006, and vice versa. The differences in the submissions are discussed in Section B, *infra*.

"flexibility" in personnel matters, including the authority to set pay for employees, and utilizing collective bargaining for compensation with labor organizations representing organized employees.

Section 225 of the Act, codified at 49 U.S.C. § 106(l), provides that, in fixing compensation and benefits of officers and employees, the Administrator:

> [S]hall not engage in any type of bargaining, except to the extent provided for in section 40122 (a), nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels.

NATCA mistakenly claims that the foregoing gives the Administrator the authority to negotiate pay with the unions that represent its employees. In reality, section 106(l) says the opposite – it precludes the Administrator from negotiating over pay and benefits except in a very specific circumstance. The Union has never explained how the FAA can negotiate pay without following the mandate of section 106(l) to utilize the section 40122(a) bargaining process.

The Act provides in section 253 (codified as 49 U.S.C. § 40122)(a)) a specific procedure which governs how changes to the FAA Personnel Management System are to be negotiated and how disputes would be resolved when the Administrator and exclusive bargaining representatives could not reach agreement over changes to be implemented by the Administrator. 49 U.S.C. § 40122(a). Congress created a role for itself where agreement is not reached through negotiation and mediation by the Federal Mediation and Conciliation Service ("FMCS"):

> (a) In general.—
>
> > (1) Consultation and negotiation.—In developing and making changes to the personnel management system initially implemented by the Administrator of the Federal Aviation Administration on April 1, 1996, the Administrator shall negotiate with the exclusive bargaining representatives of employees of the Administration certified under Section 7111 of title 5 and consult with other employees of the Administration.

and benefits of officers and employees, the Administrator "shall not engage in any type of bargaining, except to the extent provided for in section 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels." 49 U.S.C. § 106(l).

Congress did not specify any role for the FSIP in the section 40122(a) procedure. Instead, Congress essentially replaced the FSIP procedure with one that is limited to negotiation, FMCS mediation, and direct implementation, subject to Congressional oversight. As set forth above, section 40122(a) directs the parties to first seek the mediation services of the FMCS in an effort to resolve their differences. In the event the FMCS cannot facilitate an agreement between the parties, and Congress does not act, the Administrator's proposal will be implemented.

**B.**    **The Issues in NATCA's Request for Assistance Were Properly Sent To Congress.**

The Agency is in compliance with the requirements of section 40122(a) and properly submitted the unresolved issues to Congress. After eight months of negotiations, the Parties utilized the services of the FMCS for an additional month.[2] The Parties resolved most, but not all, of the issues during the negotiation and mediation processes. The Agency submitted the unresolved issues to Congress on April 5, 2006, in accordance with 49 U.S.C § 40122(a). All of the issues submitted to the FSIP by the Union involve matters relating to the FAA PMS, including compensation and benefits, and are appropriately before Congress. Furthermore, some of the matters submitted by the Union are also the subject of unfair labor practice (ULP) charges filed by the Union with the FLRA concerning duty to bargain issues.

In its Request for Assistance, the Union stated that impasse has been reached on twelve separate issues and submitted them to the Panel for resolution:

---

[2] The Parties negotiated from July 2005 to February 2006 and then engaged in four weeks of bargaining mediated by the FMCS in March 2006.

1. Position Descriptions (Article 17)
2. Controller-in-Charge (Article 18)
3. Annual Leave (Article 24)
4. Holidays (Article 28)
5. Position Rotation and Relief Periods (Article 33)
6. Pay Administration (Article 36)
7. Overtime (Article 38)
8. Dress Code (Article 69)
9. Duration (Article 106)
10. Pay (Article 108)
11. Flight Training Incentive Program (Article 111)
12. Dependent Education at Non-CONUS Facilities (Article 120)

The Agency submitted all of these issues except for the Flight Training Incentive Program (Article 111) to Congress pursuant to 49 U.S.C. § 40122(a).[3] During negotiations, the Agency asserted that it did not have a duty to bargain over Article 111 and the Union filed a ULP charge with the FLRA challenging the Agency's assertion, which is currently pending before the Authority.[4]

With regard to Duration (Article 106), the Parties were in agreement on all mandatory subjects of bargaining on this issue. The Agency and Union proposals on Article 106 are identical except for the following sentence, which the Union insisted on to impasse: "If negotiations are not completed prior to the expiration date, this Agreement shall remain in full force and effect until a new Agreement is reached."[5] The Parties are in agreement with regard to, *inter alia*, the duration of the successor agreement (sixty months) and the timeframes for reopening the agreement.

---

[3] The Parties also could not reach agreement on three other issues: Child Care Subsidy (Article 116); Student Loan Repayment Program (Article 143); and Facility ATC Levels (Article 150). The Union did not include these issues in its Request for Assistance to the Panel; the Agency included them in its submission to Congress.

[4] The charge is Case No. WA-CA-06-0189, filed January 6, 2006.

[5] Such an "evergreen" provision (which is also part of the current agreement) has direct financial implications for the Agency because it requires the continuance of negotiated annual pay increases.

The Union's proposed "full force and effect" language in Article 106 constitutes a waiver of the Agency's right to terminate permissive subjects of bargaining upon the expiration of the successor agreement. Such a waiver is in and of itself a permissive subject of bargaining. Merit Systems Protection Board Professional Ass'n and Merit Systems Protection Board, Washington, DC, 30 FLRA 852, 860-62 (1988). It is an unfair labor practice for a party to insist to impasse on a permissive subject of bargaining. U.S. Dept. of Commerce Patent and Trademark Office and Patent Office Professionals Ass'n, 53 FLRA 858, 871 (1997); Sport Air Traffic Controllers Organization and Air Force Flight Test Center, 52 FLRA 339, 349 (1996). Therefore, the Parties were not at impasse over Duration (Article 106) and the Panel should refuse to assert jurisdiction on that basis.

The remaining issues in dispute are related to or addressed by the FAA PMS, including compensation and benefits. In either circumstance, the issues are properly before Congress pursuant to 49 U.S.C. § 40122(a) and not subject to resolution by the Panel. The following issues involve matters directly related or inextricably linked to compensation and benefits of bargaining unit employees:

- Controller-in-Charge (Article 18)
- Annual Leave (Article 24)
- Holidays (Article 28)
- Position Rotation and Relief Periods (Article 33)
- Pay Administration (Article 36)
- Overtime (Article 38)
- Pay (Article 108)
- Flight Training Incentive Program (Article 111)
- Dependent Education at Non-CONUS Facilities (Article 120)

the PMS, including compensation and benefits, the Administrator may not implement the

changes until sixty days have passed after they have been transmitted to Congress. There is no

prescribed role for the FSIP in the process.

Even *assuming arguendo* that the relevant statutes were ambiguous, the Agency's

construction of them is permissible and, therefore, must be accorded deference. The Court of

Appeals found the FAA's interpretation of the disputed statutory provision to be "compelling"

437 F.2d at 1264. At a minimum, this means that the Agency's interpretation is reasonable,

which is all the Chevron doctrine requires to affirm the FAA construction. It is beside the point

that the court also characterized the Union's argument in a similar fashion, as under the law it is

the Agency's construction and historical application that is entitled to deference.[11]  The Agency

has determined that the instant dispute falls within the ambit of sections 106(l) and 40122(a). The

Panel should therefore decline to assert jurisdiction over the dispute.

