## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO,** )<br><br>)<br>**Plaintiff,** )<br><br>)<br>v.     ) Civil Action No. 08-00481(RMC)<br><br>)<br>**FEDERAL SERVICE IMPASSES PANEL and FEDERAL LABOR RELATIONS AUTHORITY,** )<br><br>)<br>**and** )<br><br>)<br>**UNITED STATES DEPT. OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION,** )<br><br>)<br>**Defendants.** )<br>———————————————————— ) | |

### DEFENDANT FEDERAL AVIATION ADMINISTRATION'S MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, the U.S. Department of Transportation, Federal Aviation Administration, by and through its undersigned counsel, hereby moves to dismiss this suit for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) or for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). Pursuant to Local Rules 7(a) and 7(c) respectively, a memorandum of points and authorities supporting this motion and a proposed order consistent with the relief requested in the motion are attached. The attached memorandum also contains Defendant's opposition to Plaintiff's Motion for Summary Judgment.

Respectfully Submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell

Of Counsel:                    _____
Elizabeth Head, Esq.           BEVERLY M. RUSSELL, D.C. Bar #454257
Michael Doherty, Esq.          Assistant United States Attorney
Federal Aviation Administration  U.S. Attorney's Office for the District of Columbia,
                                  Civil Division
                               555 4th Street, N.W., Rm. E-4915
                               Washington, D.C. 20530
                               Ph:  (202) 307-0492
                               Fax: (202) 514-8780
                               E-Mail: beverly.russell@usdoj.gov

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO,** | ) ) ) |
| **Plaintiff,** | ) ) |
| v. | ) Civil Action No. 08-00481(RMC) ) |
| **FEDERAL SERVICE IMPASSES PANEL and FEDERAL LABOR RELATIONS AUTHORITY,** | ) ) ) |
| **and** | ) ) |
| **UNITED STATES DEPT. OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION,** | ) ) ) |
| **Defendants.** | ) ) ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT FEDERAL AVIATION ADMINISTRATION'S
MOTION TO DISMISS AND OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

Plaintiff brings this suit pursuant to 28 U.S.C. § 1331 requesting declaratory, injunctive and other relief related to its claim that the Federal Service Impasses Panel (FSIP) has refused to exercise its collective bargaining impasse jurisdiction over matters between Defendant Federal Aviation Administration (FAA or Agency) and Plaintiff, the National Air Traffic Controllers Association, AFL-CIO (NATCA or Union). Pl's Compl. ¶ 1. For reasons stated below, this suit should be dismissed for lack of subject matter jurisdiction (or for failure to state a claim upon which relief can be granted), and Plaintiff's Motion for Summary Judgment should be denied.

This case represents nothing more than the Union's dissatisfaction with the decisions of the Federal Labor Relations Authority's (FLRA) consideration of its unfair labor practice (ULP) charges regarding the underlying collective bargaining disputes between the Union and the FAA. This Court, in a decision affirmed by the U.S. Court of Appeals for the District of Columbia Circuit, has previously determined that the FLRA was the proper forum for the Union to obtain redress for its claims regarding the appropriate impasse resolution procedure for collective bargaining disputes between the Union and the FAA. The FLRA has resolved the Union's claims, but not in the Union's favor. NATCA now returns to this Court in yet another attempt to have the Court overturn non-reviewable decisions made by the Federal Service Impasses Panel (FSIP) and the FLRA's General Counsel.

## BACKGROUND

A.     **The previous case between the Parties.**

Most of the parties to the instant action were before this Court a few years ago in a similar case. See National Traffic Controllers Ass'n v. Federal Services Impasses Panel, No. Civ.A. 04-0138, 2005 WL 418016 (D.D.C. Feb. 22, 2005), aff'd, 437 F.3d 1256 (D.C. Cir. 2006)(NATCA v. FSIP). In the previous case brought in 2004, NATCA and the Professional Airways Systems Specialists (PASS), another labor organization that represents FAA employees, asked the Court to direct the FSIP to assert jurisdiction over, inter alia, one of the bargaining impasses at issue in this case.[1] The unions asserted that

---

[1] The FAA was not a party to the case.

Leedom v. Kyne, 358 U.S. 184 (1958), gave the Court jurisdiction to compel the Panel to proceed under 5 U.S.C. § 7119. This Court granted summary judgment in favor of Defendants FSIP and FLRA, stating that the FLRA was the proper forum for adjudicating the unions' claims regarding bargaining impasses. NATCA, 2005 WL 418016, *5. The U.S. Court of Appeals for the District of Columbia Circuit affirmed that decision, agreeing that the proper course of action for the unions to resolve the issue of the appropriate impasse mechanism for FAA and its unions was by filing an unfair labor practice (ULP) charge with the FLRA. NATCA, 437 F.3d at 1265.

NATCA subsequently filed a ULP charge with the FLRA regarding the bargaining impasse at issue in the previous case before this Court, known as the "multi-unit impasse." See NATCA, 437 F.3d at 1261 (District of Columbia Circuit stating, "[a]fter a lengthy period of negotiation with the FAA on behalf of 11 bargaining units, involving approximately 1800 union members, the parties reached a bargaining impasse.") The Union also filed separate ULP charges regarding another bargaining impasse between it and the FAA that arose in 2006, known as the "controller impasse." As discussed more fully below, the FLRA considered NATCA's charges and unilaterally settled the charge relating to the multi-unit impasse and dismissed the charges relating to the controller impasse. It is axiomatic that the FLRA General Counsel's decisions to unilaterally settle the one charge and dismiss the two others – as opposed to issuing a complaint – are not reviewable by any court. See Patent Office Professional Ass'n v. Federal Labor Relations Authority, 128 F.3d 751 (D.C. Cir. 1997)(POPA v. FLRA).

NATCA now seeks a declaratory judgment and requests that the impasses be taken up by the Federal Service Impasses Panel after it twice declined to exercise jurisdiction over the impasses. We urge the court, however, on jurisdictional grounds, to resist the Union's invitation to revisit this issue.

**B.    The instant dispute.**

On July 8, 2003, NATCA requested the assistance of the FSIP in resolving a bargaining impasse with the FAA over changes to the FAA Personnel Management System (PMS) for ten (10) bargaining units represented by NATCA, i.e. the multi-unit impasse. On January 9, 2004, the FSIP declined to assert jurisdiction over the multi-unit bargaining impasse, stating:

> "The Panel has carefully examined the parties' positions regarding its jurisdiction over their impasse, including the applicable statutory provisions, and concludes that that the Employer has raised arguable questions concerning whether the Panel has the authority to resolve collective bargaining disputes over the compensation and benefits of FAA's bargaining-unit employees. In our view, such questions, which appear to involve determinations as to Congresses' intent in enacting statutory provisions subject to conflicting interpretations, must be addressed in an appropriate forum before the Panel commits its resources to assist in resolving the merits of their impasse."

FAA and NATCA, No. 03 FSIP 144 (Jan. 9, 2004)(Pl.'s Compl., Ex. 1).

On January 30, 2004, NATCA filed suit in the U.S. District Court for the District of Columbia against the FLRA and FSIP asking the Court, inter alia, to direct the FSIP to assert jurisdiction over the multi-unit impasse. See NATCA v. FSIP, No. Civ.A. 04-0138(RMC), 2005 WL 418016 (D.D.C. Feb. 22, 2005). The Court granted summary judgment in favor of defendants FLRA and FSIP on February 22, 2004, stating:

4

"Recognizing that the [FLRA] might be said to lack expertise to interpret the 1996 FAA

Act, the Court still concludes that it is the better forum to decide whether the FAA is

required to follow the entire impasse-resolution process of Chapter 71 for these particular

impasses." Id. at *5.

NATCA appealed this Court's February 22, 2004, decision to the U.S. Court of

Appeals for the District of Columbia Circuit. On February 17, 2006, the District of

Columbia Circuit affirmed this Court's decision, agreeing that the FLRA was the proper

forum to resolve the underlying dispute:

> "In short, if the Unions' interpretation of the disputed statutory provisions is
> correct, then it is clear that they have viable unfair labor practice charges
> that can be raised with and addressed by the FLRA. Thus, the Unions are
> not without possible redress for the alleged violations of their statutory
> rights. It is also clear that any alleged unfair labor practices must be
> addressed in the first instance by the FLRA – not by the FSIP, the District
> Court, or this court."

NATCA v. FSIP, 437 F.3d 1256, 1265 (D.C.Cir. 2006).

On March 3, 2004, the FAA submitted the NATCA multi-unit impasse to

Congress for resolution pursuant to 49 U.S.C. §§ 106 and 40122.[2] The FAA implemented

---

[2] Section 106($l$)(1) of title 49 states:

(1) Officers and employees. – Except as provided in subsections (a) and (g) of section
40122, the Administrator is authorized, in the performance of the functions of the
Administrator, to appoint, transfer, and fix the compensation of such officers and
employees, including attorneys, as may be necessary to carry out the functions of the
Administrator and the Administration. In fixing compensation and benefits of officers and
employees, the Administrator shall not engage in any type of bargaining, except to the
extent provided for in section 40122(a), nor shall the Administrator be bound by any
requirement to establish such compensation or benefits at particular levels.

(continued...)

the multi-unit contracts on July 10, 2005, after the expiration of the 60-day Congressional

review period mandated by 49 U.S.C. § 40122(a). On July 8, 2005, NATCA filed a ULP

charge with the FLRA (Case No. WA-CA-05-0450) alleging that the FAA failed to

bargain in good faith by implementing the multi-unit contracts. NATCA amended the

charge on July 14, 2005. After conducting a fifteen month investigation, The FLRA

unilaterally settled the ULP charge on October 3, 2006. The settlement upheld the FAA's

implementation of the multi-unit contracts. See Ex. 1, Letter from FLRA Director to

NATCA Director of Labor Relations re: Case No. WA-CA-05-0450 (Oct. 3, 2006).