The Union has been fully aware of the FAA's position for some time with regard to the

question of jurisdiction of the FSIP over bargaining disputes on negotiations of matters under the

FAA's personnel management authority. But nothing in NATCA's Request for Assistance refers

to any ruling or legal precedent that overcomes the clear and unequivocal language that Congress

expressly set forth in 49 U.S.C. §§ 40122(a) and 106(l). These provisions provide an explicit

legal basis for Agency's position that Congress eliminated the FSIP's role in resolving any

---

[11] See Martin v. Occupational Safety & Health Review Comm'n, 49 U.S. 144, 157 (1991) ("The Secretary's interpretation of OSH Act regulations [as a litigant] in an administrative adjudication, however, is agency action, not a *post hoc* rationalization of it."). As in Martin, the FAA's submission to the Panel is not an interpretation set forth after the fact during litigation. Even if it were, though, it would still be entitled to deference. See Drake v. FAA, 291 F.3d 59, 69 (D.C. Cir. 2002) ("the interpretation of the regulation advanced by the FAA during this litigation is controlling unless we discern some reason to believe that it is not 'fair and considered'"). United Seniors Ass'n Inc. v. Shalala, 182 F.3d 965, 971 (D.C. Cir. 1999), quoting Auer v. Robbins, 519 U.S. 452, 462 (1997) ("Even if the legal briefs contained the first expression of the agency's views, under the appropriate circumstances, we would still accord them deference so long as they represented the agency's 'fair and considered judgment on the matter.'").

impasses over changes to the FAA PMS, including pay or benefits matters. Section 106(l) is emphatic on this point, as it goes on to state: ". . . nor shall the Administrator be bound by <u>any</u> requirements to establish such compensation or benefits at particular levels." 49 U.S.C. § 106(l) (emphasis supplied). This language reflects specific Congressional intent to divest jurisdiction from the FSIP over disputes concerning the FAA PMS and more specifically disagreements over any pay and benefit setting procedures.

The Union continues to ignore the significance of the timing of the relevant legislative events in deciphering Congressional intent by its insertion of chapter 71 on March 29, 1996. <u>See</u> Pub. L. No. 104-122, 110 Stat. 876. Congress did not specify the new dispute mechanism at issue here until October 1996 – several months <u>after</u> Congress amended Pub. L. No. 104-50 to insert chapter 71. Thus, Congress was clearly aware of chapter 71 rights but chose to amend those rights concerning disputes over the FAA PMS by the language now codified in 49 U.S.C. § 40122. It makes no sense to construe section 40122 as mandating that chapter 71 governs all disputes over changes to the FAA PMS. In fact, chapter 71 is not referred to in the body text of the statute except in the context of certification of exclusive bargaining representative. <u>See</u> 49 U.S.C. § 40122(a)(1).

The Union's position also disregards 49 U.S.C. § 106(l) that expressly restricts the Administrator's ability to collectively bargain compensation and benefits or to be bound by <u>any</u> other requirements in setting such, except only as provided for in section 40122(a), and that final resolution of any such disputes was limited to Congress. The first is a statement of broad authority to the Administrator to take personnel actions. It is the latter sentence that limits the Administrator to the section 40122(a) procedure as the only authorized bargaining vehicle for

13

fixing compensation and benefits and that the final resolution of any such disputes was with Congress – not the FSIP.

These same or similar types of bargaining disputes contained in an earlier request to the Panel by NATCA in Case No. 03 FSIP 144 were submitted to Congress (along with the Union's proposals as provided by 49 U.S.C. § 40122 (a)) on February 26, 2004, and implemented on July 10, 2005, after the review period by Congress had expired.[12] The Agency is not aware of any determination by a recognized authority that has affirmed the Union's claim that the FSIP must take jurisdiction over bargaining disputes arising from negotiations conducted pursuant to the FAA's authority under 49 U.S.C. § 40122(a).

**D.    NATCA Publicly Admits That Current Law Deprives the FSIP of Jurisdiction.**

Seemingly, in every forum other than proceedings before this Panel, NATCA candidly admits that current law deprives the FSIP of jurisdiction to entertain a bargaining impasse with the FAA and instead sends such matters to Congress for review. Precisely because of this result, NATCA has launched an all-out lobbying effort to change the law and to require that FAA labor impasses be subject to binding arbitration. This effort includes a new website, www.fairfaa.com, which offers the following explanation of the House version of the legislation NATCA advocates:

> Rep. Sue Kelly, R-N.Y., and Rep. Jerry Costello, D-Ill., introduced the "Federal Aviation Administration Fair Labor Management Dispute Resolution Act" on Feb. 15 to correct inequities in the current contract negotiating process between the Federal Aviation Administration (FAA) and the National Air Traffic Controllers' union.
>
> The Kelly-Costello bill helps provide an additional step of fairness in the negotiations process. Under current law, in the case of an impasse in contract

---

[12] The Union subsequently challenged the FAA's actions in implementing the disputed contract submitted to Congress by filing an unfair labor practice charge with the FLRA on July 14, 2005, in Case No. WA-CA-05-0450. The charge is still pending disposition by the FLRA and no complaint or dismissal has been issued.

negotiations, the FAA can unilaterally impose its contract upon the controllers if the agency sends the contract to Congress and there is no legislative intervention within 60 days.

Under the "FAA Fair Labor Management Dispute Resolution Act," the contract negotiations would instead be referred to an impartial third party for binding arbitration. The bill has more than 30 co-sponsors.

See http://www.fairfaa.com/about_the_issue.asp (Emphasis supplied).

As if this admission were not enough, NATCA is also pressing for legislation that, in addition to requiring the FAA to resume negotiations despite the current impasse, would expressly send the matter to the FSIP. Thus, as recently as May 5, 2006, NATCA's spokesperson sent an announcement via email boasting of a letter sent to Speaker of the U.S. House of Representatives Dennis Hastert by forty-nine Members of Congress urging this result. According to NATCA:

> The letter states: "We ask that you allow the full House an opportunity to vote on a measure that will send the parties back to the bargaining table and allow for binding arbitration through the Federal Service Impasse Panel (FSIP) in the event that an agreement cannot be reached. We would note that other federal workers have access to binding arbitration to settle disputes through the FSIP and we see no reason why the FAA workers should be excluded from this process."[13]

E-mail from Doug Church, Media Relations Manager, NATCA (May 5, 2006, 2:57 p.m.) (Attachment 1). These related efforts concede the point the FAA has been making – that the federal aviation laws do not provide a role for the Panel to decide labor impasses concerning changes to the Agency's Personnel Management System, including disputes over compensation and benefits.

**E.    Conclusion**

The Agency bargained with the Union in good faith over changes to the PMS, including compensation and benefits. When the Parties could not reach agreement on a subset of those

---

[13] The letter to Speaker Hastert may be accessed at http://www.fairfaa.com/pdf/latourette-to-speaker.pdf.

changes, they engaged in mediation utilizing the services of the FMCS. When FMCS mediation did not lead to agreement on all of the outstanding matters, the Agency submitted the unresolved matters to Congress for a 60-day review period. All throughout the process, the Agency has been in compliance with 49 U.S.C. §§ 106(l) and 40122(a), the statutes that govern the negotiation of changes to the FAA PMS, including compensation and benefits. The FSIP has no statutory role in that process. This dispute concerns matters that are covered by and directly affect the FAA's personnel management system, including compensation and benefits. As it did previously, the Panel should again decline to assert jurisdiction.

Finally, the Agency reserves the right to reply to any submission(s) by the Union with regard to the jurisdiction of the Panel to resolve this matter.