On April 5, 2006, the FAA and NATCA bargained to impasse over changes to the

FAA PMS for air traffic controllers and other employees represented by the Union, i.e.

the controller impasse.[3] The FAA submitted the controller impasse to Congress for

---

[2](...continued)
Section 40122(a)(1) and (2) of title 49 states:

(a) In general.—(1) Consultation and negotiation.—In developing and making
changes to the personnel management system initially implemented by the
Administrator of the Federal Aviation Administration on April 1, 1996, the
Administrator shall negotiate with the exclusive bargaining representatives of
employees of the Administration certified under Section 7111 of title 5 and consult
with other employees of the Administration.
(2) Mediation.—If the Administrator does not reach an agreement under paragraph (1)
with the exclusive bargaining representatives, the services of the Federal Mediation and
Conciliation Service shall be used to attempt to reach such agreement. If the services of
the Federal Mediation and Conciliation Service do not lead to an agreement, the
Administrator's proposed changes to the personnel management system shall not take
effect until 60 days have elapsed after the Administrator has transmitted the proposed
change, along with the objections of the exclusive bargaining representatives to the
change, and the reasons for such objections, to Congress. The 60-day period shall not
include any period during which Congress has adjourned sine die.

[3] The controller impasse involves bargaining units represented by NATCA separate and

(continued...)

resolution pursuant to 49 U.S.C. §§ 106 and 40122 that day. After the 60-day

Congressional statutory review period had expired, the NATCA controller contract took

effect on June 5, 2006, in accordance with 49 U.S.C. § 40122(a). NATCA filed a ULP

charge with the FLRA on April 7, 2006, (Case No. WA-CA-06-0366) alleging, inter alia,

that the FAA improperly submitted the controller contract bargaining impasse to

Congress. On July 25, 2007, after a fifteen month investigation, the FLRA Regional

Director dismissed the ULP charge.  Ex. 2, Letter from FLRA Regional Director to

NATCA Policy Counsel re: Case No. WA-CA-06-0366 (July 25, 2007).  On January 29,

2008, the FLRA General Counsel denied NATCA's appeal of the FLRA Regional

Director's decision to dismiss the ULP charge. Ex. 3, FLRA Order Denying Appeal, Case

No. WA-CA-06-0366 (Jan. 29, 2008).  On February 26, 2008, the FLRA General Counsel

denied NATCA's motion for reconsideration of the FLRA General Counsel's January 29,

2008, decision.  Ex. 4, FLRA Order Denying Motion for Reconsideration, Case No. WA-

CA-06-0366 (Feb. 26, 2008).

On April 7, 2006, NATCA requested the assistance of the FSIP to resolve the

bargaining impasse between the FAA and NATCA over the controller contract. The FSIP

declined to assert jurisdiction over the impasse on July 6, 2006, stating:

> "The Panel has carefully examined the parties' positions regarding its
> jurisdiction over their impasse, including the applicable statutory
> provisions, and concludes that that the Employer has raised arguable
> questions concerning whether the Panel has the authority to resolve
> collective bargaining disputes over changes to the FAA's PMS, including
> the compensation and benefits of FAA's bargaining-unit employees. In our

---

[3](...continued)
distinct from those involved in the multi-unit impasse.

> view, such questions, which appear to involve determinations as to
> Congresses' intent in enacting statutory provisions subject to conflicting
> interpretations, must be addressed in an appropriate forum before the Panel
> commits its resources to assist in resolving the merits of their impasse."

FAA and NATCA, No. 06 FSIP 64 (July 6, 2006)(Pl.'s Compl., Ex. 2).

On July 11, 2006, NATCA filed a ULP charge with the FLRA (Case No. WA-CA-0563) alleging that the FAA failed to bargain under the auspices of the FSIP regarding the controller contract impasse.  On July 25, 2007, after a yearlong investigation, the FLRA Regional Director dismissed the ULP charge. In dismissing the charge, the Regional Director stated, ". . .fairly construed, [49 U.S.C.] §§ 40122(a)(1) and (2) replaced the provisions of the Statute for resolution of impasses."  See Pl. Mot. Summ. J., Forrey Decl., Ex F. On January 29, 2008, the FLRA General Counsel denied NATCA's appeal of the FLRA Regional Director's decision to dismiss the ULP charge.  Ex. 5, FLRA Order Denying Appeal, Case No. WA-CA-06-0563 (Jan. 29, 2008).  On February 26, 2008, the FLRA General Counsel denied NATCA's motion for reconsideration of the FLRA General Counsel's January 29, 2008, decision.  Ex. 6, FLRA Order Denying Motion for Reconsideration, Case No. WA-CA-06-0563 (Feb. 26, 2008).

NATCA filed this civil action on March 21, 2008.

## ARGUMENT

### A.    The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims.

"A motion under 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'"  Gardner v. U.S., No. CIV. A. 96-1467EGS, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153

(2001), quoting, Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987). Specifically,

"subject matter jurisdiction deals with the power of the court to hear [a] plaintiff's claims

in the first place, and therefore imposes upon courts an affirmative obligation to ensure

that they are acting within the scope of their jurisdictional power." 4 Wright & Miller:

Federal Prac. & Proc. § 1350 (R12)(2002 Supplement). A court may resolve a motion to

dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in two ways. First, the

court may determine the motion based solely on the complaint. Herbert v. National

Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992). Alternatively, to determine the

existence of jurisdiction, or lack thereof, a court may look beyond the allegations of the

complaint, consider affidavits and other extrinsic information, and ultimately weigh the

conflicting evidence.[4] See id.

---

[4]Alternatively, this suit should be dismissed against the FAA for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court essentially abrogated or "retired" the holding in Conley v. Gibson that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 127 S.Ct. at 1968-1969, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Supreme Court stated that Conley v. Gibson's "'no set of facts' language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings. . ." Twombly, 127 S.Ct. at 1968. The Supreme Court added that the "[no set of facts] phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

Accordingly, as clarified by Twombly, a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) should be granted if the plaintiff, in his or her pleading, fails to present "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S.Ct. at 1974. As explained herein, Plaintiff has failed to plead facts indicating that it can receive relief from the FAA.

Here, Plaintiff's claims against the FAA should be dismissed for lack of standing. "[A] showing of standing is an essential and unchanging predicate to any exercise of a court's jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C.Cir.1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). In Lujan v. Defenders of Wildlife the Supreme Court held that "the irreducible constitutional minimum of standing contains three elements." 504 U.S. at 560; see also Massachusetts v. E.P.A., 127 S.Ct. 1438, 1453 (2007). To establish standing, a plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest that is (a) concrete and particularized; and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (citations and internal quotations omitted). Second, there must also be a "causal connection between the injury and the conduct complained of– the injury has to be fairly . . . trace [able] to the challenged action of defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Id. (citations and internal quotations omitted). Finally, it must be "likely" as opposed to "speculative" that the injury can be redressed by a favorable decision. Id. "This triad of injury in fact [encompassing traceability to an action of defendant], causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 103 (1998). When, however, the traceability and redressability requirements of Article III standing are not met, a court will dismiss a case for lack of subject matter jurisdiction. Brady Campaign to Prevent Gun Violence United with Million Mom Watch

v. Ashcroft, 339 F.Supp.2d 68, 78 (D.D.C. 2004); see also Citizens Alert Regarding the

Environment v. Leavitt, 355 F.Supp.2d 366, 372-73 (D.D.C. 2005).

Plaintiff requests that the Court declare that the FSIP has jurisdiction to resolve

impasses between the FAA and labor organizations and enjoin the FSIP from refusing to

exercise its jurisdiction over impasses in collective bargaining negotiations between the

FAA and labor organizations representing the FAA's employees, including Plaintiff. Pl.'s

Compl., p. 11. Although Plaintiff claims that, in matters before the FSIP and FLRA, the

FAA has persuasively argued that 5 U.S.C. §§ 40122(a) and 49 U.S.C. § 106(l) divest the

FSIP of jurisdiction to review impasse claims, Plaintiff's claims are nevertheless

exclusively based on the actions of the FSIP. See Pl.'s Statement of Material Facts as to

Which There is No Genuine Dispute, ¶¶ 10 and 12, 13 and 14. It requests that this Court

compel the FSIP to exercise its jurisdiction. Pl.'s Compl., p. 11. Assuming arguendo that

Plaintiff receives a favorable decision, any redress must come exclusively from the FSIP.

The harm alleged by Plaintiff is not "traceable" to the FAA and cannot be redressed by

that Agency. Accordingly, Plaintiff lacks standing to bring this suit as against the FAA,

and its claims against the Agency should be dismissed for lack of standing.

**B.    The Court Lacks Jurisdiction to Review the FLRA General Counsel's
       Decision Not to Issue a Complaint in a ULP Proceeding.**

While Plaintiff casts the central issue to be resolved in this case as one that

involves the FSIP's authority to assert jurisdiction over these impasses, an alternative

characterization of Plaintiff's claims is whether the FLRA General Counsel's decision not

to issue a complaint is reviewable. That issue has been clearly resolved in the case of

11

POPA v. FLRA.  In that case, the Court emphatically resolved the same issue presented

here:

> Lest there be any lingering confusion, we write to make clear that, even
> after Heckler v. Chaney, it remains the law of this circuit that a decision of
> the General Counsel of FLRA not to issue a complaint is not judicially
> reviewable given that the process provides for review only of decisions of
> the Authority.