Respectfully submitted,

Michael S. Herlihy
Manager, Third Party Services Division (AHL-200)
Phone: (202) 267-3421
Facsimile: (202) 267-5914

Michael Doherty
Office of the Chief Counsel (AGC-30)
Phone: (202) 385-8233
Facsimile: (202) 493-5085

Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, DC 20591

Dated: May 8, 2006

```
----- Original Message -----

From: "Doug Church" [dchurch@natcadc.org]

Sent: 05/05/2006 02:57 PM

To: Doug Church" <dchurch@natcadc.org>

Subject: 49 Republican House Members Urge Speaker Hastert To Help Resolve
NATCA-FAA Impasse
```

Yesterday (May 4), a letter signed by 49 Republican members of the U.S. House of Representatives – including Transportation Committee Chairman Don Young, R-Alaska – was sent to House Speaker Dennis Hastert, R-Ill., asking for his help in resolving the bargaining dispute between the Federal Aviation Administration and the National Air Traffic Controllers Association. If Congress does not act before June 5, the FAA intends to unilaterally impose its offer as a binding contract.

The letter states: "We ask that you allow the full House an opportunity to vote on a measure that will send the parties back to the bargaining table and allow for binding arbitration through the Federal Service Impasse Panel (FSIP) in the event that an agreement cannot be reached. We would note that other federal workers have access to binding arbitration to settle disputes through the FSIP and we see no reason why the FAA workers should be excluded from this process."

The full list of the 49 Republican lawmakers who signed the letter is below. The letter is attached.

-Doug Church
NATCA
202-220-9802

Charles Bass, N.H.
Sherwood Boehlert, N.Y.
Mary Bono, Calif.
Jeb Bradley, N.H.
Shelley Moore Capito, W.Va.
John Carter, Texas
Geoff Davis, Ky.
Charles Dent, Pa.
Lincoln Diaz-Balart, Fla.
Jo Ann Emerson, Mo.
Phil English, Pa.
Mike Fitzpatrick, Pa.
Jim Gerlach, Pa.

Melissa Hart, Pa.
Joel Hefley, Colo.
Timothy Johnson, Ill.
Sue Kelly, N.Y.
Peter King, N.Y.
Mark Kirk, Ill.
John Kline, Minn.
Steven LaTourette, Ohio
Ron Lewis, Ky.
Frank LoBiondo, N.J.
Donald Manzullo, Ill.
Kenny Marchant, Texas
Michael McCaul, Texas
Thaddeus McCotter, Mich.
John McHugh, N.Y.
Tim Murphy, Pa.
Bob Ney, Ohio
Ron Paul, Texas
Steve Pearce, N.M.
Todd Platts, Pa.
Ted Poe, Texas
Richard Pombo, Calif.
Dennis Rehberg, Mont.
Dave Reichert, Wash.
Rick Renzi, Ariz.
Paul Ryan, Wisc.
Joe Schwarz, Mich.
Christopher Shays, Conn.
Bill Shuster, Pa.
Robert Simmons, Conn.
John Sweeney, N.Y.
Todd Tiahrt, Kan.
Patrick Tiberi, Ohio
James Walsh, N.Y.
Curt Weldon, Pa.
Don Young, Alaska



Letter to Speaker Hastert May 4.pdf

## CERTIFICATE OF SERVICE

I hereby certify that an original and copies of the Agency's Statement of Postion On Jurisdiction in Case No. 06 FSIP 68 was mailed by first-class, postage prepaid, certified, U.S. mail on this 8th_day of _May, 2006 to the following addresses:

Original and copy to:

Mr. H. Joseph Schimansky
Executive Director
Federal Services Impasses Panel
1400 K Street N.W
Suite 200
Washington D.C. 20424-0001

Copy to:

Mr. Marc Shapiro
Director of Labor Relations
National Air Traffic Controllers Association
1325 Massachusetts Avenue,
Washington, D.C. 20005

Michael S. Herlihy
Manager, Third Party Services Division (AHL-200)
Federal Aviation Administration
800 Independence Avenue, S.W.
Washington, D.C. 20591
Phone: (202) 267-3421
Facsimile: (202) 267-5914

17

# Osborne Law Offices
PROFESSIONAL CORPORATION

RECEIVED

6  MAY 17  P 4:56

May 17, 2006

FSIP

**By Hand Delivery**

Joseph Schimansky, Executive Director
Federal Service Impasses Panel
Federal Labor Relations Authority
1400 K Street, N.W.
Washington, D.C. 20424-0001

                    Re:  **Case No. 06 FSIP ~~68~~ 64**

Dear Mr. Schimansky:

     Enclosed please find an original and one copy of a Position
Statement submitted by the National Air Traffic Controllers
Association, AFL-CIO regarding the above-referenced matter.

                         Very truly yours,

                         *William W Osborne Jr*

                         William W. Osborne, Jr.

cc: Michael Herlihy
    Michael Doherty

*Exh. 4*

4301 Connecticut Avenue N.W., Suite 108
Washington, DC  20008
Telephone  202. 243. 3200
Facsimile  202. 243. 3207

UNITED STATES OF AMERICA
BEFORE THE FEDERAL SERVICE IMPASSES PANEL
WASHINGTON, D.C.

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION,      :
                                       :
          Agency,                      :
                                       :
and                                    : Case No. 06 FSIP 68
NATIONAL AIR TRAFFIC CONTROLLERS       :
ASSOCIATION, AFL-CIO,                  :
                                       :
          Union.                       :

## STATEMENT OF POSITION BY NATIONAL
## AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO

The following statement of position is submitted on behalf
of the National Air Traffic Controllers Association, AFL-CIO
("NATCA" or "the Union"), in support of its April 7, 2006 request
for assistance by the Federal Service Impasses Panel ("FSIP" or
"the Panel"), and in reply to the Statement of Position submitted
by the Federal Aviation Administration ("FAA" or "the Agency") on
May 8, 2006 ("FAA Pos.") opposing the Panel's exercise of
jurisdiction.

While the Panel has previously been presented with the
question of its jurisdiction over collective bargaining impasses
between the FAA and NATCA and other of representatives of the
Agency's employees (03 FSIP 144 (2004)), that fundamental issue
remains unresolved notwithstanding three years of litigation in a

related case.[1]

As shown below, as a matter of law and policy, the Panel should accept the instant NATCA/FAA impasse as properly before and well within its statutory jurisdiction, and proceed to "promptly" investigate and resolve the existing impasse pursuant to the Panel's statutory mandate. 5 U.S.C. §7119(c).

### Statement of the Case

The basic facts are undisputed and well documented. After extensive bargaining between the parties for a contract covering the Air Traffic Controller, Traffic Management, and NOTAM bargaining units, NATCA filed a request for the Panel's assistance by letter dated April 7, 2006.  Attachment 1.

On May 8, 2006, the FAA filed its Statement of Position with the Panel.  The Agency *now* argues that Congress had granted the

---

[1]Following the FSIP's decision to decline to address the impasses in bargaining between NATCA (and another union) and the FAA in bargaining units other than those at issue here, on the basis that the Panel's jurisdiction was "unclear" (03 FSIP 144 (2004)), the Unions filed suit in U.S. District Court for the District of Columbia challenging the Panel's failure to act. Nat'l Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel, CA No. 04-0138, U.S. Dist. LEXIS 2964(D.D.C., Feb. 22, 2005). The District Court declined to decide the issue of the FSIP's jurisdiction over the underlying impasses, holding that the Federal Labor Relations Authority ("FLRA") "is the better forum to decide whether the FAA is required to follow the entire impasse-resolution process of Chapter 71 for these particular impasses." Id. at *4.  On appeal, the D.C. Circuit affirmed, again on procedural grounds, and again declined to resolve the underlying question of the FSIP's jurisdiction over impasses between the FAA and representatives of the Agency's employees. NATCA v. FSIP, 437 F.3d 1256, 1264-66 (D.C. Cir. 2006).