128 F.3d at 753.  NATCA followed the direction of this Court and the U.S. Court of

Appeals of the District of Columbia Circuit and filed unfair labor practice charges with

the FLRA over the FAA's submission of the impasses to Congress and the FSIP's failure

to take jurisdiction over the impasses in 2003 and 2006. Upon review of NATCA's unfair

labor practice charges, the FLRA Regional Director and General Counsel refused to issue

complaints.  Consistent with POPA v. FLRA, there is no judicial review of that

determination.[5]

## C.    The Court Lacks Jurisdiction to Review the FSIP's Decisions Not to Assert Jurisdiction.

In addition to being fairly characterized as an attempt at judicial review of the

FLRA General Counsel's nonreviewable decision not to issue complaints in ULP

proceedings, the instant action can also be portrayed as an attempt by NATCA to have the

Court review and overturn the Panel's decisions declining to exercise jurisdiction over the

---

[5]In a similar vein, both the Supreme Court and the U.S. Court of Appeals for the District
of Columbia have declared that . . .decisions of the General Counsel of the National
Labor Relations Board whether to issue complaints are not subject to review by this court.
See NLRB v. United Food & Commercial Workers Union, Local 23, 484 U.S. 112
(1987); Beverly Health & Rehabilitation Servs. Inc v. Feinstein, 103 F.3d 151, 154
(D.C.Cir. 1996).

multi-unit and controller disputes between the FAA and NATCA. Decisions of the Panel, however, are not subject to review except in "exceptional circumstances." Council of Prison Locals v. Brewer, 735 F.2d 1497, 1500-01 (D.C.Cir. 1984) (Brewer). The circumstances, which the District of Columbia Circuit has characterized as "extremely narrow in scope" are limited to situations where the FLRA has acted in "excess of its delegated powers and contrary to a specific prohibition of the. . . Act." NATCA v. FSIP, 437 F.3d at 1263, quoting, Leedom v. Kyne, 358 U.S. 184, 188 (1958). This Court and the District of Columbia Circuit have already addressed whether the assertion of Leedom jurisdiction is appropriate with regard to the NATCA multi-unit impasse and determined that it was not.   See NATCA v. FSIP, 437 F.3d at 1258 ("In this case, the Unions have failed to demonstrate either of the predicates necessary for Leedom jurisdiction: The specific statutory provision identified by the Unions is not sufficiently 'clear and mandatory' to require the Panel to exercise jurisdiction over these disputes . . . and the Unions have failed to show that, without the District Court's exercise of jurisdiction, they have no 'meaningful and adequate means of vindicating [their] statutory rights' . . .")  The same rationale that the courts applied to the Panel's decision regarding the multi-unit impasse is equally applicable to the controller impasse. NATCA cannot circumvent the non-reviewability of Panel decisions through an action for declaratory and injunctive relief in this Court.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff's Complaint against the FAA should be dismissed with prejudice since Plaintiff cannot demonstrate that the Court has subject matter jurisdiction over this matter.

Respectfully Submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell

Of Counsel:                          _____
Elizabeth Head, Esq.                 BEVERLY M. RUSSELL, D.C. Bar #454257
Michael Doherty, Esq.                Assistant United States Attorney
Federal Aviation Administration      U.S.  Attorney's Office for the District of Columbia,
                                       Civil Division
                                     555 4th Street, N.W., Rm. E-4915
                                     Washington, D.C. 20530
                                     Ph:  (202) 307-0492
                                     Fax: (202) 514-8780
                                     E-Mail: beverly.russell@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of *Defendant Federal Aviation*

*Administration's Motion to Dismiss and Opposition to Plaintiff's Motion for Summary*

*Judgment* was made by the Court's Electronic Case Filing System to:

William W. Osborne, Jr.
Natalie C. Moffett
Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W., Suite 108
Washington, D.C.  20008
b.osborne@osbornelaw.com

Marguerite L. Graf
General Counsel
National Air Traffic Controllers Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C.  20005
mgraf@natcadc.org

James F. Blandford
Federal Labor Relations Authority
1400 K Street, N.W., Suite 300
Washington, D.C.  20424
jblandford@flra.gov

this 20th of May, 2008.

/s/ Beverly M. Russell
_____
BEVERLY M. RUSSELL
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 08-00481(RMC) ) |
| FEDERAL SERVICE IMPASSES PANEL and FEDERAL LABOR RELATIONS AUTHORITY, | ) ) ) |
| and | ) ) |
| UNITED STATES DEPT. OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, | ) ) ) |
| Defendants. | ) ) ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**STATEMENT OF MATERIAL FACTS AS TO WHICH**
**THERE IS NO GENUINE DISPUTE**

Plaintiff filed a Motion for Summary Judgment and accompanying Statement of

Material Facts as to Which There is No Genuine Dispute ("Plaintiff's Statement").

Although Defendant Federal Aviation Administration is moving to dismiss this suit for

lack of jurisdiction, and thus, consistent with the Local Rules, is not including a

Statement of Material Facts Not in Dispute to support this Motion, the FAA provides the

following in response to Plaintiff's Statement.

1 - 6.   The FAA does not dispute Paragraphs 1 - 4 and 6 of Plaintiff's Statement,

but disputes Paragraph 5.

7-13.   The FAA disputes Paragraphs 7 - 13 to the extent inconsistent with the

factual allegations presented in Defendant's Motion.

14.    Paragraph 14 is argument and a conclusion, and thus, not a statement of fact.

Respectfully Submitted,


/s/ Jeffrey A. Taylor /dvh
_____
JEFFREY A. TAYLOR, D.C. BAR #498610
United States Attorney


/s/ Rudolph Contreras
_____
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


/s/ Beverly M. Russell
Of Counsel:                                    _____
Elizabeth Head, Esq.                   BEVERLY M. RUSSELL, D.C. Bar #454257
Michael Doherty, Esq.                 Assistant United States Attorney
Federal Aviation Administration   U.S.  Attorney's Office for the District of Columbia,
                                                        Civil Division
                                                   555 4th Street, N.W., Rm. E-4915
                                                   Washington, D.C. 20530
                                                   Ph:  (202) 307-0492
                                                   Fax: (202) 514-8780
                                                   E-Mail: beverly.russell@usdoj.gov



UNITED STATES OF AMERICA
## FEDERAL LABOR RELATIONS AUTHORITY
**WASHINGTON REGIONAL OFFICE**
1400 K Street, NW, 2nd Floor
Washington, DC 20001-8000
(202) 357-6029   FAX: (202) 482-6724

October 3, 2006

Marc Shapiro, Director
Labor Relations
National Air Traffic Controllers Association
1325 Massachusetts Avenue, NW
Washington, DC 20005

RE:   U.S. Department of Transportation, Federal
Aviation Administration
Case No. WA-CA-05-0450

Dear Mr. Shapiro:

Enclosed herein is a copy of the unilateral Settlement Agreement (Agreement) that has been approved in the case identified above.

The sole issue presented in this case is whether the U.S. Department of Transportation, Federal Aviation Administration (FAA) violated the Federal Service Labor-Management Relations Statute (Statute) by implementing master collective bargaining agreements before satisfying obligations imposed by the Statute. It was decided that sufficient evidence was obtained during the investigation of the charge to present that issue to an administrative law judge for resolution. Before issuance of a complaint, however, a settlement agreement, including a notice to employees, was accepted by the FAA, and was approved.

By entering into the settlement, the FAA agrees to post for sixty (60) days a Notice To Employees (Notice) signed by the Deputy Administrator. It further agrees that the Notice will be posted where notices to employees in the bargaining units affected by the Agreement customarily are posted. Finally, the FAA agrees to bargain with the National Air Traffic Controllers Association (NATCA) over the subject of duration for collective bargaining agreements covering the affected employees in the units identified in the Notice and the Agreement.

NATCA opposes the approval of the Agreement. First, NATCA objects to the length of time taken to resolve the dispute in this case. Second, NATCA contends that it was unduly rushed into responding to proposed settlement agreements and notices to employees. Third, NATCA contends that the FAA received favorable treatment in the settlement process by obtaining extensions of time to respond to proposed settlement agreements and notices. Fourth, NATCA contends that considering granting approval of the proposed settlement before a complaint in this case was issued is contrary to a policy of the Federal Labor Relations Authority (FLRA). Fifth,

and last, NATCA contends that it will be denied due process because it has been deprived of its right to a genuine appeal of the decision to approve the Settlement Agreement. NATCA has not raised any objection to the terms of the Agreement or Notice.1

It is not clear how the length of time taken to decide the merits of the amended charge NATCA filed in this case is relevant to whether the proposed settlement agreement and notice to employees should be approved. NATCA has not advanced any argument indicating any relevance.

In addition, the length of time taken to resolve the merits of the amended charge was not unreasonable. The amended charge in this case was filed on July 14, 2005. Before the last half of December 2005, the only alleged changes in working conditions implemented by the FAA that were described by NATCA witnesses involved compensation. Over the next two months, NATCA witness described other types of alleged changes.

During this period, the issue raised in the amended charge of whether the FAA acted unlawfully by submitting to Congress an impasse over compensation the Parties reached also was raised by NATCA in Federal court proceedings. The issue was not resolved by either the Federal District Court or the Federal Court of Appeals, which ruled that the issue must be addressed first in proceedings before the FLRA. *Nat'l Air Traffic Controllers Ass'n, AFL-CIO v. Fed. Serv. Impasses Panel*, 437 F.3d 1256 (D.C. Cir. 2006). In light of the proceedings in the Federal Court, it was decided to postpone consideration of the issue until the Court of Appeals issued a decision.

As NATCA stated several times during the investigation, the issues raised by the charge are highly significant to the FAA, NATCA, and the other unions that represent FAA employees. In light of that, and the other matters described above, the amount of time it has taken to decide the merits of the charge NATCA filed is not unreasonable.