FAA the unlimited right to bargain collectively with the designated bargaining representatives of its employees, beyond the reach of chapter 71 of the Federal Service Labor-Management Relations Statute and exempt from the FSIP's mandatory impasse-resolution processes, with respect to *any* issue "*related to* the FAA Personnel Management System (PMS)..." (FAA Pos., p.2) -- that is, as to *any* issue the FAA deems "related to" *any* of the terms and conditions of employment of FAA employees. Id.

The FAA's current position before the Panel is, in this regard, a new one, contrary to and substantially broader than the position the Agency had previously taken before the D.C. Circuit and the Panel,[2] and contrary as well to the plain language of the FAA's own Personnel Management System ("PMS"), as subsequently codified by Congress as amended in 2002 (49 U.S.C. §40122(g) (2001)) and as currently published by the Agency.[3]  As

---

[2]The FAA previously argued to the D.C. Circuit that an exclusion from the Panel's statutory jurisdiction over collective bargaining impasses that existed between the FAA and affected unions was limited to *economic* proposals. NATCA v. FSIP, 437 F.3d at 1259("...the FAA argues here, as before the Panel, that legislation passed by Congress in the mid-1990s withdrew the FSIP's jurisdiction as the final arbiter over disputes that arise between the FAA and its employees over *compensation and benefits*.) (Emphasis supplied). See also Dep't of Transp., Fed. Aviation Admin. and NATCA, AFL-CIO, FSIP Case No. 03 FSIP 144 (2004), at 1 ("... the [FAA] alleges that the Panel 'may not assert jurisdiction' over any of the Union's *compensation-related* proposals."(Emphasis supplied)).

[3] The FAA's PMS unequivocally states that "all FAA employees, and all labor organizations representing FAA employees shall have the same rights...as are available to all Federal

we show below, the Agency's newly expanded position in this
matter remains as baseless as it is ambitious.

Moreover, notwithstanding that the matter is pending before
the Panel, the FAA has warned NATCA that it intends to
unilaterally impose its preferred terms and conditions of
employment, with respect to *all* issues encompassed by its newly
expanded position, on June 5, 2006, regardless of whether or how
the Panel acts. FAA Pos., p.2 and n.1. Thus, the need for
timely and affirmative action by the Panel is imperative.

### The FSIP's Mandatory Jurisdiction

The plain language of 5 U.S.C. §7119(c)(1) *requires* the FSIP
to "provide assistance in resolving negotiation impasses between
agencies and exclusive representatives," and the statute likewise
imposes an affirmative duty upon the FSIP "to *promptly*
investigate any impasse presented to it..." (emphasis supplied)
where, as here, the statutory prerequisites for the FSIP's
intervention are present.[4]

---

agencies, employees and labor organizations under 5 U.S.C.
Chapter 71." See www.faa.gov/ahr/policy. As the D.C. Circuit
recognized, "the current version of the FAA Personnel Management
System contains this same provision extending Chapter 71
protections to FAA employees" (437 F.3d at 1260), and the current
FAA PMS contains no reference to any exclusions by Congress with
respect to the FSIP's jurisdiction under Section 7119 or the
exclusion of any other provision of Chapter 71.

[4]As the House of Representatives Report on Section
7119(c)(5) makes abundantly clear, Congress made the FSIP's
statutory impasse-resolution role *mandatory*:

4

## The FAA's Baseless Position

The FAA concedes the existence of the relevant factual predicates for FSIP jurisdiction (i.e. impasse and timely submission by the Union) (FAA Pos., p. 6), and the FSIP has routinely facilitated the resolution of collective bargaining impasses over precisely the same subjects as those present here, including over issues of compensation.[5]

The parties' legal positions are accurately summarized in the D.C. Circuit's decision. 437 F.3d at 1260-61. Before the Panel and the D.C. Circuit, the FAA argued, in contradiction to the plain language of its own PMS, that Sections 106(l) and

---

> Section (c)(5) *requires* the Panel ... to investigate promptly any impasse presented to it under Section 7119(b). Upon consideration of the impasse, the Panel is *required* either to recommend procedures to the parties for the resolution of the impasse, or to assist the parties in arriving at a settlement....

H.R. Rep. No. 1403, 95th Cong., 2d Sess. 54 (1978)(emphasis supplied).

[5]Under the FAA PMS, compensation and benefit issues are negotiable, to the same extent as any other condition of employment, by operation of 5 U.S.C. § 40122(g). Because the wages and benefits of the FAA employees represented by NATCA are governed by the FAA PMS and *not* the General Schedule ("GS") of the Civil Service Act, 5 U.S.C. § 5332, they are negotiable "conditions of employment." 5 U.S.C. § 7103(a)(14)(c);  Fort Stewart Schools v. FLRA, 495 U.S. 641, 649 (1990); Dist. 1, Pac. Dist., MEBA & Panama Canal Comm'n, 26 FLRA 63 (1987).  And where, as here, compensation and benefits are negotiable under 5 U.S.C. § 7103(a), the Panel has both the authority (See e.g., SEC & NTEU, 02 FSIP 122 (2002); Dep't of Defense Stateside Dependent Schools and Fort Campbell Non-Certified Education Ass'n, 95 FSIP 160 (1996)), and, we submit, the obligation to facilitate impasse resolution under Section 7119(c)(5)(A).

40122(a) of Title 49 somehow deprive the Panel access "over

collective bargaining disputes between the FAA and its employees

over *compensation and benefits*." 437 F.3d at 1259.   The FAA now

contends, as noted above, that Section 106(l) somehow licenses

the Agency to bargain outside the Panel's jurisdiction and

unilaterally set terms and conditions of employment extends to

*any and all* issues "related to the FAA's Personnel Management

System," including such plainly *non*-economic issues as position

descriptions and dress code. FAA Pos., p. 10.[6]

The entirety of the FAA's legal position is anchored to the

second sentence of Section 106(*l*)(1) which, according to the

highly edited version cited by the FAA to the Panel, provides

that the Agency:

> [s]hall not engage in any type of bargaining
> except to the extent provided for in Section
> 40122(a), nor shall [the Agency] be bound by
> any requirement to establish such
> compensation or benefits at particular
> levels. FAA Pos., p.4.

According to the FAA, this second sentence in Section 106(*l*)(1)

---

[6] The Agency further confuses the issue by alleging that the
Union's submission to the Panel contains non-negotiable and/or
permissive matters. Commander, Carswell Air Force Base, TX and
AFGE, Local 1364, 31 FLRA 620 (1988). NATCA has not submitted to
the Panel any articles with questions as to negotiability that
have not been previously determined by the Authority.  Given the
Panel's practice to decline jurisdiction over those matters
subject to a negotiability appeal but to assert jurisdiction over
those subjects with no duty-to-bargain question, NATCA took care
that all matters submitted for FSIP assistance were appropriately
within the Panel's jurisdiction. Dep't of Transp. and Local R3-
10, NAGE, 96 FSIP 146 (1997).

flatly contradicts and implicitly repeals the first sentence of
the same statutory section which, like the FAA's PMS and
Congress' subsequent codification of that provision, *expressly*
preserves the rights of FAA employees under "chapter 71 [of title
V] relating to labor-management relations."

The two sentences in Section 106(l) are not contradictory
but are readily reconcilable.  Both sentences of Section 106(l)
are applicable, by their terms, to "fix[ing] the compensation of
... [FAA] officers and employees."