The FLRA's Washington Regional Office (WRO) sent both Parties a proposed settlement agreement and proposed notice to employees on September 20, 2006. Both Parties were informed that a complaint would be issued unless a settlement was reached by September 22. Both Parties had objections to the proposal, and indicated the deadline could not be met. The deadline was extended.

Revisions to the proposed agreement and notice were sent to the Parties on September 28. The revisions were based on separate telephone conversations between representatives of both Parties and the WRO Regional Attorney. The revisions essentially adopted both Parties' common understanding of the bargaining units that would be affected by the settlement, and added a provision that the agreement and notice did not waive either Party's rights under the Statute, the

---

1 The Notice approved as part of the Settlement Agreement differs from the proposed notice in one way: in the first paragraph of the Notice, it has been made clear that the statutory obligation addressed applies to future conduct, not conduct that already has occurred. Both Parties expressed concerns that the proposal as drafted included *status quo ante* relief. While representatives of both parties were informed that no such relief was intended, it was decided that the proposal should be altered to reflect the meaning and intent of the obligation.

Federal Aviation Act, or any other applicable law. No other substantive revisions to the proposal were made. The Parties were given a deadline of 2:00 on the afternoon of September 29 to accept the agreement or express objections to it in writing.

Thus, NATCA effectively had more than one week to consider objections to the proposed settlement, save for the two revisions, one of which was effectively approved in advance by NATCA and the other which required little, if any, time to consider. NATCA was not, therefore, rushed in its consideration of the proposed settlement.

The contention that FAA received favorable treatment in the settlement process is based on the failure to hold the Parties to the original deadline for responding to the proposed settlement. NATCA asserts this was done as a favor to the FAA based on its response that the proposal needed revision. In fact, both parties expressed objection to the initial proposal. It appeared, however, that the objections could be overcome without undue delay, so a new deadline was established. Thus, the contention that the FAA received favoritism lacks merit.

The contention that FLRA policy prohibits settlement of an unfair labor practice charge before issuance of a complaint based on that charge lacks merit. Section 2423.10(a) of the FLRA Regulations, 5 C.F.R. § 2423.10(a) grants a Regional Director the authority to approve a written settlement agreement as well as to issue a complaint. It does not provide, expressly or by necessary implication, that the former action must follow the latter. Section 2423.12(b), 5 C.F.R. § 2423.12(b), does expressly provide that a Regional Director may enter into an informal settlement with a charged party prior to issuance of a complaint.

The "policy" on which NATCA bases its argument consists of a statement the General Counsel of the FLRA allegedly made at a "brown bag lunch" meeting sponsored by a section of the District of Columbia BAR Association. NATCA alleges that the General Counsel said unfair labor practice charges would not be settled before issuance of a complaint. There is no recording or transcription of such a statement, and no sworn affidavits supporting NATCA's allegation have been provided. Even if such a statement had been made, however, it did not have the effect of superseding FLRA Regulations. Nor could a single oral statement by the General Counsel at a "brown bag lunch" meeting reasonably be construed as an expression of a General Counsel policy.

Section 2423.11(a) of the FLRA's Regulations, 5 C.F.R. § 2423.11(a), grants a charging party the right to appeal to the General Counsel a Regional Director's decision to not issue a complaint. That has been interpreted to include a Regional Director's decision to approve a settlement agreement before a complaint is issued. NATCA contends that it has been denied the right to appeal approval of the Settlement Agreement in this case because the right includes having someone other than the FLRA official who approved the Agreement consider an appeal, and the concerns NATCA raised in its other objections "smack[s] of a scenario where policies and procedures were not followed." Since NATCA has not presented any evidence to support its contention, and its other objections have been found to lack merit, this contention also must be rejected.

3

Accordingly, approval of the Agreement accepted by the FAA effectuates the purposes and policies of the Statute. *See* section 2423.12(b) of the FLRA's Regulations, 5 C.F.R. § 2423.13(b). If NATCA does not agree with this decision, it may file an appeal with the General Counsel at the address below. As a result, the FAA is not required to take any action regarding compliance with the terms of this Agreement until informed to do so by this office. Your appeal should include the Case Number (WA-CA-05-0450) and be addressed to the:

> Federal Labor Relations Authority
> Office of the General Counsel
> Attention: Appeals
> 1400 K Street, NW, Suite 200
> Washington, DC 20424-0001

You can file your appeal by mail or by hand-delivery. Whichever method you choose, please note that **the last day for filing an appeal in this case is November 6, 2006.** This means that an appeal that is mailed must be postmarked, or an appeal must be hand-delivered, no later than **November 6, 2006.** Please send a copy of an appeal to the Regional Director. The other parties should also be notified that an appeal has been filed, but they do not need to be served with a copy of the appeal appeal.

If more time is needed to prepare an appeal, an extension may be requested. Mail or hand-deliver a request for an extension of time to the Office of the General Counsel at the address listed above. Because requests for an extension of time must be **received** at least five days before the date the appeal is due, any request for an extension of time in this case must be **received** at the above address no later than **November 1, 2006.**

The procedures, time limits, and grounds for filing an appeal are set forth in the Authority's Regulations at section 2423.11(c) through (e). 5 C.F.R. sec. 2423.11(c)-(e). The regulations may be found at any Authority Regional Office, public law library, some large general purpose libraries and Federal personnel offices and the Authority's home page internet site (www.FLRA.gov). Enclosed is a document which summarizes commonly asked questions and answers regarding the Office of the General Counsel's unfair labor practice appeals process.

Sincerely,

Robert P. Hunter
Regional Director

Case Assigned To:    Thomas F. Bianco, Regional Attorney
                     202-357-6029, ext. 6022

4

Enclosures:    Settlement Agreement
               Notice to Employees

cc:    Elizabeth J. Head, Esq.
       Office of the Chief Counsel
       Labor and Personnel Division, ACG-30
       Federal Aviation Administration
       600 Independence Ave., SW, 1st Floor
       Washington, DC 20591

       Office of Quality and Appeals
       FLRA Office of General Counsel

**UNITED STATES of AMERICA**
**Before The**
**The FEDERAL LABOR RELATIONS AUTHORITY**
**WASHINGTON REGION**
**Case No. WA-CA-05-0450**

U.S. DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
(Respondent)

-AND-

NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION
(Charging Party)

## SETTLEMENT AGREEMENT

The undersigned Agency and the undersigned Charging Party in settlement of the above matter, and subject to the approval of the Regional Director on behalf of the Federal Labor Relations Authority, **HEREBY AGREE AS FOLLOWS:**

**POSTING OF NOTICE** – The Respondent will post copies of the Notice to all Employees, attached hereto and made a part thereof, in conspicuous places, including all bulletin boards and other places where notices to employees are customarily posted at the Agency for a period of at least sixty (60) days from the date of the posting.

**ACTION TO BE TAKEN** — (1) The Notice To Employees will be signed by the Deputy Administrator. (2) This Settlement Agreement, which includes the Notice to Employees, applies to bargaining unit employees represented by the Charging Party in the following organizations: AGC, AAM, ABA, ARP, and ARC; AIR; AAM-800 (Drug Abatement); AJT-13 to the extent that it includes unit employees who had been assigned to former ATB-200, and AJE-12 and AJE-16 to the extent that they include unit employees who had been assigned to former AOS-300.

**COMPLIANCE WITH AGREEMENT** — The Agency will comply with all the terms and provisions of this Agreement within sixty (60) days of the signing of this Agreement.

**REFUSAL TO ISSUE COMPLAINT** — In the event the Charging Party fails or refuses to become a party to this Agreement, then, if the Regional Director concludes that it will effectuate the policies of Chapter 71 of Title 5 of the U.S.C., she or he shall decline to issue a Complaint herein and this Agreement shall be between the Agency and the undersigned Regional Director. A review of such action may be obtained pursuant to Section 2423.12(b) of the Regulations of the Federal Labor Relations Authority if an appeal is filed within twenty-five (25) days thereof. This Agreement is contingent upon the General Counsel sustaining the Regional Director's action in the event of an appeal. Approval of this Agreement by the Regional Director shall

constitute withdrawal of any Complaint(s) and Notice of Hearing heretofore issued in this case. Respondent will not be required to comply with any subpoenas previously issued in these cases.

**PERFORMANCE** — Performance by the Agency of the terms and provisions of this Agreement shall commence immediately after the Agreement is approved by the Regional Director or, in the event the Charging Party does not enter into this Agreement, performance shall commence immediately upon receipt by the Agency of advice that no appeal has been filed or that the General Counsel has sustained the Regional Director. This Agreement does not constitute a waiver of either Party's rights under the Federal Service Labor-Management Relations Statute, the Federal Aviation Act, or any other applicable law.

**NOTIFICATION OF COMPLIANCE** — The undersigned parties to this Agreement will notify the Regional Director in writing what steps the Agency has taken to comply herewith. Such notification shall be made, unless otherwise specifically required, after sixty (60) days, from the date of the approval of this Agreement, or, in the event the Charging Party does not enter into this Agreement, after the receipt of advice that no appeal has been filed or that the General Counsel has sustained the Regional Director.

**COMPLIANCE WITH SETTLEMENT AGREEMENT** — Contingent upon compliance with the terms and provisions hereof, no further action shall be taken in the above case.