The first sentence of Section 106(l) qualifies the provision
in its entirety ("[e]xcept as provided in subsections (a) *and (g)*
of section 40122"). By expressly incorporating Section
40122(g)(2)(C), the first sentence of Section 106(l) therefore
imposes all of "chapter 71 [of title 5] relating to labor-
management relations," *including* 5 U.S.C. § 7119(c), as governing
collective bargaining over all negotiable subjects, *including*
bargaining over "fix[ing] the compensation of" such employees.

The second sentence of Section 106(l) simply provides the
converse of the first --

> In fixing compensation and benefits of officers and
> employees [*not covered* by Section 40122(g) and chapter 71 of
> title 5], the Administrator shall not engage in any type of
> bargaining, except to the extent provided for in section
> 40122(a), nor shall the Administrator be bound by any
> requirement to establish such compensation or benefits at
> particular levels.

In other words, the second sentence applies where the provisions

7

of "chapter 71 relating to labor-management relations" *do not*

apply, and in such cases the Administrator is authorized "to

appoint, transfer and fix the compensation of such officers and

employees..." and "shall not engage in any type of bargaining,

except to the extent provided for in section 40122(a)...," i.e.,

to "negotiate with the exclusive bargaining representatives of

employees...and consult with other employees of the

Administration."[7]

Thus, the two sentences in Section 106(*l*)(1) present no

statutory incompatibility even with respect to bargaining over

compensation issues. The requirements of Chapter 71 of the U.S.

Code, including 5 U.S.C. § 7119(c), govern the extant collective

bargaining impasse regarding compensation issues as Congress

mandated in both 49 U.S.C. §§ 106(*l*)(1) and 40122(g)(2)(C), and

as the FAA itself expressly provides in the FAA PMS.  And, of

course, nothing in Section 106(l) even hints that the FAA is

licensed to avoid the FSIP's mandatory impasse-resolution

processes for issues that "relate to" the terms and conditions of

---

[7]FAA "officers and employees" *excluded* from the coverage of
"chapter 71 [of 5 U.S.C.] relating to labor-management relations"
in first sentence of Section 106(*l*)(1), and to which the
collective bargaining limitation in the second sentence in
Section 106(*l*)(1) applies, are enumerated at 5 U.S.C. §§
7103(a)(2) and 7112(b), i.e., "supervisor[s]," "management
official[s]," "confidential employee[s]," "employee[s] engaged in
personnel work," "employee[s] engaged in administering the
provisions of" chapter 71 of Title V, and employees engaged in
national security work or in the internal security of the Agency.

8

employment of FAA employees under the FAA PMS but *do not* relate

to "the fixing" of compensation.[8]

Thus, as Judge Edwards of the D.C. Circuit aptly summarized

NATCA's position,

> ... [T]he Unions ... have consistently
> maintained that the FAA's position is plainly
> wrong, because nothing in the 1996 FAA Act
> abrogates Chapter 71's applicability to
> collective bargaining between the FAA and the
> Unions, and thus nothing in that Act changes
> the Impasses Panel's mandatory jurisdiction
> over collective bargaining impasses between
> the FAA and the Unions.  Rather, according to
> the Unions, §40122(a) only governs the
> process of "developing and making changes to
> the personnel management system," 49 U.S.C.
> §40122(a)(1), not changes to collective
> bargaining agreements.  And §40122(g) and the
> FAA's Personnel Management System expressly
> provide that the process of collective
> bargaining between the FAA and the exclusive
> bargaining representatives of its employees
> is to be governed by Chapter 71 on the same
> terms as that statute governs the process of
> collective bargaining between all other
> federal agencies and the representatives of
> their employees.  In other words, the Unions
> contend that §40122(a) does not purport to
> override §40122(g), and that §106(l) is not
> to the contrary when read as a whole.

437 F.3d at 1264.  And, contrary to the FAA's misleading

---

[8]The FAA argues that the Panel should simply "defer" to the
FAA's newly revised position.  FAA Pos., p. 10.  Apparently, the
FAA considers the plain language of the FAA PMS -- as promulgated
by the Agency's Administrator in 1996, codified by Congress in
pertinent part in 2000, maintained by the Agency intact to the
present, and currently featured on the FAA website
(www.faa.gov/ahr/policy )-- to be somehow less authoritative than
the *post hoc* arguments of FAA counsel. See Burlington Truck
Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962).

characterization of the D.C. Circuit's decision itself (FAA Pos., p. 12), the Court emphasized that NATCA's arguments were no less "compelling" than the Agency's. 437 F.3d at 1264.

In addition to the foregoing issues of statutory construction, in light of the FAA's threat to act unilaterally on June 5, 2006, we emphasize the acute need for the Panel to express its *timely* acceptance of jurisdiction in this case.  And, according to the FAA's submission, there may be at least a possibility that the Agency may *agree* to participate in the Panel's impasse-resolution proceedings if jurisdiction is "promptly" extended by the Panel in this case. FAA Pos., p. 11 ("...the FAA has not now nor in the past refused to participate in any proceedings ordered by the Panel." (emphasis in original)).

Conversely, an assertion by the Panel of its jurisdiction in this case would, in the event the FAA did then "refuse to participate" in the Panel's impasse-resolution proceedings, allow the issue to be decided by the FLRA in an unfair labor practice proceeding finally putting the jurisdictional issue to rest.[9] 5

---

[9]The FAA claims that NATCA has publicly "admitted" that FSIP lacks jurisdiction are premised upon mis-characterizations of the issue.  As the Agency is well aware, both the parties' legal positions in this matter were presented to the D.C. Circuit and are summarized in the Court's decision(437 F.3d at 1260-61), and it will come as no surprise that NATCA has conceded nothing in its legislative attempts to remove any continuing doubts regarding the relevant statutes.  What NATCA was referencing was the FAA's interpretation of the statute and the Agency's clear

U.S.C. §7116(a)(5).  <u>See</u> 437 F.3d at 1265("...[I]f the Unions'
interpretation of the disputed statutory provisions is correct,
then it is clear that they have viable unfair labor practice
charges that can be raised with and addressed by the FLRA.")

## Conclusion

For all of the reasons stated herein and in the Union's
earlier submission to the Panel, we respectfully ask only that
the Panel recognize and give meaning to the FAA's guarantee that
"all FAA employees, and all labor organizations representing FAA
employees shall have the same rights...as are available to all
Federal agencies, employees and labor organizations under 5
U.S.C. Chapter 71."  NATCA urges the Panel to expeditiously
proceed to assist the parties in resolving the collective
bargaining impasse in this case.

Respectfully submitted,

William W. Osborne, Jr.
Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W.
Suite 108
Washington, D.C. 20008
(202) 243-3200

intentions. At no time since 2003, while this issue has remained
unresolved, has NATCA ever modified its position that 5 U.S.C.
§7119(c)(1) *requires* the FSIP to provide assistance in resolving
negotiation impasses between the FAA and the collective
bargaining representatives of its employees.

11

Marguerite Graf/wwoo

Marguerite Graf
General Counsel
National Air Traffic
Controllers Ass'n, AFL-CIO
1325 Massachusetts Ave., N.W.
Washington, D.C. 20005

Dated: May 17, 2006

12

## CERTIFICATE OF SERVICE

I hereby certify that an original and two copes of the foregoing Statement of Position By National Air Traffic Controllers Association, AFL-CIO was mail first-class, postage prepaid on 17th day of May, 2006 to:

                Michael S. Herlihy
                Manager, Third Party Services Division (AHL-200)
                Federal Aviation Administration
                800 Independence Avenue, S.W.
                Washington, D.C. 20591

                Michael Doherty
                Office of the Chief Counsel (AGC-30)
                Federal Aviation Administration
                800 Independence Avenue, S.W.
                Washington, D.C. 20591

                                William W. Osborne, Jr.