U.S. Department of Transportation
Federal Aviation Administration

(Agency)

National Air Traffic Controllers Association

(Charging Party)

By: Elizabeth J. Head, Esquire
    Office of the Chief Counsel
    (Typed or printed name and title)

By: _____
    (Typed or printed name and title)

Date: 09/29/2006 _____

Date: _____

/s/ Elizabeth J. Head
Signature

Signature

Approved: September 29, 2006
                    Date

By: _____
    Regional Director



UNITED STATES OF AMERICA
### FEDERAL LABOR RELATIONS AUTHORITY
**SAN FRANCISCO REGION**
901 Market Street, Suite 220
San Francisco, California 94103-1791
(415) 356-5000 Fax:(415) 356-5017

July 25, 2007

Eugene Freedman, Policy Counsel
National Air Traffic Controllers Association
1325 Massachusetts Avenue, NW
Washington, DC 20005

Re:    Federal Aviation Administration
Washington, D.C.
Case No. WA-CA-06-0366

Dear Mr. Freedman:

The unfair labor practice charge in this case was filed with the Washington Regional Office on April 5, 2006 and was transferred to the San Francisco Regional Office on September 7, 2006. After investigation, consideration of the evidence, and application of the law to the facts, issuance of a complaint is not warranted.

The charge alleges that the Federal Aviation Administration (FAA) insisted to impasse on permissive subjects of bargaining during term negotiations with the National Air Traffic Controllers Association (NATCA). The charge further alleges that FAA engaged in a pattern of bad faith bargaining throughout the negotiations. This conduct is alleged to violate section 7116(a)(1) (5) and (8) of the Federal Service Labor-Management Relations Statute (Statute). The FLRA has jurisdiction over this timely-filed charge.[1]

From July 2005 through April 5, 2006, NATCA and FAA were in negotiations over a new term collective bargaining agreement in their national air traffic units. The groundrules for contract bargaining, among other things, specified that once agreement on a provision was reached, the parties were to initial the provision as "tentatively agreed upon" (TAU). The groundrules also provided that any TAU provision could be reopened only by mutual agreement of both parties. Early in the negotiations, NATCA notified FAA that it reserved the right to submit a final agreement to its membership for ratification prior to implementation.

---

[1] The charge also alleges that FAA failed to comply with section 7119 of the Statute by submitting its final contract directly proposal to Congress and refusing to cooperate in impasse proceedings before FSIP. The charge NATCA filed in related Case No. WA-CA-06-0563 raises this same allegation. The allegation is addressed in the dismissal letter issued today in Case No. WA-CA-06-0563.

1

During the many months of contract bargaining, including six weeks of mediation with the Federal Mediation and Conciliation Service (FMCS), both parties repeatedly revised their proposals and made concessions. The parties reached agreement on 100 contract articles, but did not agree on others. On April 5, 2006, FAA submitted its final contract proposal to Congress. When Congress took no action on the matter within 60 days, FAA notified NATCA that its final contract proposal was in effect. As NATCA did not agree that there was a final agreement, it did not conduct a ratification vote on FAA's final contract proposal.

NATCA alleges that the overall pattern of FAA's conduct in the negotiations evidenced bad faith bargaining. In this regard, NATCA claims that FAA bargained from a fixed position concerning pay matters, with the overall goal to reach impasse, submit the matter to Congress and implement its desired changes without meaningful impasse resolution. NATCA also asserts, as evidence of the overall pattern of conduct (1) that FAA improperly submitted earlier versions of Articles 4 and 63 to Congress, rather than what the parties had tentatively agreed on these articles; (2) that FAA insisted to impasse on permissive topics in the negotiation of Articles 17, 18, 33, 38 and 106; (3) that FAA engaged in regressive bargaining with respect to Articles 18, 38, 106, and Facility ATC levels/developmental pay stages; (4) that FAA submitted NATCA's Pay Administration proposal to Congress but did not submit a management proposal; (5) that FAA's overall conduct amounted to surface bargaining over NATCA's proposed articles on Child Care Subsidies, Student Loan Repayment, Dependent Education, and Flight Training Incentives; (6) that FAA denied NATCA the opportunity to conduct a ratification vote; and (7) that FAA's conduct when the parties met for the final time on April 5, 2006 evidenced a desire to reach impasse rather than to continue bargaining. NATCA also contends that because of the FAA's alleged bad faith in negotiations, the parties were not at impasse on April 5, 2006. As to the facts of NATCA's specific allegations:

Articles 4 and 63: The parties initialed Article 4 as TAU on January 11, 2006 and Article 63 as TAU on February 20, 2006. When FAA made its submission to Congress on April 5, 2006, it included versions of these articles from earlier in the negotiations. Therefore, what was submitted to Congress did not include the TAU language. The FAA included the correct, TAU language for both Article 4 and Article 63 when it implemented its final contract proposal on September 3, 2006.

Insistence to Impasse on Permissive Topics: NATCA objected to FAA's last offer on Articles 17, 18, 33, 38 and 106 on the basis that it would foreclose negotiations during the life of the agreement based on "covered by." The parties had agreed in bargaining over Article 7 to very limited local level bargaining and to a waiver of the second prong of the Authority's "covered by" test. In NATCA's view, FAA's proposals on these five articles contained language that would render certain subjects "specifically contained" in the agreement and, therefore, subject to the first prong of the "covered by" test. NATCA argues that agreeing to the inclusion of this language was permissive to the union and that FAA engaged in bad faith bargaining by insisting to impasse on the inclusion of the disputed language.

Regressive Bargaining: NATCA alleges that FAA's conduct with respect to four contract provisions evidenced regressive, bad faith bargaining. NATCA raised the allegations with respect to three of these articles, Controller-In-Charge, Duration of Agreement, and Facility ATC

2

Levels in separate unfair labor practice charges in which it was alleged that FAA had withdrawn from tentative agreements and substituted regressive proposals. In each case it was concluded that the FAA had not withdrawn from prior agreements and, therefore, had not engaged in regressive bargaining as alleged.[2]

The fourth contract provision involves Article 38 on Overtime. The parties first discussed the Overtime article at the table on July 20, 2005. At that time, NATCA explained its proposals to add local level bargaining over assignment procedures, overtime bypass remedies, and providing the union with overtime rosters. In addition, NATCA proposed new types of overtime pay in certain circumstances, e.g. when the employee was already receiving other premium pay. NATCA also proposed a definition of the beginning and end of the work day and the work week, sections 11 and 12, to which FAA consistently objected and would not agree. In addition, throughout the negotiations, FAA asserted that these two proposals might be nonnegotiable.

The parties discussed their proposals and revised them repeatedly throughout the negotiations, but never reached agreement on Overtime. FAA did not alter its position after making its last counterproposal on February 17, 2006. NATCA's proposed sections 11 and 12 remained key parts of the dispute. At the final session on April 5, 2006, NATCA offered a revised proposal that retained the disputed sections. NATCA asserted that FAA believed these provisions were nonnegotiable. FAA neither agreed or disagreed with this assessment. NATCA requested a written allegation of nonnegotiability. FAA never provided the allegation. Instead, on April 5, 2006, FAA submitted both parties' final offers on Overtime to Congress, as part of the impasse.

Surface Bargaining: During the negotiations, NATCA proposed five entirely new contract articles and contends that FAA's conduct with respect to these proposals evidences surface, bad faith bargaining. After this charge was filed, in August 2006, the Authority found that one of these articles, involving a proposed Runway Incursion Program, was outside the duty to bargain. To summarize the facts with respect to the other articles:

Childcare Subsidies: The parties discussed NATCA's proposed article on childcare subsidies on August 9, 2005 and again on December 1, 2005, but FAA did not make any counterproposal. When NATCA inquired about when it would receive a counterproposal, FAA asserted either that the issue was not negotiable or that it was permissive. Aside from those exchanges, the parties did not discuss the matter again until the final session on April 5, 2006. When asked to take a specific position at that time, FAA rejected the proposal on the merits.

Student Loan Repayments: The parties discussed this proposed article on October 12, 2005, but FAA did not offer any counterproposals. Once or twice during the course of negotiations, NATCA asked when FAA would make a counterproposal on this article. FAA asserted that the article was either nonnegotiable or permissive. FAA never made a counter-proposal to the union's proposed student loan repayment article. When NATCA asked FAA for a specific position at the final meeting on April 5, 2006, FAA rejected the proposal on the merits.

---

[2] These allegations were addressed in the dismissal letters issued today in Case Nos. WA-CA-06-0358, WA-CA-06-0363 and WA-CA-06-0716.

Dependent Education:  Payment for Non-CONUS dependent education in DODDS schools existed as a practice for NATCA unit employees and in the 2005/6 contract negotiations, NATCA proposed to make it a matter of agreement.  FAA had attempted to terminate the practice prior to these negotiations.  The parties first discussed NATCA's proposed contract article on December 1, 2005.  The discussion turned around the costs and whether all of the dependents covered by the NATCA proposal were eligible.  The parties discussed a revised NATCA proposal on December 8, 2005, but FAA made no counter offers.  The article was never addressed again and FAA never provided any counterproposal before FAA declared an impasse in bargaining.  NATCA argues that the FAA never bargained over the proposal at all.  According to NATCA, from the outset, FAA insisted that it had decided to terminate this long-standing practice and refused to bargain on the union's negotiable proposal to establish a contractual program for paying education expenses for dependents in non-CONUS locations.

Flight Training:  The FAA did not make any counter-proposals on NATCA's proposed contract article to provide flight training incentives for air traffic controllers.  The proposal was discussed at the bargaining table on December 6, 2005.  FAA did not engage in much discussion of the proposal or agree to it.  During the discussion, one FAA negotiator asserted that the proposal was outside the duty to bargain as it did not involve conditions of employment.  Another FAA negotiator asserted that FAA would not agree to the proposal because management did not want to give awards to employees for enhancing their own promotion prospects.  The article was among those submitted at impasse to Congress.