13



UNITED STATES
**FEDERAL SERVICE IMPASSES PANEL**
WASHINGTON, DC 20424–0001
January 9, 2004

<u>**VIA FACSIMILE TRANSMISSION**</u>

Elizabeth J. Head, Esq.
Office of the Chief Counsel
Federal Aviation Administration
400 7th Street, SW., PL-200A
Washington, DC 20591

Mr. William W. Osborne, Jr
Osborne Law Offices
4301 Connecticut Avenue,
Suite 108
Washington, DC 20008

                    Department of Transportation
                    Federal Aviation Administration
                    Washington, DC and
                    NATCA, AFL-CIO
                    Case No. 03 FSIP 144

Dear Ms. Head and Mr. Osborne

After due consideration of the request for assistance in the above-
referenced case, the Panel in accordance with its regulations, 5
C.F.R. § 2471.6(a)(1), declines to assert jurisdiction because it
is unclear whether the Panel has the authority to resolve the
parties' impasse.

Our investigation reveals, among other things, that the Employer
alleges that the Panel "may not assert jurisdiction" over any of
the Union's compensation-related proposals.  In its view, although
the parties are at impasse, 49 U.S.C. §§ 106 and 40122(a) govern
how collective bargaining disputes between the Federal Aviation
Administration (FAA) and its unions over compensation matters are
to be resolved.[1]  In essence, on the basis of its interpretation

---

1/    49 U.S.C. § 106 provides that, in fixing compensation and
      benefits of employees, the Administrator of the FAA:

            [S]hall not engage in any type of bargaining,
            except to the extent provided for in section
            40122(a), nor shall the Administrator be bound by
            any requirement to establish such compensation or
            benefits at particular levels.
                                        (continued...



2

of the relevant statutory provisions, the Employer argues that Congress changed "business as usual" for labor-management relations at the FAA by substituting itself for the traditional role otherwise played by the Panel in resolving Federal sector impasses regarding these matters. In addition, it cites certain statements made by the Union subsequent to the enactment of the relevant legislation which demonstrate that it recognized that the § 40122(a) procedure displaced the Panel as the forum for resolving disputes over compensation and related issues under the FAA's PMS. Finally, in its initial jurisdictional submission to the Panel on September 22, 2003, it also states that, in accordance with § 40122(a), "the Agency is currently preparing its submission to Congress and will submit the compensation issues in dispute . . . in a timely manner."

In its response, the Union contends that the Employer has failed to portray accurately the intentions of Congress when it enacted 49 U.S.C. § 40122. In this regard, § 40122(g)(1) and (2)(C), state the following:

    (g Personnel Management System.

---

1/    (...continued)
49 U.S.C. § 40122(a)(2) provides a procedure for resolving negotiation impasses between the Administrator and the FAA's exclusive bargaining representatives over the development of, and subsequent changes to, the personnel management system (PMS) initially implemented on April 1, 1996. It states as follows:

        (2) Mediation. - If the Administrator does not reach an agreement under paragraph (1) with the exclusive bargaining representatives, the services of the Federal Mediation and Conciliation Service shall be used to attempt to reach such agreement. If the services of the Federal Mediation and Conciliation Service do not lead to an agreement, the Administrator's proposed changes to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change, along with the objections of the exclusive bargaining representatives to the change, and the reasons for such objections, to Congress. The 60-day period shall not include any period during which Congress has adjourned *sine die*.

3

    (1) In general. - In consultation with the employees of the Administration and such non-governmental experts in personnel management systems as he may employ, and notwithstanding the provisions of title 5 and other Federal personnel laws, the Administrator shall develop and implement, not later than January 1, 1996, a personnel management system for the Administration that addresses the unique demands on the agency's workforce. Such a new system shall, at a minimum, provide for greater flexibility in the hiring, training, compensation, and location of personnel.

    (2) Applicability of title 5. - The provisions of title 5 shall not apply to the new personnel management system developed and implemented pursuant to paragraph (1), with the exception of -

    (C) chapter 71, relating to labor-management relations.

According to the Union, if Congress had intended what the Employer contends, it would have enacted § 40122(g)(2)(C) to preserve chapter 71 **except for section 7119** (which authorizes the Panel to provide assistance in resolving negotiation impasses between agencies and exclusive representatives), but it did not. In the Union's view, in enacting § 40122(a)(2), Congress intended to provide itself with ultimate authority only over "changes to the personnel management system," *i.e.*, the "new system" to be implemented "not later than January 1, 1996," and not to subsequent, recurring collective bargaining between the parties within the confines of that system. Hence, § 40122(g) leaves "the subsidiary issues of employee benefits and compensation to be resolved by the parties under 'chapter 71,' which includes the FSIP's processes." Moreover, although the Employer is requesting the Panel to "abdicate" its statutory responsibility,

    neither the governing statute nor the FSIP's case law provide the Panel with the discretion to decline to resolve an existing bargaining impasse on an *ad hoc* basis where, as here, the statutory predicates for the FSIP's intervention are present.

The Panel has carefully examined the parties' positions regarding its jurisdiction over their impasse, including the applicable statutory provisions, and concludes that the Employer has raised arguable questions concerning whether the Panel has the authority to resolve collective bargaining disputes over the compensation and benefits of FAA's bargaining-unit employees. In our view, such

4

questions, which appear to involve determinations as to Congresses'
intent in enacting statutory provisions subject to conflicting
interpretations, must be addressed in an appropriate forum before
the Panel commits its resources to assist the parties in resolving
the merits of their impasse.[2]

This determination to decline to assert jurisdiction is made
without prejudice to the right of either party to file another
request for assistance if the underlying threshold question is
resolved in the appropriate forum consistent with the Union's
interpretation of the applicable statutory provisions.

By direction of the Panel.

Sincerely yours,

*H. Joseph Schimansky*

H. Joseph Schimansky
Executive Director

---

[2]    Contrary to the Union's contention, the Panel believes that
it's determination to decline jurisdiction under the
circumstances presented in this case is fully consistent with
its authority under the Federal Service Labor-Management
Relations Statute and its implementing regulations.



UNITED STATES OF AMERICA
### FEDERAL LABOR RELATIONS AUTHORITY
**SAN FRANCISCO REGION**
901 Market Street, Suite 220
San Francisco, California 94103-1791
(415) 356-5000 Fax:(415) 356-5017

July 25, 2007

Eugene Freedman, Policy Counsel
National Air Traffic Controllers Association
1325 Massachusetts Avenue, NW
Washington, DC  20005

Re:    Federal Aviation Administration
       Washington, D.C.
       Case No. WA-CA-06-0648

Dear Mr. Freedman:

The unfair labor practice charge in this case was filed with the Washington Regional Office on September 6, 2006 and was transferred to the San Francisco Regional Office on September 12, 2006. After investigation, consideration of the evidence and application of the law to the facts, issuance of a complaint is not warranted.

The charge alleges that on or about September 3, 2006, the Federal Aviation Administration (FAA) unilaterally implemented its final contract proposal despite the fact that bargaining with the National Air Traffic Controllers Association, AFL-CIO (NATCA) had not been completed. This conduct is alleged to violate section 7116(a)(1)(5) and (8) of the Federal Service Labor-Management Relations Statute (Statute).[1]  The FLRA has jurisdiction over the matters raised in this timely filed charge.