April 5, 2006:  The FMCS Commissioner had released the parties from mediation on March 31, 2006.  The April 5, 2006 session was scheduled as the final meeting to review the status of proposals.  In the absence of agreement, FAA intended to submit its final offer to Congress that day.  The meeting on April 5, 2006 took place at the NATCA offices.  The parties started in the morning reviewing all of the articles, one by one.  NATCA, verbally, made a new offer on Pay.  According to NATCA, the parties had made progress on pay issues during mediation.  Throughout the negotiations, NATCA had moved toward the FAA's Pay proposals.  FAA claimed that NATCA wanted to revert to the current system when the contract expired.  NATCA insisted it on preserving the right to bargain to renew the system after the expiration of the contract.  This dispute was critical to the negotiations on Pay and is referred to as savings in the out years.

When NATCA made its new proposal, FAA discussed the issues and appeared receptive, even offering verbal counters.  FAA agreed to review the revised NATCA proposal and NATCA agreed to provide it in writing.  Just before the lunch break on April 5, 2006, NATCA gave FAA the written proposal.  After lunch, the parties discussed NATCA's proposal and FAA rejected it.  FAA explained that the proposal was not acceptable because it did not offer savings in the out years.  The parties then continued discussing the articles still in dispute.

Some of the FAA's bargaining team members did not appear at the afternoon session on April 5, 2006.  In mid-afternoon, FAA's Chief Negotiator declared an impasse.  Before the FAA team left the NATCA building on that day, two things happened that NATCA believes were significant.

First, the FAA Administrator held a press conference to announce that the parties were at impasse and the dispute had been submitted to Congress. Also, a messenger arrived to serve NATCA with a copy of FAA's submission.

Based on these events, NATCA argues that the FAA was only interested in reaching impasse and not in reaching agreement on April 5 and that its conduct amounted to bad faith.

Pay: NATCA also alleges that FAA engaged in bad faith conduct in the overall negotiations on pay by bargaining from a fixed position over pay matters. FAA entered the contract negotiations insisting on changing the NATCA pay system to be consistent with the rest of the agency and to reduce escalating costs. Throughout the negotiations, FAA took the position that the existing pay system and NATCA's proposals to extend it were not effective and cost too much. The parties did make progress in their negotiations over pay matters, but were not able to reach agreement. In the end, NATCA held out for an agreement to allow room for to reestablish the existing system when the contract expired and FAA insisted on securing out year savings by establishing the new rules on a permanent basis.

As additional evidence of bargaining from a fixed position, NATCA points to two documents it received unofficially during the negotiations. One of these documents is clearly the result of a management effort to engage in strategic planning for the contract negotiations. This includes identifying sides' perceived negotiation positions, strengths, and weaknesses. FAA's fallback position on the issues is listed as reaching impasse. The other document apparently is notes from a conference call in which managers were given an update on the NATCA contract. An unnamed individual is noted as stating during this conference, no pay bargaining with NATCA.

Pay Administration: NATCA contends that FAA engaged in bad faith bargaining by submitting only the NATCA version of the Pay Administration Article. FAA proposed to eliminate the Pay Administration Article and include any necessary procedures in the article on Pay. NATCA proposed to retain a Pay Administration article, to facilitate bargaining to restore existing pay rules when the new agreement expired. The parties did not agree on whether or not to include a Pay Administration article in the contract. FAA submitted NATCA's proposed article to Congress, but did not submit anything for the agency.

Section 7103(a)(12) of the Statute defines collective bargaining as the "performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees. . ." but that obligation "does not compel either party to agree to a proposal or to make a concession."

In order to determine whether a party has met its obligation to bargain in good faith, the Authority examines the totality of the charged party's conduct. E.g. *U.S. Dep't. of the Air Force, Headquarters, Air Force Logistics Command, Wright-Patterson Air Force Base, Ohio*, 36 FLRA 524, 531 (1990) (*Wright-Patterson*). Further, while evidence of bad faith bargaining may be found in withdrawal of a tentative or previous agreement, such action does not necessarily

establish *per se* an absence of good faith. *Dept. of Treasury, Internal Revenue Serv., Memphis Serv. Ctr.*, 15 FLRA 829, 845 (1984).

There is no FLRA precedent on regressive bargaining as part of the good faith bargaining obligation. In the private sector, the term regressive bargaining is used to refer to a party offering a proposal and, when it is favorably received, withdrawing it for a lesser proposal. The NLRB has found that, in certain circumstances, if a party withdraws a bargaining proposal on which tentative agreement has been reached and, in its place, substitutes a regressive proposal, the conduct has the effect of impeding collective-bargaining in an attempt to prevent an agreement. *See, e.g., Arrow Smith and Door Co.*, 281 NLRB 1108 (1980). The NLRB's determination of whether the withdrawal of previously advanced proposals constitutes bad faith bargaining is based on the totality of the circumstances. *Driftwood Convalescent Hosp.*, 312 NLRB 247, 252 (1993). Although currently pending on exceptions to the Authority, an Administrative Law Judge recently applied private sector precedent in a decision finding that a party had engaged in regressive, bad faith bargaining. *American Federation of Government Employees, Local 3937, AFL-CIO*, OALJ 07-15, May 24, 2007.

Surface bargaining, similarly, is a term of art in private sector labor relations. It refers to negotiation conduct in which an employer bargains from a fixed position on contract proposals that would so restrict the union's rights that the exclusive representative could not effectively represent its unit if it accepted the proposals. *See, e.g., A 1 King Size Sandwiches, Inc.*, 265 NLRB 850 (1982), *enfd.* 732 F. 2d 872, 116 LRRM 2658 (11th Cir. 1984), *cert. denied* 469 U.S. 1034 [unlawful surface bargaining found where proposals would strip the union of the ability to represent its members effectively and that, if accepted, would have left the union with less than the rights conferred by its certification]; *compare, Reichhold Chemicals*, 288 NLRB 69 (1988), reconsidering 277 NLRB 639 (1985) (no surface bargaining where employer insisted on a broad no strike clause, a narrow grievance clause, and a broad management rights clause, but made some concessions on the no strike clause and the management rights clause, and the parties agreed to some matters). The bad faith conduct found to violate the Statute in *U.S. Geological Survey, Caribbean Dist. Office, San Juan, P.R.*, 53 FLRA 1006 (1997) arguably involved surface bargaining.

As to the FAA's inclusion of incorrect versions of Article 4 and 63 in its submission to Congress, there is nothing to show that FAA acted in bad faith by submitting the wrong language to Congress. It appears that this was an administrative error. The articles were not in dispute, as there was no question that the parties had agreed to the TAU language. The FAA implemented what the parties had agreed upon.

It is an unfair labor practice to insist to impasse in bargaining over a topic permissive to the other party *See, e.g., Sport Air Traffic Controllers Org. (SATCO)*, 52 FLRA 339 (1996). Contrary to NATCA, however, there is nothing here to suggest this occurred with respect to Articles 17, 18, 33, 38 and 106. NATCA argues that its agreement on the waiver of the second prong of the "covered by" test renders the inclusion of specific language permissive to the union. NATCA also argues that the inclusion of specific language that would render a topic "covered by the contract" and foreclose bargaining on that matter for the life of the agreement is permissive to the union.

These arguments presuppose that contract language that covers a topic is tantamount to a waiver of bargaining rights. Under the Authority's precedent, the fact that a topic is "covered by" a contract means that the parties already have bargained over a topic and reached agreement. *U.S. Dept. of Health & Human Servs., Soc. Sec. Admin., Baltimore, Md.*, 47 FLRA 1004 (1994). It does not mean that either party has waived a right. Instead, the parties have successfully collectively determined the conditions of employment addressed in their agreement. Inclusion of language that renders a topic "covered by" is not permissive to either party to a negotiation. Therefore, whether only one or both prongs of the Authority's "covered by" test applies, FAA did not insist to impasse on permissive topics as alleged.

As to the alleged regressive bargaining, it has been concluded that FAA did not withdraw from agreed upon provisions concerning Facility ATC Levels, Controller In Charge or Duration of the Agreement. In regard to the Overtime article, the evidence again fails to show that the parties reached an agreement on the provisions. No tentative agreement was initialed as required by the parties' groundrules. FAA did not give a formal allegation of nonnegotiability concerning the Overtime article and submitted both parties' final offers on the article to Congress as part of the impasse. The parties had no tentative agreement concerning Overtime and FAA did not withdraw from an agreement and submit a lesser proposal. In these circumstances, the evidence fails to establish that FAA withdrew from tentative agreements concerning any of these contract provisions as NATCA alleges. *Compare, Army and Air Force Exchange Serv.*, 52 FLRA 290 (1996) (ground rules rendered parties' tentative agreement on a partial pay proposal binding, although not effective before all other issues were resolved).

As regards the alleged bad faith bargaining concerning NATCA's proposed new contract articles, FAA did not make counterproposals to the Union's proposals and little bargaining time was spent discussing them. Also, FAA changed its position on whether these provisions were outside the duty to bargain, permissive to management, or whether it simply did not wish to agree to these proposals. In one proposed article, the FAA's own negotiators differed about whether the proposals were nonnegotiable or undesirable to management. The FAA's conduct with respect to all of these proposed new contract articles was, arguably, perfunctory.

In the context of the contract negotiations as a whole, there is no overall evidence of bad faith with respect to these proposals. The effort to reach agreement applies to the totality of the circumstances and not to single or modest groupings of proposals. Here, FAA did not want to agree to anything that entailed additional costs, which these proposals did. However, this does not establish that FAA's approach to the entire bargaining process was an attempt to avoid agreement. Therefore, the agency's conduct with respect to these proposals did not amount to bad faith bargaining.

As to the failure to submit a proposal on Pay Administration, the evidence establishes that FAA proposed to include all pay administration matters in the Pay article, instead of in a separate article on Pay Administration. This is consistent with the position the FAA had taken throughout negotiations and is not evidence of more than a desire to include all pay matters in one article. This conduct does not amount to bad faith bargaining.