In 1996, Congress passed legislation which authorized FAA to change its personnel and procurement systems. Pub L. No. 104-264 (October 9, 1996)[2]  While ultimately the legislation provided that the FAA personnel management system created under that legislation would be subject to Chapter 71 of Title 5 and that negotiations over the creation of changes to the system shall take place, the legislation also provided a unique mechanism for the resolution of

---

[1] Along with other allegations that FAA engaged in bad faith bargaining, the allegation of this charge that FAA denied NATCA an opportunity to conduct a ratification vote is addressed in the dismissal letter issued today in Case No. WA-CA-06-0366.

[2] The relevant sections are set out in full in Attachment A.

*Exh  6*

bargaining impasses. 49 U.S.C. § 40122(a)(1). Specifically, in § 40122(a)(2), the legislation provided that where the services of the Federal Mediation and Conciliation Service (FMCS) do not lead to an agreement, the Administrator's proposed changes to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change to Congress.

In this case, the investigation revealed that for nearly 10 months in 2005 and 2006, FAA and NATCA were in negotiations over a successor to the 2003 agreement in their three nationwide air traffic bargaining units. During the bargaining, the parties agreed on many issues but agreement was not reached on all matters and the groundrules specified that any agreement was tentative until a final agreement was consummated. The parties participated in six weeks of mediation conducted by FMCS. On March 31, 2006, the FMCS Commissioner released the parties from mediation. On April 5, 2006, FAA declared that the parties were at impasse.[3]

On April 5, 2006, pursuant to 49 U.S.C. §§ 40122(a)(1) and (2), FAA submitted its position on impasse to Congress as well as an explanation of NATCA's opposition to its position. On April 7, 2006, pursuant to 5 U.S.C. § 7119, NATCA sought the assistance of the Federal Service Impasses Panel (FSIP). FAA asserted that FSIP lacked jurisdiction in these matters, as Congress had provided FAA with a unique impasse resolution procedure set forth in § 40122(a)(1) and (2). On July 15, 2006, FSIP declined to assert jurisdiction over the parties' impasse, finding that under § 40122(a) it was unclear whether or not FSIP had jurisdiction to resolve the parties' impasse dispute.

Consistent with § 40122(a)(2), sixty days after submitting the matter to Congress, on June 5, 2006, FAA notified NATCA that its final contract proposal was in effect. On August 21, 2006, FAA notified NATCA that its final proposal would be implemented September 3, 2006. Local FAA managers then began notifying local NATCA representatives that after September 3, 2006, they no longer would be bound by existing local agreements and/or past practices which had developed under the 2003 agreement. In some instances, local managers terminated all existing local past practices. In other instances, managers retained some existing local past practices and terminated others. When FAA implemented its final proposal, NATCA filed this charge.

Fairly construed, §§ 40122(a)(1) and (2) replaced the provisions under the Statute for resolution of impasses. While that section provides for bargaining under Chapter 71 of Title 5, it explicitly provides for the resolution of bargaining impasses under the scheme set forth in that section. Here, FAA submitted the dispute to Congress after impasse was reached in April 2006. When the 60 day period expired without Congressional action, FAA was free to implement the final contract proposal that was submitted to Congress.

NATCA asserts that the resolution of bargaining impasses set forth in § 40122(a)(2) applies only to bargaining disputes over "compensation and benefits." In this regard, NATCA relies on section 106(l) which provides that "in fixing compensation and benefits of officers and

---

[3] NATCA's allegations that the parties were not at impasse on April 5, 2006 and that the FAA violated the Statute by failing to resolve the bargaining disputes through FSIP are addressed in the dismissal letters issued today in Case Nos. WA-CA-06-0366 and WA-CA-06-0563.

employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in § 40122(a), nor shall the Administrator be bound by any requirement to establish such compensation and benefits at particular levels." NATCA contends that only bargaining over those matters is covered by § 40122(a)(2). NATCA further asserts that neither section precludes resolution of compensation impasses through FSIP, prior to any submission to Congress.

Contrary to NATCA's claim, the procedure set forth in § 40122(a)(2) is not limited to impasses involving "compensation and benefits." In this regard, while § 40122(a)(1) provides that negotiation must take place, the same subsection (a) provides for a specific and clear procedure for the resolution of impasses. Further there is no differentiation between impasses over compensation and other bargaining topics. Accordingly, this procedure must apply to the entire dispute at impasse.

Therefore, having followed the § 40122(a) procedure for resolving the contract bargaining impasse, FAA did not violate section 7116(a)(1) and (5) of the Statute by proceeding forward and implementing its final proposal on September 3, 2006. *U.S. Dept. of Labor, Wash., D.C.*, 60 FLRA 68 (2004) (contract terms implemented after opportunity for impasse resolution constitute binding agreements). Further, no allegation was raised or evidence submitted to support finding a violation of section 7116(a)(8) of the Statute.

Accordingly, the charge is dismissed.

An appeal may be filed by mail or by hand delivery with the Office of the General Counsel. Your appeal should include the Case Number (WA-CA-06-0648) and be addressed as follows:

> Federal Labor Relations Authority
> Office of the General Counsel
> 1400 K Street NW, Second Floor
> Attention: Appeals
> Washington DC 20424-0001

Whichever method you choose, please note that the last day for filing an appeal of the dismissal is **August 27, 2007.** This means that an appeal that is mailed must be postmarked, or an appeal must be hand delivered, no later than **August 27, 2007.** Please send a copy of your appeal to the Regional Director.

If you need more time to prepare your appeal, you may ask for an extension of time. Mail or hand deliver your request for an extension of time to the Office of the General Counsel at the address listed above. Because requests for an extension of time must be **received** at least five days before the date the appeal is due, any request for an extension of time in this case must be **received** at the above address no later than **August 22, 2007.**

The procedures, time limits and grounds for filing an appeal are contained in Volume 5 of the Code of Federal Regulations at section 2423.11(c)-(g). 5 C.F.R. § 2423.11(c)-(g). The regulations may be found at any FLRA Regional Office, public law library, some large general

purpose libraries, Federal Personnel Offices and the Authority's Home Page internet site-- **www.FLRA.gov.** I have also enclosed a document which summarizes frequently-asked questions and answers regarding the Office of the General Counsel's unfair labor practice appeals process.

Sincerely,

*Gerald M. Cole*

Gerald M. Cole
Regional Director

Enclosures:    Questions and Answers About Appeals

cc:    Elizabeth J. Head, Esq.
       Office of the Chief Counsel
       Federal Aviation Administration
       Labor and Personnel Division, AGC-30
       600 Independence Avenue, SW, 1st Floor
       Washington, DC 20591

       Colleen Duffy Kiko, General Counsel
       Office of the General Counsel
       Federal Labor Relations Authority
       1400 K Street, NW, 2nd Floor
       Washington, D.C. 20424-0001

ATTACHMENT A

In October 1996, Congress passed the Air Traffic Management System Performance Improvement Act of 1996, Title II, as part of the Federal Aviation Reauthorization Act of 1996. Pub. L. No. 104-264, 110 Stat. 3213 (Oct. 9, 1996).

Section 253, codified as 49 U.S.C. § 40122)(a), provides:

    (a)    In general.—

        (1) Consultation and negotiation.—In developing and making changes to the personnel management system initially implemented by the Administrator of the Federal Aviation Administration on April 1, 1996, the Administrator shall negotiate with the exclusive bargaining representatives of employees of the Administration certified under Section 7111 of title 5 and consult with other employees of the Administration.