Further, the evidence does not establish that FAA bargained from a fixed position on pay. FAA wanted to change the entire pay system to reduce costs and maintained that position throughout negotiations. The FAA's insistence on changing to a different system reflects hard bargaining. FAA was consistent and determined to achieve its bargaining goals regarding pay. However, the parties met, bargained, made concessions and moved toward each others' positions as negotiations progressed. In circumstances where the parties' reached agreement on 100 contract articles, the FAA's insistence on changing the pay system and reducing costs does not amount to bargaining from a fixed position or surface bargaining.

The documents NATCA received unofficially do not establish that FAA bargained in bad faith. It is not unlawful for a party to strategize over upcoming negotiations, including identifying options if agreement is not reached. The FAA's recognition that there might be an impasse in bargaining if no agreement was reached is not sufficient to establish that the FAA's entire goal in negotiations was to reach an impasse. As to the conference call notes, while an unidentified person may have conveyed that there was to be no pay bargaining with NATCA, this was belied by the facts. The notes reflect nothing more than what was said in a call, not what happened in the overall course of negotiations. There is no evidence of bad faith bargaining with respect to pay, based on these documents.

NATCA had reserved its right to conduct a ratification vote among its members prior to the implementation of a final agreement. NATCA did not submit the contract to the membership because it did not agree that there was a final agreement. If the members had voted against an agreement and FAA had refused to enter into further negotiations, this might provide a basis for finding an unlawful failure or refusal to bargain. *See, e.g., Dept. of the Air Force, Griffiss Air Force Base, Rome, NY,* 25 FLRA 579 (1987). In circumstances where NATCA did not hold a ratification vote, the evidence does not establish that FAA's conduct deprived NATCA of an opportunity to exercise this right.

As to the question of whether the overall pattern of FAA's conduct constituted bad faith bargaining, in the totality of the circumstances, the evidence does not support finding such a violation. The FAA engaged in hard bargaining. It insisted to impasse on mandatory topics, including pay bargaining. It did not, as alleged here, insist to impasse on permissive topics or engage in regressive bargaining by withdrawing from what it had agreed in order to prevent overall agreement. It did not engage in surface bargaining, by insisting on such stringent terms that the union would lose all rights through the agreement. FAA did not refuse to bargain on NATCA's proposed new articles, although FAA did not engage in significant bargaining over the matters or submit counter offers. Instead, FAA simply refused to agree.

The evidence shows that the FAA met and bargained, made concessions and reached agreements, and participated in weeks of mediation. When FMCS released the parties, FAA made no secret that it would exercise what it saw to be its impasse right to submit the matter to Congress. When no agreement was reached by April 5, 2006, it proceeded to do so. The overall pattern of this conduct does not establish that the FAA acted in bad faith in the negotiation of the agreement. FAA wished to reduce costs and to move the NATCA units to the prevailing FAA pay system. FAA never changed its position on this issue, but such hard bargaining insistence is not *per se* bad faith. Here, the parties tentatively agreed to 100 contract articles. The parties made

extensive but ultimately unsuccessful efforts effort to resolve basically intractable disputes over the remaining matters. When these efforts failed, FAA invoked what it perceived as the appropriate impasse resolution procedure. In these circumstances, the evidence fails to demonstrate that FAA acted in bad faith.

Based on the evidence presented, in the totality of the circumstances, the FAA's conduct with respect to its contract negotiations did not amount to bad faith in negotiations. *Wright-Patterson.* Further, in the absence of evidence of bad faith or that FAA failed to bargain as alleged, the parties were at impasse on April 5, 2006 as their many months of bargaining and mediation had not resolved the entire contract. The FAA did not violate the Statute by engaging in regressive or surface bargaining, by insisting to impasse on permissive topics, or by acting in bad faith as alleged in the charge. In reaching this conclusion, it is noted that no allegation was made or evidence presented to establish that a violation of section 7116(a)(8) of the Statute occurred in this case.

Accordingly, the charge is dismissed.

An appeal may be filed by mail or by hand delivery with the Office of the General Counsel. Your appeal should include the Case Number (WA-CA-06-0366) and be addressed as follows:

> Federal Labor Relations Authority
> Office of the General Counsel
> 1400 K Street NW, Second Floor
> Attention: Appeals
> Washington DC 20424-0001

Whichever method you choose, please note that the last day for filing an appeal of the dismissal is **August 27, 2007.** This means that an appeal that is mailed must be postmarked, or an appeal must be hand delivered, no later than **August 27, 2007.** Please send a copy of your appeal to the Regional Director.

If you need more time to prepare your appeal, you may ask for an extension of time. Mail or hand deliver your request for an extension of time to the Office of the General Counsel at the address listed above. Because requests for an extension of time must be received at least five days before the date the appeal is due, any request for an extension of time in this case must be received at the above address no later than **August 22, 2007.**

The procedures, time limits and grounds for filing an appeal are contained in Volume 5 of the Code of Federal Regulations at section 2423.11(c)-(g). 5 C.F.R. § 2423.11(c)-(g). The regulations may be found at any FLRA Regional Office, public law library, some large general purpose libraries, Federal Personnel Offices and the Authority's Home Page internet site--www.FLRA.gov.

9

I have also enclosed a document which summarizes frequently-asked
questions and answers regarding the Office of the General Counsel's unfair labor practice
appeals process.

Sincerely,

*Gerald M. Cole*

Gerald M. Cole
Regional Director

Enclosures:    Questions and Answers About Appeals

cc:    Elizabeth J. Head, Esq.
       Office of the Chief Counsel
       Federal Aviation Administration
       Labor and Personnel Division, AGC-30
       600 Independence Avenue, SW, 1st Floor
       Washington, DC 20591

       Colleen Duffy Kiko, General Counsel
       Office of the General Counsel
       Federal Labor Relations Authority
       1400 K Street, NW, 2nd Floor
       Washington, D.C. 20424-0001

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
**Charged Party**

and                                                      Case No. WA-CA-06-0366

NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION, AFL-CIO
**Charging Party**

### Order Denying Appeal

The Rules and Regulations (Regulations) of the Federal Labor Relations Authority (FLRA) provide that a "Charging Party may obtain review of the Regional Director's decision not to issue a complaint by filing an appeal with the General Counsel within 25 days after service of the Regional Director's decision." 5 C.F.R. § 2423.11(c).

The decision of the Regional Director not to issue a complaint was issued on July 25, 2007, and was served on the parties by mail. Accordingly, an appeal must be filed by August 27, 2007. (An additional five days is added to the time period if the decision is served by mail. *See* 5 C.F.R. § 2429.22). The appeal was filed on August 27, 2007; therefore, it is timely filed and is properly before the General Counsel for consideration.

The Regulations at 5 C.F.R. § 2423.11(e) provide the following grounds upon which the General Counsel may grant an appeal of a Regional Director's decision to dismiss an unfair labor practice charge: (1) the decision did not consider a material fact that would have resulted in issuance of complaint; (2) the decision is based on a finding of a material fact that is clearly erroneous; (3) the decision is based on an incorrect statement of the applicable rule of law; (4) there is no Authority precedent on the legal issue in the case; or (5) the manner in which the Region conducted the investigation has resulted in prejudicial error. *Id.* and 5 C.F.R. § 2423.11(f).

On appeal, the Charging Party alleged, among other things, that the Regional Director's decision is based on a finding of a material fact that is clearly erroneous. In this regard, the Charging Party contended that Regional Director erred in concluding that the evidence was insufficient to establish a violation of 5 U.S.C. § 7116(a)(1) and (5). In particular, the Charging Party submitted that the Regional Director erred in failing to find that the Charged Party engaged in regressive bargaining tactics, a subject on which there is no FLRA precedent, and that the totality of circumstances established bad faith bargaining. In addition, the Charging Party submitted that

the Regional Director erred in failing to find that the Charged Party bargained to impasse over permissive subjects of bargaining.

This appeal has been carefully considered. The Regional Director's rationale for dismissing the charges is supported by the evidence of record. The appeal has failed to establish any ground for either reversing the Regional Director's decision or remanding the case for further investigation in accordance with 5 C.F.R. § 2423.11(e). The dismissal letter issued by the Regional Director constitutes the written statement of the reasons for not issuing a complaint as required by 5 U.S.C. § 7118(a)(1).

ORDERED:    For the foregoing reasons, the appeal is hereby DENIED.[*]

Date Issued: 1·29·2008

Colleen Duffy Kiko
General Counsel

---

[*] Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

# UNITED STATES OF AMERICA
## BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
### OFFICE OF THE GENERAL COUNSEL

**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
        **Charged Party**

**and**
                                            **Case No. WA-CA-06-0366**

**NATIONAL AIR TRAFFIC CONTROLLERS**
  **ASSOCIATION, AFL-CIO**
        **Charging Party**

### CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**      **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
  Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005                    **Cert No. 7006 2760 0005 6476 6239**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591                    **Cert No. 7006 2760 0005 6476 6246**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
        Charged Party

and                                         Case No. WA-CA-06-0366

NATIONAL AIR TRAFFIC CONTROLLERS
  ASSOCIATION, AFL-CIO
        Charging Party

### Order Denying Motion for Reconsideration

The Rules and Regulations of the Federal Labor Relations Authority at 5 C.F.R. § 2423.11(g) provide that a Charging Party may move for reconsideration of the General Counsel's final decision if it can establish extraordinary circumstances. Further, the Motion for Reconsideration must be filed within 10 days after the date on which the General Counsel's final decision is postmarked. The final General Counsel's Order denying the appeal was postmarked January 29, 2008. As the Charging Party's Motion for Reconsideration was filed on February 6, 2008, it was timely filed. *See* 5 C.F.R. § 2429.21 (the date of hand delivery is the filing date).