    (2)    Mediation.—If the Administrator does not reach an agreement under paragraph (1) with the exclusive bargaining representatives, the services of the Federal Mediation and Conciliation Service shall be used to attempt to reach such agreement. If the services of the Federal Mediation and Conciliation Service do not lead to an agreement, the Administrator's proposed changes to the personnel management system shall not take effect until 60 days have elapsed after the Administrator has transmitted the proposed change, along with the objections of the exclusive bargaining representatives to the change, and the reasons for such objections, to Congress. The 60-day period shall not include any period during which Congress has adjourned sine die.  49 U.S.C. § 40122(a).

Section 225, codified as 49 U.S.C. §106(l), provides that, in fixing compensation and benefits:

    Except as provided in subsections (a) and (g) of section 40122 [49 U.S.C. §§40122], the Administrator is authorized, in the performance of the functions of the Administrator, to appoint, transfer, and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Administrator and the Administration. In fixing compensation and benefits of officers and employees, the Administrator shall not engage in any type of bargaining, except to the extent provided for in section 40122(a) [49 U.S.C. § 40122(a)], nor shall the Administrator be bound by any requirement to establish such compensation or benefits at particular levels.

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL


**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
      **Charged Party**

**and**                                   **Case No. WA-CA-06-0648**

**NATIONAL AIR TRAFFIC CONTROLLERS**
  **ASSOCIATION, AFL-CIO**
      **Charging Party**


**Order Denying Appeal**

The Rules and Regulations (Regulations) of the Federal Labor Relations Authority (FLRA) provide that a "Charging Party may obtain review of the Regional Director's decision not to issue a complaint by filing an appeal with the General Counsel within 25 days after service of the Regional Director's decision." 5 C.F.R. § 2423.11(c).

The decision of the Regional Director not to issue a complaint was issued on July 25, 2007, and was served on the parties by mail. Accordingly, an appeal must be filed by August 27, 2007. (An additional five days is added to the time period if the decision is served by mail. *See* 5 C.F.R. § 2429.22). The appeal was filed on August 27, 2007; therefore, it is timely filed and is properly before the General Counsel for consideration.

The Regulations at 5 C.F.R. § 2423.11(e) provide the following grounds upon which the General Counsel may grant an appeal of a Regional Director's decision to dismiss an unfair labor practice charge: (1) the decision did not consider a material fact that would have resulted in issuance of complaint; (2) the decision is based on a finding of a material fact that is clearly erroneous; (3) the decision is based on an incorrect statement of the applicable rule of law; (4) there is no Authority precedent on the legal issue in the case; or (5) the manner in which the Region conducted the investigation has resulted in prejudicial error. *Id.* and 5 C.F.R. § 2423.11(f).

On appeal, the Charging Party alleged, among other things, that the Regional Director's decision is based on a finding of a material fact that is clearly erroneous and there is no Authority precedent on the legal issue in the case. In this regard, the Charging Party contended that the Regional Director erred in concluding that the parties were at impasse. The Charging Party alleged that the Regional Director erred in failing to find that the FSIP is the final and binding arbiter of impasses. The Charging Party also submitted that there is no Authority precedent that

concerns the interpretation of 49 U.S.C. § 40122, and that nowhere in subsection (a) does it provide that unilateral implementation is a substitute for final agreement similar to the FSIP.

This appeal has been carefully considered. The Regional Director's rationale for dismissing the charges is supported by the evidence of record. The appeal has failed to establish any ground for either reversing the Regional Director's decision or remanding the case for further investigation in accordance with 5 C.F.R. § 2423.11(e). The dismissal letter issued by the Regional Director constitutes the written statement of the reasons for not issuing a complaint as required by 5 U.S.C. § 7118(a)(1).

ORDERED:    For the foregoing reasons, the appeal is hereby DENIED.[*]

Date Issued: 1.29.2008

Colleen Duffy Kiko
General Counsel

---

[*] Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g.*, *Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
        **Charged Party**

**and**                                            Case No. WA-CA-06-0648

**NATIONAL AIR TRAFFIC CONTROLLERS
  ASSOCIATION, AFL-CIO**
        **Charging Party**

### CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**        **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
  Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C.  20005                        **Cert No. 7006 2760 0005 6476 6253**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C.  20591                        **Cert No. 7006 2760 0005 6476 6260**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL


**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
      **Charged Party**

**and**                                  **Case No. WA-CA-06-0648**

**NATIONAL AIR TRAFFIC CONTROLLERS**
  **ASSOCIATION, AFL-CIO**
      **Charging Party**


**Order Denying Motion for Reconsideration**


The Rules and Regulations of the Federal Labor Relations Authority at 5 C.F.R. § 2423.11(g) provide that a Charging Party may move for reconsideration of the General Counsel's final decision if it can establish extraordinary circumstances. Further, the Motion for Reconsideration must be filed within 10 days after the date on which the General Counsel's final decision is postmarked. The final General Counsel's Order denying the appeal was postmarked January 29, 2008. As the Charging Party's Motion for Reconsideration was filed on February 6, 2008, it was timely filed. *See* 5 C.F.R. § 2429.21 (the date of hand delivery is the filing date).

In determining whether extraordinary circumstances have been established, the General Counsel applies a similar standard to that set forth by the Authority in *U.S. Dep't of the Air Force, 375th Combat Support Group, Scott Air Force Base, Ill.*, 50 FLRA 84 (1995). Specifically, the General Counsel will not grant a Motion for Reconsideration unless the moving party establishes that: (1) an intervening court decision or change in the law affects dispositive issues; (2) evidence, information or an issue crucial to the decision was not considered by the General Counsel; or (3) the General Counsel made an error in material fact or law. A Motion for Reconsideration may not be used to reopen a case merely to reargue contentions previously advanced and already considered by the General Counsel.

The contentions asserted in the Motion for Reconsideration have been carefully considered. Nothing in the Motion for Reconsideration establishes extraordinary circumstances under the standard set forth above. Therefore, the Motion for Reconsideration is denied. This decision is final. 5 C.F.R. § 2423.11(g).

ORDERED:    For the foregoing reasons, the Motion for Reconsideration is hereby DENIED.[*]

Date Issued: 2·26·2008

_____
Colleen Duffy Kiko
General Counsel

---

[*] Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
       **Charged Party**

**and**                                  **Case No. WA-CA-06-0648**

**NATIONAL AIR TRAFFIC CONTROLLERS**
  **ASSOCIATION, AFL-CIO**
       **Charging Party**

**CERTIFICATE OF SERVICE**

I hereby certify that on February 26, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**     **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
  Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005                  **Cert No. 7006 2760 0005 6476 6734**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591                  **Cert No. 7006 2760 0005 6476 6741**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

_Debra Watlington_
Debra Watlington
Management Analyst

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO, | ) ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:08CV00481 (RMC) |
| | ) | |
| FEDERAL LABOR RELATIONS AUTHORITY, FEDERAL SERVICE IMPASSES PANEL, and UNITED STATES DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, | ) ) ) ) ) | |
| Defendants | ) | |

**ORDER**

UPON CONSIDERATION of the Motion of the  Federal Labor Relations Authority and the Federal Service Impasses Panel to Dismiss Complaint, or, In the Alternative, For Summary Judgment, the grounds stated therefore and the entire record in this matter, it is by this Court this __ day of _____, _____, hereby

ORDERED that the said motion be and hereby is granted; and it is hereby

FURTHER ORDERED that all claims against the Defendants Federal

Service Impasses Panel and Federal Labor Relations Authority are hereby

dismissed with prejudice.

DATED:_____          _____

UNITED STATES DISTRICT JUDGE