In determining whether extraordinary circumstances have been established, the General Counsel applies a similar standard to that set forth by the Authority in *U.S. Dep't of the Air Force, 375th Combat Support Group, Scott Air Force Base, Ill.*, 50 FLRA 84 (1995). Specifically, the General Counsel will not grant a Motion for Reconsideration unless the moving party establishes that: (1) an intervening court decision or change in the law affects dispositive issues; (2) evidence, information or an issue crucial to the decision was not considered by the General Counsel; or (3) the General Counsel made an error in material fact or law. A Motion for Reconsideration may not be used to reopen a case merely to reargue contentions previously advanced and already considered by the General Counsel.

The contentions asserted in the Motion for Reconsideration have been carefully considered. Nothing in the Motion for Reconsideration establishes extraordinary circumstances under the standard set forth above. Therefore, the Motion for Reconsideration is denied. This decision is final. 5 C.F.R. § 2423.11(g).

ORDERED: For the foregoing reasons, the Motion for Reconsideration is hereby DENIED.[*]

Date Issued: 2-26-2008

Colleen Duffy Kiko
General Counsel

---

[*] Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
        Charged Party

and                                    Case No. WA-CA-06-0366

NATIONAL AIR TRAFFIC CONTROLLERS
  ASSOCIATION, AFL-CIO
        Charging Party

CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**     **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
  Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005                      **Cert No. 7006 2760 0005 6476 6697**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591                    **Cert No. 7006 2760 0005 6476 6703**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
      Charged Party

and                                                 Case No. WA-CA-06-0563

NATIONAL AIR TRAFFIC CONTROLLERS
  ASSOCIATION, AFL-CIO
      Charging Party

**Order Denying Appeal**

The Rules and Regulations (Regulations) of the Federal Labor Relations Authority (FLRA) provide that a "Charging Party may obtain review of the Regional Director's decision not to issue a complaint by filing an appeal with the General Counsel within 25 days after service of the Regional Director's decision." 5 C.F.R. § 2423.11(c).

The decision of the Regional Director not to issue a complaint was issued on July 25, 2007, and was served on the parties by mail. Accordingly, an appeal must be filed by August 27, 2007. (An additional five days is added to the time period if the decision is served by mail. *See* 5 C.F.R. § 2429.22). The appeal was filed on August 27, 2007; therefore, it is timely filed and is properly before the General Counsel for consideration.

The Regulations at 5 C.F.R. § 2423.11(e) provide the following grounds upon which the General Counsel may grant an appeal of a Regional Director's decision to dismiss an unfair labor practice charge: (1) the decision did not consider a material fact that would have resulted in issuance of complaint; (2) the decision is based on a finding of a material fact that is clearly erroneous; (3) the decision is based on an incorrect statement of the applicable rule of law; (4) there is no Authority precedent on the legal issue in the case; or (5) the manner in which the Region conducted the investigation has resulted in prejudicial error. *Id.* and 5 C.F.R. § 2423.11(f).

On appeal, the Charging Party alleged, among other things, that the Regional Director's decision is based on a finding of a material fact that is clearly erroneous. In this regard, the Charging Party contended that Regional Director erred in concluding that the evidence was insufficient to establish a violation of 5 U.S.C. § 7116(a)(1) and (5). In particular, the Charging Party submitted that the Regional Director erred in failing to find that the Charged Party violated the Statute when it refused to bargain under the auspices of the Federal Service Impasses Panel when at impasse in contract negotiations with the Charging Party.

This appeal has been carefully considered. The Regional Director's rationale for dismissing the charges is supported by the evidence of record. The appeal has failed to establish any ground for either reversing the Regional Director's decision or remanding the case for further investigation in accordance with 5 C.F.R. § 2423.11(e). The dismissal letter issued by the Regional Director constitutes the written statement of the reasons for not issuing a complaint as required by 5 U.S.C. § 7118(a)(1).

ORDERED:  For the foregoing reasons, the appeal is hereby DENIED.[*]

Date Issued: 1·29·2008

Colleen Duffy Kiko
General Counsel

---

[*] Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

UNITED STATES OF AMERICA
BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
          **Charged Party**

**and**                                                    Case No. WA-CA-06-0563

NATIONAL AIR TRAFFIC CONTROLLERS
  ASSOCIATION, AFL-CIO
          **Charging Party**

### CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**      **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
  Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C.  20005                           **Cert No. 7006 2760 0005 6476 5812**

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C.  20591                           **Cert No. 7006 2760 0005 6476 5829**

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

## UNITED STATES OF AMERICA
## BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
## OFFICE OF THE GENERAL COUNSEL


**DEPARTMENT OF TRANSPORTATION**
**FEDERAL AVIATION ADMINISTRATION**
**WASHINGTON, D.C.**
       **Charged Party**

**and**                                      **Case No. WA-CA-06-0563**

**NATIONAL AIR TRAFFIC CONTROLLERS**
  **ASSOCIATION, AFL-CIO**
       **Charging Party**


### Order Denying Motion for Reconsideration


The Rules and Regulations of the Federal Labor Relations Authority at 5 C.F.R. § 2423.11(g) provide that a Charging Party may move for reconsideration of the General Counsel's final decision if it can establish extraordinary circumstances. Further, the Motion for Reconsideration must be filed within 10 days after the date on which the General Counsel's final decision is postmarked. The final General Counsel's Order denying the appeal was postmarked January 29, 2008. As the Charging Party's Motion for Reconsideration was filed on February 6, 2008, it was timely filed. *See* 5 C.F.R. § 2429.21 (the date of hand delivery is the filing date).

In determining whether extraordinary circumstances have been established, the General Counsel applies a similar standard to that set forth by the Authority in *U.S. Dep't of the Air Force, 375th Combat Support Group, Scott Air Force Base, Ill.*, 50 FLRA 84 (1995). Specifically, the General Counsel will not grant a Motion for Reconsideration unless the moving party establishes that: (1) an intervening court decision or change in the law affects dispositive issues; (2) evidence, information or an issue crucial to the decision was not considered by the General Counsel; or (3) the General Counsel made an error in material fact or law. A Motion for Reconsideration may not be used to reopen a case merely to reargue contentions previously advanced and already considered by the General Counsel.

The contentions asserted in the Motion for Reconsideration have been carefully considered. Nothing in the Motion for Reconsideration establishes extraordinary circumstances under the standard set forth above. Therefore, the Motion for Reconsideration is denied. This decision is final. 5 C.F.R. § 2423.11(g).

ORDERED:   For the foregoing reasons, the Motion for Reconsideration is hereby DENIED.[*]

Date Issued: **2-26-2008**

_____
Colleen Duffy Kiko
General Counsel

_____

[*] Federal courts lack jurisdiction to review a decision by the General Counsel of the FLRA denying an appeal of a decision not to issue a ULP complaint. *See, e.g., Patent Office Prof'l Ass'n v. FLRA*, 128 F.3d 751, 752 (D.C. Cir. 1998).

# UNITED STATES OF AMERICA
## BEFORE THE FEDERAL LABOR RELATIONS AUTHORITY
### OFFICE OF THE GENERAL COUNSEL

DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION
WASHINGTON, D.C.
        **Charged Party**

**and**
                                        Case No. WA-CA-06-0563

NATIONAL AIR TRAFFIC CONTROLLERS
  ASSOCIATION, AFL-CIO
        **Charging Party**

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2008, I mailed the foregoing ORDER upon the interested parties in this action by placing a copy thereof, postage prepaid, in the U.S. Post Office mailbox at Washington, D.C., addressed as follows:

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**      **CERTIFIED NOS.**

Eugene R. Freedman, Esquire
Deputy General Counsel
National Air Traffic Controllers
  Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005                     Cert No. 7006 2760 0005 6476 6710

Elizabeth J. Head, Esquire
Office of the Chief Counsel
Federal Aviation Administration
Labor & Personnel Division, AGC-30
600 Independence Avenue, S.W., 1st Floor
Washington, D.C. 20591                    Cert No. 7006 2760 0005 6476 6727

**BY FAX**

Gerald M. Cole
Regional Director, San Francisco

Debra Watlington
Management Analyst

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Civil Action No. 08-00481(RMC)** ) |
| **FEDERAL SERVICE IMPASSES PANEL and FEDERAL LABOR RELATIONS  AUTHORITY,** | ) ) ) |
| **and** | ) ) |
| **UNITED STATES DEPT. OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION,** | ) ) ) |
| **Defendants.** | ) ) |

ORDER

UPON CONSIDERATION of *Defendant Federal Aviation Administration's Motion to Dismiss and Opposition to Plaintiff's Motion for Summary Judgment*, it is by the Court,

ORDERED that Plaintiff's Motion for Summary Judgment should be and is hereby denied as against the FAA; and it is further

ORDERED that Defendant Federal Aviation Administration's ("FAA") motion should be and is hereby granted, and thus, this case is dismissed against Defendant FAA with prejudice;

SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE

Copies to:
William W. Osborne, Jr.
Natalie C. Moffett
Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W., Suite 108
Washington, D.C.  20008
b.osborne@osbornelaw.com

Marguerite L. Graf
General Counsel
National Air Traffic Controllers Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C.  20005
mgraf@natcadc.org

James F. Blandford
Federal Labor Relations Authority
1400 K Street, N.W., Suite 300
Washington, D.C.  20424
jblandford@flra.gov

Beverly M. Russell
U.S. Attorney's Office for the District of Columbia,
 Civil Division
555 Fourth Street, N.W., Room E-4915
Washington, D.C.  20530
beverly.russell@usdoj.gov