# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, AFL-CIO, | : <br> : <br> : |
| Plaintiff, | : Civil Action No. <u>1:08-cv-00481</u> |
| | : Assigned to: Collyer, Rosemary |
| vs. | : Assign. Date: 3/21/2008 |
| | : Description: Admn. Agency |
| | :     Review |
| FEDERAL LABOR RELATIONS AUTHORITY, FEDERAL SERVICE IMPASSES PANEL, and UNITED STATES DEPARMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION | : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : <br> : |

## PLAINTIFF'S MEMORANDUM IN REPLY TO DEFENDANTS' OPPOSITIONS TO SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT

This declaratory judgment case presents a single question of federal law: whether -- as Congress intended in providing for the FAA's Personnel Management System ("PMS") in 1996 and as FAA provided for in the PMS itself -- the Federal Service Impasses Panel ("FSIP") has mandatory dispute resolution jurisdiction over bona fide impasses in collective bargaining between the FAA and labor organizations acting as the exclusive bargaining representatives of the FAA's employees.

There is nothing to the contrary in the oppositions to our summary judgment motion by Defendants Federal Labor Relations Authority/Federal Service Impasses Panel ("FLRA/FSIP") and Federal Aviation Administration

("FAA").[1]  Accordingly, NATCA's motion for summary judgment should be granted.

1. <u>Jurisdiction</u>:  In our opening brief we cited the uniform case law holding that the federal courts have federal question subject matter jurisdiction, under 28 U.S.C. §§ 1331 and 1337, to render declaratory judgment regarding the scope and nature of a federal agency's jurisdiction over a class of disputes. <u>See  Florida Board of Business Regulation v. NLRB</u>, 686 F. 2d 1362, 1368-69 (11th Cir.), <u>reh'g denied</u>, 694 F.2d 727 (11th Cir. 1982)(jurisdiction under 28 U.S.C. § 1331 to render declaratory jurisdiction resolving issue of agency jurisdiction); <u>Lipscomb v. FLRA</u>, 200 F. Supp. 2d 650, 656 (D. Miss. 1971), <u>aff'd</u> 333 F.2d 611 (5th Cir. 1971), <u>cert. denied,</u> 405 U.S. 996 (1972) (same); <u>Terminal Freight Handling Co. v. Solein</u>, 444 F. 2d 699, 703-05 (8th Cir. 1971), <u>cert. denied</u>, 405 U.S. 996 (1972) (subject matter jurisdiction under 28 U.S.C. § 1337 to determine jurisdiction of NLRB General Counsel under 29 U.S.C.§ 160(*l*)). <u>See</u> <u>also</u> <u>Nat'l Automatic Laundry and Cleaning Council v. Shultz</u>, 443 F.2d 689 (D.C. Cir. 1971) (subject matter jurisdiction to support the declaratory judgment regarding the Department of Labor's wage and hour jurisdiction over coin-operated laundries).

In these circumstances, the Court's jurisdiction lies, not to review any particular decision by a federal administrative agency, but to provide a party who

---

[1]  The FAA's challenge to NATCA's standing is insubstantial.  As the FAA correctly states (FAA Br. 10), there is a well settled three-part test for determining whether a plaintiff has suffered a "concrete and particularized" injury that confers standing.  By the conduct NATCA complains of here the Union has suffered injury that: (1) is actual or imminent; (2) is traceable to the Defendants' conduct in misusing the procedure for changing the PMS and by refusing to comply with the provisions of the PMS itself by submitting collective bargaining proposals to Congress rather than to the FSIP; and (3) would be redressed by the declaratory relief sought in this action.  <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

claims that the agency's exercise or refusal to exercise its jurisdiction has violated its "federal rights" with a declaration defining the jurisdiction of the agency in that context. <u>Florida Board</u>, <u>supra</u>, 686 F.2d at 1369-70; <u>Lipscomb</u>, <u>supra</u>, 200 F. Supp. 2d at 655- 656.[2]

Defendants have not even addressed these precedents, much less challenged the import of their holdings or the applicability of their holdings to this case. Nor do Defendants cite any authority on point that is to the contrary. What Defendants do instead -- and all that they do -- is to mischaracterize this suit as one for judicial review and reversal of administrative proceedings before the FSIP and/or the FLRA below, and then to argue at great length that the federal courts do not have subject matter jurisdiction over such cases. FLRA/FSIP Br. 2, 14-21; FAA Br. 11-13.[3]

But this is not such a suit; the Complaint is not directed at securing review and reversal of any decisions of the FSIP or the FLRA. Indeed, neither the FSIP nor the FLRA rendered a "decision" on the merits below that could be reviewed

---

[2] Given the Defendants' attempt to muddy the waters, we note that it has never been NATCA's contention that the declaratory judgment statute confers subject matter jurisdiction in this case. <u>Compare</u> FLRA/FSIP Br. at 24 with Complaint ¶2, citing 28 U.S.C. §1331 as basis for subject matter jurisdiction. Defendants' attempt to prove otherwise is premised upon a misquotation of a passage from Plaintiff's memo, the deletion of a critical comma. <u>Compare</u> Pl. Br. 3 ("The Court has jurisdiction, *and authority under 28 U.S.C. § 2201…*") with the same sentence less the omitted comma as misquoted by the Defendants. FLRA/FSIP Br. 24 ("[the] Court has *jurisdiction and authority under 28 U.S.C. § 2001…*") (Emphasis added) <u>See</u> <u>generally</u>, "That'll Do, Comma," in Truss, Lynne, <u>Eats, Shoots & Leaves</u> (New York: Gotham, 2002).

[3] Contrary to the FAA's apparent confusion ("[t]he FLRA has resolved the Union's claims." FAA Br. 2), the prosecutorial determination by the FLRA General Counsel not to present a legal claim to the Authority is not the equivalent of an FLRA decision rejecting that claim on the merits, and is not binding upon the Agency, much less upon this Court. <u>O'Dovero v. NLRB</u>, 193 F.3d 532, 536 (D.C. Cir. 1999) ("prosecutorial decisions … are not adjudications and have no preclusive effect upon further actions of the [Agency].")

by a court.  See NATCA's Statement of Material Facts as to Which There Is No

Genuine Dispute ("Pl. St.") ¶¶ 10(a), (b), 12(a), (b), 13, 14. [4]

2.  The Undisputed Material Facts:  NATCA supported its Motion for

Summary Judgment with a Statement of Material Facts as to Which There Is No

Genuine Dispute and neither Defendant argues that summary judgment should

be denied because of any dispute over those facts.

The opposing submission by the FLRA/FSIP accepts Plaintiff's statement

of material facts (FLRA/FSIP Br. 9, n.6), and the FAA's "Response to Plaintiffs'

Statement of Material Facts As To Which There is No Dispute" (D.E. 13.1) fails to

comply with the requirements of Local Civil Rule 56.1 and, in any event, contains

no "statement of genuine issues" at all. [5]

Against that background, we summarize the undisputed facts in order to

put the legal issue presented for decision here in context:

---

[4]  To the contrary, the fact that NATCA has twice attempted and twice failed to obtain such a decision by the FSIP or the FLRA with regard to the issue of the FSIP's jurisdiction -- at the D.C. Circuit's suggestion that the jurisdictional issue "should be addressed by the [FLRA] in the first instance," National Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel, 437 F.3d 1256, 1265-66 (D.C. Cir. 2006) -- validates the Court's issuance of a declaratory judgment to resolve this jurisdictional question, once and for all, as do the undisputed facts that this legal issue has been unresolved since at least 2005, that it affects the statutory collective bargaining rights of over 12,000 employees of the FAA, and that it will continue to arise every time the FAA and any labor organization representing FAA employees engage in collective bargaining. Pl. St. ¶¶ 1, 5, 10, 12, 13, 14.  See, e.g., Amer. Council of the Blind v. Paulson, --- F.3d ---, 2008 WL 2095846 (D.C. Cir. May 20, 2008) (affirming declaratory judgment that agency action violated statute).

[5]  The FAA's response indicates only that the FAA "disputes Paragraphs 7 – 13 [of NATCA's Statement] to the extent inconsistent with the factual allegations presented in Defendant's Motion."  D.E. 13.1 at 1.  In this regard, Defendant's Motion contains over six pages of "Background," but neither "'isolates the facts that [the FAA] asserts are material [nor] distinguish[es] disputed from undisputed facts [through citation to] the pertinent parts of the record.'" Robertson v. American Airlines, 239 F. Supp. 2d 5, 7 (D.D.C. 2002) (quoting Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002)).  See also Gardels v. Cent. Intelligence Agency, 637 F.2d 770, 773 (D.C.Cir.1980).

- The FAA, at Congress' direction, implemented its own Personnel Management System ("PMS") on March 28, 1996, specifically providing therein that the FAA, its employees and labor organizations representing those employees "shall have the same rights, and be subject to the same responsibilities and limitations as are available to all" federal agencies, employees and labor organizations "under 5 U.S.C. Chapter 71" of the CSRA.  Pl. St. ¶ 7.

- In October of 1996, Congress codified, at 49 U.S.C. §40122(g)(2)(C), that "chapter 71, relating to labor management relations" would be applicable to the FAA. See H.R.J.Res. 170, Pub. L. No. 104-122 §347(b), 110 Stat. 876 (1995); Pl. St. ¶8.  As Defendant FLRA/FSIP has now conceded, Congress intended, by its amendment of Section 40122(g)(2)(C) in 1996, that "the FAA was to be subject to the collective bargaining requirements of the [CSRA], *including §7119 relating to impasse resolution procedures before the Panel.*" FLRA/FSIP Br. 7. (Emphasis added).

- On June 11, 1996, the FAA exercised its "right to modify, add to, or delete any portion of this personnel management system…" (See PMS, Section IV, "Modification of this System") by making a single change to PMS Chapter II, section 5(c), captioned "Modification No. 1 to the PMS," and relating to nighttime differential and unscheduled overtime. Pl. St. ¶¶ 7, 9(a). [6]   That aside, the content of the FAA's PMS as it stands today is word for word, paragraph for

---

[6]  The FAA's decision not to implement any further changes to its PMS, from June 1996 to the present, is evidenced by a comparison of the version that was published in 1996 and the materially identical version that is currently found on the FAA website (https://employees.faa.gov/org/staffoffices/ahr/policy_guidance/hr_policies/PMS/ personnel/). For ease of comparison, we have attached both copies hereto as Attachments A and B. In reviewing the two versions, we discovered that there had been the one change in the FAA PMS, on June 11, 1996, noted in the text as "Modification No. 1 to the PMS" and attached hereto (as it is published on the FAA website) as Attachment C, which we previously overlooked, and failed to bring to the Court's attention.

paragraph, section for section, and chapter for chapter the same as it was when published on March 28, 1996. [7]

- The text of the FAA PMS as it exists today does not incorporate any of the proposals for a collective bargaining agreement that the FAA submitted to Congress and then unilaterally implemented in 2006.   Attachments A, B, C; Pl. St. ¶¶ 7, 9(a).  <u>See</u> PMS Section IV, "Modification of This System."  Notwithstanding the FAA's characterization of the proposals as "changes to the FAA PMS" within the meaning of 49 U.S.C. § 40122(a) (as if simply labeling them as such removed them from the jurisdiction of the FSIP) (FAA Br. 6), the proposals were in fact the subject of collective bargaining between the FAA and NATCA as mandated by the FAA PMS, and thus subject to the impasse jurisdiction of the FSIP mandated by 5 U.S.C. §7119, as provided by the PMS, <u>see</u> PMS Section III, Labor Management Relations ("The FAA has elected to continue … collective bargaining … in accordance with the provisions of Chapter 71") and federal law.  49 U.S.C. § 40122(g)(2)(C).

3. <u>The FSIP's Mandatory Dispute Resolution Jurisdiction Over Bona Fide Impasses in Collective Bargaining Between the FAA and Labor Organizations Representing the Agency's Employees</u>: The FLRA/FSIP has conceded, and the FAA has not disputed, that in enacting the legislation providing for the FAA PMS, Congress intended that collective bargaining between the FAA and labor organizations representing the Agency's employees be conducted pursuant to the "collective bargaining requirements of the [CSRA], *including §7119 relating to*

---

[7]  The web-based version of the PMS (Attachment B) contains links to Personnel Reform Information Bulletins ("PRIBS") and which provide additional explanatory information but are not themselves changes to the PMS.  The FAA's sole change to the PMS itself, "Modification No. 1," dated June 11, 1996, was publicized as Attachment II to PRIB no. 25 (Attachment C).

*impasse resolution procedures before the Panel.*" FLRA/FSIP Br. 7 (Emphasis added).

Accordingly, the FSIP has mandatory jurisdiction over bona fide impasses in collective bargaining negotiations between the FAA and labor organizations representing the Agency's employees unless, as the FAA argues, Congress divested the FSIP of that jurisdiction through the subsequent enactment of 49 U.S.C. §§ 40122(a) and/or 106(*l*) later in 1996. Neither provision supports that divesture contention:

Section 40122(a) establishes a procedure for "making changes to the [FAA] personnel management system." It is plain from the text of the FAA PMS that the negotiation of collective bargaining agreements between the FAA and labor organizations representing the Agency's employees, a process governed by Chapter 71 of Title V of the CSRA, including Section 7119 providing for the FSIP's mandatory jurisdiction (See PMS Section III. "Labor Management Relations," Pl. St. ¶7, and Attachment B), is *not* the process prescribed for "making changes to the [FAA] personnel management system." See PMS, Section IV, "Modification of this System."

We emphasize again that the FAA has never made "changes" to the FAA PMS -- before, during or after the FAA's submission and unilateral implementation of its bargaining proposals in 2006 -- other than the single modification in June 1996, a lone exception that proves the point. Attachments A, B, and C;  Pl. St. ¶¶ 7, 9.

The FAA's reliance upon Section 106(*l*) is similarly misplaced. The introductory exception to the FAA Administrator's authority to set compensation of Agency employees under Section 106(*l*) – "except as provided in subsection[ ] … (g) of section 40122" – makes it plain that the Section has no application where, as here, collective bargaining over compensation is authorized by the CSRA and by the FAA PMS itself,  and no application to the procedures for resolving impasses in such collective bargaining.  Given the undisputed fact that, under the FAA PMS, compensation of FAA employees represented by NATCA *is* a negotiable "condition[] of employment" under the CSRA (NATCA Br.9, n.3; FLRA/FSIP Br. 8, n.5), Section 106(*l*) has no effect on the FSIP's jurisdiction.[8]

\* \* \*

D.C. Circuit Senior Judge Edwards' succinct restatement of the Plaintiff's position had it right:

> …§40122(a) only governs the process of "developing and making changes to the personnel management system"…not changes to collective bargaining agreements.  And § 40122(g) and the FAA's Personnel Management System expressly provide that the process of collective bargaining between the FAA and the exclusive bargaining representatives of its employees is to be governed by Chapter 71 on the same terms as that statute governs the process of collective bargaining between all other federal agencies and the representatives of their employees.  In other words …§ 40122(a) does not purport to override § 40122(g) and … §106(*l*) is not to the contrary when read as a whole.

---

[8]  Moreover, Section 106(*l*), by its terms, only applies to the issue of compensation, and could not in any way justify the FAA's attempt to bypass the FSIP's jurisdiction over the full range of collective bargaining proposals submitted by the FAA to Congress in 2006, including. annual leave, work assignments, relief breaks and a dress code. Pl. St. ¶10(b) and Exh. C to Forrey Affidavit.

National Air Traffic Controllers Ass'n v. Fed. Serv. Impasses Panel, 437 F.3d. at 1264.

Conclusion

Wherefore, for the reasons stated above and in its earlier submission, Plaintiff's Motion for Summary Judgment should be granted and a declaratory judgment entered confirming the mandatory jurisdiction of the FSIP over impasses in collective bargaining between the FAA and labor organizations representing the Agency's employees.

Respectfully submitted,

/s/ William W. Osborne, Jr.
_____
William W. Osborne, Jr.
D.C. Bar Identification No. 912089
Marie Louise Hagen
D.C. Bar Identification No. 412411
Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W.
Suite 108
Washington, D.C. 20008
(202) 243-3200

/s/ Marguerite L. Graf
_____
Marguerite L. Graf
D.C. Bar Identification No. 455693
General Counsel
National Air Traffic Controllers
Association, AFL-CIO
1325 Massachusetts Avenue, N.W.
Washington, D.C. 20005
(202) 628-5451
Counsel for Plaintiff

Dated: June 10, 2008

## CERTIFICATE OF SERVICE

I certify that I served copies of the *Plaintiff's Memorandum In Reply To Defendants' Oppositions To Summary Judgment And In Opposition To Defendants' Motions To Dismiss Or For Summary Judgment* on the defendants to this action by first-class mail addressed as follows:

James F. Blandford
FEDERAL LABOR RELATIONS AUTHORITY
1400 K Street, NW
Suite 300
Washington, DC 20424
(202) 218-7906
Counsel for the FLRA/FSIP

Beverly Maria Russell
U.S. ATTORNEY'S OFFICE FOR D.C.
555 4th Street, NW
4th Floor
Washington, DC 20530
(202) 307-0492
Counsel for the FAA

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 10, 2008

/s/ Marie Louise Hagen
_____
Marie Louise Hagen
DC Bar No. 412411



# Federal Aviation Administration Personnel Management System

## March 28, 1996

# I. INTRODUCTION

In Section 347 of the 1996 DOT Appropriations Act, Congress directed the Federal Aviation Administration (FAA) to develop and implement a new personnel management system that addresses the unique demands on the agency's workforce. By signing this document, I am implementing a new personnel management system for the FAA that will be more efficient; cost less to operate; provide greater flexibility in the hiring, training, compensation, and location of FAA personnel; and, above all, be fundamentally fair.

# II. APPLICABLE STATUTES

Under Section 347(b), FAA's new personnel management system is exempt from all of Title 5 of the United States Code (U.S.C.) except for the following:

- Section 2302(b), relating to whistleblower protection;

- Sections 3308-3320, relating to veterans' preference;

- Section 7116(b)(7), relating to limitations on the right to strike;

- Section 7204, relating to antidiscrimination;

- Chapter 73, relating to suitability, security, and conduct;

- Chapter 81, relating to compensation for work injury; and

- Chapters 83-85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage.

Section 347(b) does not wholly exempt FAA from all of Title 5. The FAA continues to be subject to the following portions of Title 5:

- 5 U.S.C. Chapter 3 (Powers);

- 5 U.S.C. Chapter 5 (Administrative Procedure);

- 5 U.S.C. Chapter 15 (Political Activity of Certain State and Local Employees); and

- 5 U.S.C. Chapter 91 (Access to Criminal History Records for National Security Purposes).

Furthermore, FAA's new personnel management system is covered by the non-personnel management provisions of Title 5 and those portions of Title 5 that specifically apply to the Secretary, including:

- 5 U.S.C. Section 3307 (Maximum Entry Age);

- 5 U.S.C. Section 5501 (Disposition of Lapsed Salaries);

- 5 U.S.C. Section 5502 (Unauthorized Office);

- 5 U.S.C. Section 5503 (Recess Appointments);

- 5 U.S.C. Sections 5511-20 (Withholding Pay);

- 5 U.S.C. Sections 5533-37 (Dual Pay);

- 5 U.S.C. Sections 5561-70 (Payments to Missing Employees); and

- 5 U.S.C. Chapter 79 (Services to Employees).

Although Section 347(b) exempts the new personnel system from substantially all of Title 5, FAA has the discretion to adopt the substance of any portion of Title 5 as deemed appropriate. In some instances, I have decided that FAA employees should be covered by the same provisions that apply to all other Federal employees. Therefore, the following sections of Title 5 are incorporated by reference in FAA's new personnel management system:

- 5 U.S.C. Sections 2901-06 (Commissions, Oaths);

- 5 U.S.C. Section 3111 (Acceptance of Volunteer Service);

- 5 U.S.C. Sections 3331-33 (Oath of Office);

- 5 U.S.C. Sections 5351-5356 (Student-Employees); and

- 5 U.S.C. Sections 5511-20 (Withholding Pay).

## III.  LABOR MANAGEMENT RELATIONS

Congress did not include Chapter 71 of Title 5, "Labor Management Relations," in the list of sections that will continue to apply to FAA's new personnel management system. The FAA has elected to continue the rights and benefits of union representation to our employees by providing for recognition of exclusive representatives, collective bargaining, and union representation in accordance with the provisions of Chapter 71. Accordingly, present and future changes and ongoing matters related to FAA's personnel management

system under this directive shall not be implemented for bargaining unit members until after the completion of substantive and/or impact and implementation bargaining to the same extent as would be required by Chapter 71.

## IV. MODIFICATION OF THIS SYSTEM

FAA reserves the right to modify, add to, or delete any portion of this personnel management system, either in whole or in part, as deemed appropriate by the Administrator.

## V. ADMINISTRATIVE AUTHORITY

The Associate Administrator for Administration is responsible for setting the broad agency human resources policies and operating principles. These policies and principles provide the agency framework for the lines of business and staff organizations to establish the human resources programs necessary to accomplish their organizations' missions. The Director of Human Resources Management, under the executive direction of the Associate Administrator for Administration, is authorized to issue these policies and other guidance following appropriate coordination.

## VI. PILOT PROGRAMS

With the advance approval of the Associate Administrator for Administration, the head of a line of business or staff organization is authorized to implement a pilot program that deviates from the provisions of this directive. A pilot program must:

(a) last for a set period of time, but no more than 3 years;

(b) include specific objectives and criteria by which success will be measured; and

(c) otherwise be consistent with applicable law.

## VII. MERIT PRINCIPLES

The FAA personnel management system shall be implemented consistent with the following merit system principles:

(a) Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a workforce from all segments of society; selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition, which assures that all receive equal opportunity.

(b) All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, sexual orientation, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

(c) Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector; appropriate incentives and recognition should be provided for excellence in performance.

(d) All employees should maintain high standards of integrity, conduct, and concern for the public interest.

(e) The Federal workforce should be used efficiently and effectively.

(f) Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.

(g) Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.

(h) Employees should be:

   (i)     protected against arbitrary action, personal favoritism, or coercion for partisan political purposes; and

   (ii)    prohibited from using their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for election.

(i) Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences:

   (i)     a violation of any law, rule, or regulation; or

   (ii)    mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

## VIII. PROHIBITED PERSONNEL PRACTICES

(a) Any FAA employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority:

(i)    discriminate for or against any employee or applicant for employment, on the basis of:

- race, color, religion, sex, or national origin, as prohibited under Section 717 of the Civil Rights Acts of 1964 (42 U.S.C. 2000e-16);

- age, as prohibited under Sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a);

- sex, as prohibited under Section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206 (d));

- handicapping condition, as prohibited under Section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or

- marital status, sexual orientation, or political affiliation, as prohibited under any law, rule, or regulation;

(ii)    coerce the political activity of any person (including the providing of any political contribution or service) or take any action against any employee or applicant for employment as a reprisal for the refusal of any person to engage in such political activity;

(iii)    deceive or willfully obstruct any person to withdraw with respect to such person's right to compete for employment;

(iv)    influence any person to withdrawal from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;

(v)    grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;

(vi)    take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of:

- any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences:  a violation of any law, rule or regulation; gross mismanagement, a gross waste of funds, an abuse of authority; or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law, and if such information is not specifically required by Executive Order to be kept

secret in the interest of national defense or the conduct of foreign affairs; or

- any disclosure to the Special Counsel or to the Inspector General of an agency, or another employee designated by the head of the agency to receive such disclosures of information which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;

(vii)   to take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of:

- the exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation;

- testifying for or otherwise lawfully assisting of any individual in the exercise of any right referred to in subparagraph VIII (a);

- cooperating with or disclosing information to the Inspector General of any agency, or the Special Counsel, in accordance with applicable provision of the law; or

- for refusing to obey an order that would require the individual to violate a law;

(viii)  discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account, in determining suitability or fitness, any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or the United States; or

(ix)    take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation, implementing or directly concerning, the merit system principles contained in this paragraph.

(b) Paragraph VIII (a) shall not be construed to authorize the withholding of information from the Congress or the taking of any personnel action against an employee who discloses information to the Congress.

(i)     The head of each line of business or staff organization shall be responsible for the prevention of prohibited personnel practices, for the compliance with and enforcement of applicable civil service laws, rules, and regulations, and

other aspects of personnel management. Any individual to whom the head of a line of business or staff organization delegates authority for personnel management, or for any aspect thereof, shall be similarly responsible within the limits of the delegation.

(ii)    This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to employee or applicant for employment in the civil service under:

- Section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;

- Sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), prohibiting discrimination on the basis of age;

- Section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206 (d)), prohibiting discrimination on the basis of sex;

- Section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), prohibiting discrimination on the basis of handicapping condition; or

- the provision of any law, rule, or regulation prohibiting discrimination on the basis of marital status, sexual orientation, or political affiliation.

David R. Hinson

# TABLE OF CONTENTS

**CHAPTER I: STAFFING**
1. General Authority to Employ...........................................................................1
2. Employment of Relatives..............................................................................1
3. Types of Employees.....................................................................................1
4. Employment Status......................................................................................2
5. Notification of Employment Status..................................................................3
6. Probationary Period.....................................................................................3
7. Selection of Employees................................................................................3
8. Permanent Internal Assignments....................................................................4
9. Temporary Internal Assignments....................................................................4
10. Promotion Qualifications..............................................................................5
11. Return Rights............................................................................................5
12. Air Traffic Controller...................................................................................6
13. Equal Employment Opportunity Complaints......................................................6
14. Downsizing...............................................................................................6
15. Flexible and Compressed Work Schedules........................................................8

**CHAPTER II: COMPENSATION**
1. Base Pay, Personnel Compensation, and Benefits..............................................9
2. Classification of Positions...........................................................................11
3. Waiver of Restriction on Re-employed Retirement Offset....................................11
4. Biweekly Pay Periods.................................................................................11
5. Premium Pay............................................................................................12
6. Permanent Change of Station Benefits...........................................................13
7. Federal Employees Pay Comparability Act.......................................................13
8. Highest Rate Previously Paid.......................................................................13
9. Back Pay.................................................................................................13
10. Attendance at Meetings.............................................................................15

**CHAPTER III: PERFORMANCE MANAGEMENT**
1. Performance Evaluations............................................................................17
2. Awards...................................................................................................17
3. Discipline and Removals.............................................................................17
4. FAA Grievance Procedure...........................................................................23
5. FAA Appeals Procedure—Guaranteed Fair Treatment..........................................27
6. FAA National Employee's Forum...................................................................29

**CHAPTER IV: TRAINING**
1. Authorization to Expend Funds.....................................................................31
2. Training Agreements..................................................................................31

3. *Continued Service Agreements* ................................................................. *32*
4. *Fee for Service Plan* ................................................................................ *33*

## CHAPTER V:  LABOR RELATIONS
1. *Employees Rights* ..................................................................................... *35*
2. *Management Rights* ................................................................................... *35*
3. *FAA National Labor-Management Partnership Council* ........................... *35*

## CHAPTER VI:  EXECUTIVE SYSTEMS
1. *Reassignments* ......................................................................................... *37*
2. *Executive System Performance Incentive Plan* ........................................ *37*
3. *Adverse and Disciplinary Actions* ........................................................... *37*

# CHAPTER I: STAFFING

## 1. GENERAL AUTHORITY TO EMPLOY

(a) The FAA may employ such number of employees as permitted under the appropriations provided by Congress from year to year. The number of employees employed in the FAA shall be determined solely by reference to the amount of funds available for the payment of personnel, compensation, and benefits. Each head of a line of business or staff organization is authorized to determine the number of employees for their organization based on the amount of funds allocated to the line of business or staff organization by the Administrator, except to the extent as the Administrator may otherwise direct.

## 2. EMPLOYMENT OF RELATIVES

(a) No FAA official may, with respect to any position in the FAA, appoint, employ, promote, advance, or advocate for appointment, employment, promotion or advancement, any relative. An individual may not be appointed, employed, promoted, or advanced in or to a civilian position in the FAA if such appointment, employment, promotion, or advancement has been advocated by an FAA official who is a relative of the individual.

(b) For purposes of this provision, "official" means any FAA employee who has the authority to appoint, employ, promote, or advance an individual, or to recommend an individual for appointment, employment, promotion, or advancement in connection with employment in FAA.

(c) For purposes of this provision, "relative" means an individual who is related to an FAA official as father, mother, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, husband, wife, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepbrother, stepsister, half brother, or half sister.

## 3. TYPES OF EMPLOYEES

(a) Except as restricted by this directive, each line of business and staff organization is authorized to hire any type or category of employee it deems necessary for the performance of duties related to their respective responsibilities.

## 4. EMPLOYMENT STATUS

(a) Effective April 1, 1996, the FAA shall use temporary and permanent appointments and utilize the following categories of employees:

- Political Appointees;

- Executive System Employees;

- Permanent Employees;

- Temporary Employees; and

- Support Service Employees.

(b) All persons in the FAA occupying political appointee positions, as defined on March 31, 1996, shall continue to be political appointees after April 1, 1996. The pay, benefits, and employment rights of political appointees in the FAA shall continue to be determined in accordance with the standards and procedures in effect for political appointees of the Federal Government.

(c) The Executive System shall be composed of:

*Officers*: The Chief of Staff and all nonpolitical Associate Administrators and Assistant Administrators.

*Executives*: All nonpolitical positions that were designated as Senior Executive Service positions on March 31, 1996, that are not Officers. These positions may be filled on a term basis.

*Senior Professionals*: All positions that were designated as ST or SL on March 31, 1996. These positions may be filled on a temporary basis.

(d) All nonpolitical positions that were in the competitive and excepted service on March 31, 1996, and that were not subject to a time-limited appointment, are converted to the status of permanent positions. Any employee encumbering such a position on or after April 1, 1996, except those employees serving under a time-limited appointment, and any employee hired into such positions on or after April 1, 1996, shall be a permanent employee for purposes of this directive.

(e) All employees who were serving under a time-limited appointment on March 31, 1996, or who are hired for other than a permanent position after April 1, 1996, shall be temporary employees for purposes of this directive.

(f)  All employees providing support services to the FAA pursuant to a contract shall be considered support service employees for purposes of this directive.  Support service employees are not employees of the FAA.

## 5.  NOTIFICATION OF EMPLOYMENT STATUS

(a)  All employees of the FAA shall be provided with written notification of their status under this directive by the Director of Human Resource Management no later than October 1, 1996.

## 6.  PROBATIONARY PERIOD

(a)  There shall be a probationary period of one year for new FAA employees and for FAA employees entering into a supervisory or managerial position for the first time.

## 7.  SELECTION OF EMPLOYEES

(a)  Executive System

    (i)  Effective April 1, 1996, no vacant Officer position in the FAA shall be filled by any means other than selection and approval by the Administrator.  The Administrator may, at his/her sole discretion, first solicit and consider applications for an Officer position from current Executive and/or permanent employees of the FAA before advertising the position to non-FAA candidates.

    (ii)  Effective April 1, 1996, no vacant Executive or Senior Professional position in the FAA shall be filled by any means other than selection by the head of the line of business or staff organization in which the position is located, and approval by the Administrator.  The head of a line of business or staff organization may, with the approval of the Administrator, first solicit and consider applications for a vacant Executive or Senior Professional position from current FAA employees before advertising the position to non-FAA candidates.  All FAA employees shall be eligible for selection to any vacant permanent and/or Executive Systems position for which they are qualified regardless of their employment status on March 31, 1996.

    (iii)  Nothing in this provision shall prohibit the temporary assignment of an employee into a vacant Officer, Executive position, or the designation of an individual to serve in an acting capacity during the absence of an Officer or Executive.

(b) Permanent and Temporary Employees

    (i)    Effective April 1, 1996, each head of a line of business or staff organization is authorized to use any of the following methods to solicit applications from outside applicants:

        *Central Register:* used to realize economies of scale while managing large numbers of pre-screened and highly qualified applicants.

        *Announced Vacancies:* used to solicit applications locally, or from discontinuous geographical areas, to obtain the best available candidates through targeted recruitment.

        *On the Spot:* used to accommodate special program needs and to staff hard-to-fill positions or facilities.

(c) Support Service Employees

    (i)    All support service employee contracts must adhere to the standards, procedures, and limitations issued by the Associate Administrator for Research and Acquisitions.

## 8. PERMANENT INTERNAL ASSIGNMENTS

(a) Effective April 1, 1996, all FAA employees shall be eligible for selection to any vacant permanent position regardless of their employment status on March 31, 1996. A line of business or staff organization is authorized, subject to guidance from the Associate Administrator for Administration, and to use the following procedures to solicit and consider applications from FAA employees prior to advertisement of a position:

    (i)    open competition;

    (ii)    automatic consideration; and

    (iii)    no formal competition.

## 9. TEMPORARY INTERNAL ASSIGNMENTS

(a) Effective April 1, 1996, the head of a line of business or staff organization is authorized, subject to guidance from the Associate Administrator for Administration, to fill a non-Executive System position temporarily with an FAA employee either with competition or with no competition.

## 10. PROMOTION QUALIFICATIONS

(a) Effective April 1, 1996, all time in grade requirements, other than qualification requirements, for promotion of FAA employees are abolished. Time requirements may only be maintained as part of the qualification standards for a position. Employees shall be eligible for career ladder promotions when qualifications for that grade are met; however, eligibility for promotion shall not create any entitlement to promotion until all administrative requirements have been met.

## 11. RETURN RIGHTS

(a) Effective April 1, 1996, no vacancy announcement shall include an offer of return rights unless:

(i)    the offer is required by an existing collective bargaining agreement;

(ii)   the line of business or staff organization has made a written determination that an offer of return rights is necessary for attracting employees to hard-to-staff positions or locations where other methods have failed to attract qualified applicants; or

(iii)  the offer is related to an international assignment and interchange agreements, as appropriate.

(b) A determination that a position or location is hard-to-staff must be made in accordance with the following guidelines:

(i)    FAA supports interchange programs with Federal, state and local governments, educational institutions, non-profit organizations, private industry, public international organizations, and foreign governments through voluntary assignments of FAA employees and/or through hosting employees of other organizations. The FAA also may support the use of return rights to positions within the FAA, when appropriate.

(ii)   FAA will no longer have a mandatory return rights program. Each line of business or staff organization should determine if there are any positions for which "blanket" return rights should be granted. Whether or not there are any "blanket" occupations/locations for which return rights are always granted (e.g., remote locales), there may be specific circumstances for which return rights would be appropriate. Each line of business or staff organization may also determine whether or not to grant return rights as the situations arise.

(c) Once it has been determined that an employee will be guaranteed return rights, an individualized contract must be developed and signed by the employee and an authorized Executive in the line of business or staff organization, and filed in the employee's Official Personnel Folder or equivalent.

(d) No employee will be granted return rights without a validly executed return rights agreement that fully complies with the standards and criteria established by the Associate Administrator for Administration.

(e) All return right obligations incurred prior to April 1, 1996 shall be honored.

## 12. AIR TRAFFIC CONTROLLER

(a) For purposes of this directive, "air traffic controller" or "controller" means a civilian employee of the FAA who, in an air traffic control facility or flight service station facility, is:

   (i)   actively engaged in the separation and control of air traffic; or

   (ii)  providing preflight, inflight, or airport advisory service to aircraft operations; or

   (iii) the immediate supervisor of any employee described in Paragraph 12 (a)(i) or (a)(ii).

## 13. EQUAL EMPLOYMENT OPPORTUNITY COMPLAINTS

(a) Effective April 1, 1996, the Administrator of the FAA shall be the "head of the agency" for purposes of receiving recommended decisions from Equal Employment Opportunity Commission administrative judges and issuing final agency decisions under 29 CFR Part 1614 for all administrative complaints pending or filed with respect to the FAA by current or former FAA employees. The Assistant Administrator for Civil Rights and the Associate Administrator for Administration are directed and authorized to take all steps necessary to effect this change.

## 14. DOWNSIZING

(a) Until superseded, the existing FAA procedures for conducting reductions in force will apply, including provisions for calculating severance pay. The Associate Administrator for Administration is authorized to determine whether employees who are eligible for severance payments will be offered the opportunity to elect payment in one or two lump sum payments, rather than on the current bi-weekly basis.

(b) The Director of Human Resource Management will prepare a recommendation for the Administrator, no later than June 30, 1996, of actions that can be used to mitigate the adverse effects of a reduction in force. The recommendations might include, but are not limited to, the use of buyouts, negotiated job exchanges, and alternative separation packages. The Administrator reserves the right to modify and/or implement either in whole or in part any recommendations made by the Director.

(c) Career Transition Services

    (i)      The Associate Administrator for Administration shall develop an agency wide Career Transition Service Program. This program will provide options for employees in an organization, facility, occupation, or position that is to be reduced. The options should include such features as: skills assessment, retraining for other FAA positions, and counseling. A reasonable amount of official time to use these services or engage in job searches will be made available to affected employees. The definition of "reasonable" will be based solely on the need to accomplish the agency mission. The amount of time will be determined on a case-by-case basis and will be applied equitably for all affected employees.

    (ii)     When retraining is an option, employees generally will be offered retraining opportunities for positions in FAA where managers determine that there is the greatest need. In no case will retraining be made available to an employee who has declined a continuing job with FAA that does not involve a reduction in pay. Employees receiving retraining under this provision will be required to execute an agreement to continue in service for an appropriate amount of time or to repay the cost of retraining on a pro-rated basis.

(d) Selection Priority

    (i)      Permanent employees who receive reduction in force notices will be eligible for selection priority. This means that the employee must be selected before any non-FAA candidate for any vacancy in the employee's local commuting area, so long as the employee is well-qualified for the vacancy. At the time an employee is given a reduction in force notice, he or she may choose another location (city and state) for this consideration. In this case, the employee will agree to pay relocation costs.

    (ii)     Selection priority will begin as soon as the reduction in force notice is issued and will continue:

- for 2 years from the date of separation;

- until the employee, or former employee, accepts a permanent position at the same or a higher salary with any organization, Federal or non-Federal;

- until the employee, or former employee, either fails to respond to or declines a job offer; or

- asks to be removed from the program.

    (iii)    The employee is responsible for completing any application forms that may be required. If more than one employee is eligible for selection priority, the selecting official may choose from all eligibles.

(e) Individuals who are entitled to priority consideration on the basis of recovery from compensable illness, injury, or return from military service will be given consideration in accordance with existing regulations.

## 15. FLEXIBLE AND COMPRESSED WORK SCHEDULES

(a) FAA employees shall continue to be eligible to work flexible and compressed work schedules under the same criteria, procedures, and limitations that were applicable on March 31, 1996, provided that effective April 1, 1996, the head of a line of business or staff organization shall have the authority to approve a part-time work schedule for any permanent employee in their line of business or staff organization. This authority may be redelegated.

# CHAPTER II: COMPENSATION

## 1. BASE PAY, PERSONNEL COMPENSATION, AND BENEFITS

(a) From April 1, 1996 until September 30, 1997, the base pay for all FAA positions shall be determined at the rate of base pay in effect for that position on March 31, 1996, plus any periodic step increases, promotions, comparability increases, or locality pay otherwise available or granted to Federal employees.

(b) Except as provided below, from April 1, 1996 until September 30, 1997, the personnel compensation and benefits of all FAA employees shall continue to be determined in accordance with the standards and procedures that were in effect on March 31, 1996.

(c) No later than April 1, 1997, the Associate Administrator for Administration shall submit a draft Compensation Revision Plan to the heads of the lines of business and staff organizations for review. The draft shall include recommendations for further changes to FAA's method of determining the personnel compensation and pay benefits of FAA employees. After reviewing the comments of the heads of the lines of business and staff organizations, and making such changes as deemed appropriate, the Associate Administrator for Administration shall forward a final Compensation Revision Plan to the Administrator no later than September 30, 1997.

(d) In drafting the Compensation Revision Plan, the Associate Administrator for Administration shall address the following initiatives and concepts:

    (i)    classification standards;

    (ii)    FAA-wide pay system;

    (iii)    specialized pay systems for lines of business or staff organizations;

    (iv)    salary-based pay system for lines of business or staff organizations;

    (v)    Airway Facilities Pay and Fiscal Management System;

    (vi)    air traffic pay system that values job complexity and compensates employees based on the level of work performed;

    (vii)    FLSA status of all FAA employees;

    (viii)    premium pay structure;

(ix)    executive pay systems;

(x)    time off compensation instead of double pay for an in-lieu-of-holiday;

(xi)    locality pay and FAA-wide cost-of-living allowance;

(xii)    pay compression;

(xiii)    use of compensatory time rather than overtime;

(xiv)    payment of appropriate salary or annuities to retired members of the Federal and uniform services;

(xv)    line of business or staff organization flexibility to attract and retain employees for hard-to-staff facilities or positions;

(xvi)    gainsharing programs;

(xvii)    pay system pilot programs;

(xviii)    first 40/80 hour work schedules;

(xix)    permanent change of station entitlements, including more flexible reporting dates;

(xx)    travel and temporary duty programs;

(xxi)    annual, sick and compensatory time policy;

(xxii)    pay and grade retention;

(xxiii)    dual career tracks;

(xxiv)    leave bank program;

(xxv)    sick leave buyback exchange program;

(xxvi)    reduction in force procedures;

(xxvii)    permanent change of station; and

(xxviii)    student loan repayments.

(e)  The Associate Administrator for Administration may submit portions of the final Compensation Revision Plan to the Administrator for approval prior to September 30, 1997.  The Administrator reserves the right to modify and/or implement, either in

whole or in part, any recommendations made by the Associate Administrator for Administration in the final Compensation Revision Plan.

## 2. CLASSIFICATION OF POSITIONS

(a) The Office of Personnel Management classification standards and companion FAA classification guides shall continue to be used by FAA for classification of positions until replaced or supplemented by the Associate Administrator for Administration.

(b) No later than April 1, 1997, each head of a line of business or staff organization shall conduct a classification review of all positions in their organization. As part of this review, the number of position descriptions shall be consolidated and reduced to the maximum extent feasible. Classification level and Fair Labor Standards Act status will be verified for all remaining positions.

## 3. WAIVER OF RESTRICTION ON RE-EMPLOYED RETIREMENT OFFSET

(a) Effective April 1, 1996, under special circumstances, a head of a line of business or staff organization may request that the Administrator approve a full to partial waiver of the required reduction to retired or retainer pay of military retirees employed by the FAA. All authority to approve the waiver of salary or annuity offset that was previously vested in the Office of Personnel Management with respect to FAA on March 31, 1996, shall, to the extent permitted consistent with Chapter 83 of Title 5 of the United States Code, transfer to the Administrator of the FAA effective April 1, 1996. The exercise of this authority, or the authority to approve the request for a waiver, shall rest in the sole discretion of the Administrator and shall not be delegated or reviewable in any other forum. The Administrator will exercise this authority on a case by case basis for employees in positions for which there is an exceptional difficulty in recruiting or retaining a qualified employee or in emergency situations involving a direct threat of life or property or other unusual circumstances.

(b) At the request of a head of a line of business or staff organization, the Administrator may seek a partial to full waiver from Office of Personnel Management of the required reduction of re-employed civilian annuitants' retirement pay.

## 4. BIWEEKLY PAY PERIODS

(a) The pay period for FAA employees will continue to cover two administrative work weeks.

(b) When it is necessary for computation of pay to covert an annual rate of basic pay to a basic hourly, daily, weekly, or biweekly rate, the following rules govern:

    (i)       To derive an hourly rate, divide the annual rate by 2,087.

    (ii)     To derive a daily rate, multiply the hourly rate by the number of daily hours of service required.

    (iii)    To derive a weekly or biweekly rate, multiply the hourly rate by 40 or 80, as the case may be.

(c)  Rates are computed to the nearest cent, counting one-half and over as a whole cent.

## 5. PREMIUM PAY

(a)  Eligibility for Overtime Pay

    (i)       Overtime work will include officially ordered and approved hours of work in excess of an employee's scheduled tour of duty, e.g., hours in excess of 40 hours in an administrative workweek, 80 hours in a pay period, five 8-hour days, four 10-hour days. In the case of "quick turnarounds," time worked in excess of 8 hours in a 24 hour period, but within an employee's regularly scheduled tour of duty, does not qualify as overtime and will be paid at the basic rate.

(b)  Compensatory Time Off

    (i)       An FAA employee whose personal religious beliefs require the abstention from work during certain periods of time may, after advance approval by his/her supervisor, elect to engage in overtime work for time lost for meeting those religious requirements. Any employee who so elects shall be granted equal compensatory time off from his/her scheduled tour of duty (in lieu of overtime pay) for such religious reasons, notwithstanding any other provision of law. Requests for compensatory time off for religious observances shall be granted unless to do so would interfere with the FAA's ability to efficiently carry out the mission of the agency.

(c)  Sunday and Night Differential

    (i)       Effective April 1, 1996, or as soon thereafter as may practically be implemented, non wage-grade employees will earn Sunday premium pay at an additional rate of 25 percent of hourly base and night differential at an additional rate of 10 percent of hourly base pay for those hours actually worked on Sunday or between the hours of 6:00 PM and 6:00 AM respectively. Employees working between the Sunday hours of 6:00 PM and 11:59 PM or 12:00 AM and 6:00 AM will receive both Sunday premium pay and night differential.

## 6. PERMANENT CHANGE OF STATION BENEFITS

(a) Effective April 1, 1996, no employee shall be entitled to permanent change of station benefits simply by virtue of competitive selection to a position with higher grade, pay, or promotion potential. Such selections will not be considered primarily for the benefit of the Government unless the vacancy announcement or solicitation for applications included a specific statement that permanent change of station benefits were available.

## 7. FEDERAL EMPLOYEES PAY COMPARABILITY ACT

(a) Effective April 1, 1996, all authority to approve payments to FAA employees under all provisions of the Federal Employees Pay Comparability Act shall be vested solely in the Administrator. This authority may be redelegated by the Administrator.

## 8. HIGHEST RATE PREVIOUSLY PAID

(a) Effective April 1, 1996, the heads of the lines of business and staff organizations shall have the authority to determine whether the pay of an employee entering into, returning to, or remaining in their organizations shall be retained at the highest rate previously paid to the employee.

## 9. BACK PAY

(a) Agency funds may be used to pay back pay to an FAA employee or former employee who, as the result of a decision or settlement under the FAA Grievance Procedure, a collective bargaining agreement, the FAA Appeals Procedure, or the Executive System Appeals Procedure is found by an appropriate authority to have been affected by an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due to the employee.

(b) The amount of back pay shall be limited to making the employee financially whole, to the extent possible, for losses of pay (other than premium pay) to which the employee was entitled by statute or regulation by virtue of the performance of a Federal function. No employee shall be granted more pay, allowances, or differentials in back pay than would have been received if the unjustified or unwarranted personnel action had not occurred.

(c) "Unjustified or unwarranted personnel action" means an act of commission or omission that an appropriate authority subsequently determines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law, Executive Order, rule, regulation, or mandatory personnel policy

established by FAA or through a collective bargaining agreement. Such actions include personnel actions and pay actions, alone or in combination.

(d) In calculating a back pay award, no back pay shall be awarded for:

    (i)    any period during which the employee was not ready, willing, and able to perform his or her duties because of an incapacitating illness or injury; provided, however, that an employee, upon written request, may be granted any sick or annual leave available to them for a period of incapacitation if the employee can establish that the period of incapacitation was the result of illness or injury; and

    (ii)    any period during which the employee was unavailable to perform their duties for reasons other than those related to the unjustified or unwarranted personnel action.

(e) The following amounts shall be deducted from any amount of back pay award:

    (i)    any amounts earned by an employee from other employment undertaken during the time the employee was separated or unable to perform duties because of the unjustified or unwarranted personnel action, but not including additional or "moonlight" employment the employee could have engaged in if the unjustified or unwarranted personnel action had not occurred;

    (ii)    any payments received from the Government as a result of the unjustified or unwarranted personnel action which, in the case of payments received from a Federal employee retirement system, shall be returned to the appropriate system. Such payments shall be recovered from the back pay award prior to payment in the following order:

- retirement annuity payments (except health benefits and life insurance premiums);

- refunds of retirement contributions;

- severance pay;

- lump-sum payment for annual leave (and the annual leave shall be recredited for the employee's use);

- health benefits and life insurance premiums, if coverage continued during the period of erroneous separation; and

- other authorized deductions.

(f) Annual leave restored to an employee under this provision shall be accredited to a separate leave account for use by the employee, and must be used in accordance with standards issued by the Associate Administrator for Administration.

(g) Agency funds may not be used to pay either interest or attorney fees as the result of a decision in the FAA Grievance Procedure, the FAA Appeals Procedure, or the Executive System Appeals Procedure.

## 10. ATTENDANCE AT MEETINGS

(a) FAA funds may be expended for attendance at meetings concerned with the functions or activities of the line of business or staff organization which will contribute to improved conduct, supervision, or management of the functions or activities of the line of business or staff organization. The amount of funds available for such training or attendance at meetings shall be determined by the head of a line of business or staff organization based on the strategic goals of the organization. Funds may be used for payment or reimbursement for travel and per diem.

# CHAPTER III: PERFORMANCE MANAGEMENT

## 1. PERFORMANCE EVALUATIONS

(a) The Performance Planning and Recognition System issued by the Director of Human Resource Management and implemented by FAA on October 1, 1995 shall remain in effect for FAA employees unless modified by the head of a line of business or staff organization.

(b) FAA's Senior Executive Service Performance Plan is hereby retitled as FAA's Executive System Performance Plan. It shall remain in effect for Executive System employees for the rating periods of October 1, 1995 to September 30, 1996. No later than September 1, 1996, the Associate Administrator for Administration shall present the Administrator with a proposal on what changes, if any, should be made to FAA's Executive System Performance Plan.

## 2. AWARDS

(a) Effective April 1, 1996, the heads of the lines of business and staff organizations are authorized to give individual or group cash, nonmonetary, or time off awards to any FAA employees for performance as part of a unit, based on the overall achievements of the unit.

## 3. DISCIPLINE AND REMOVALS

(a) Except as described below, disciplinary and removal actions taken for conduct occurring on or after April 1, 1996 shall continue to be administered in accordance with FAA Order 3750.4A, "Conduct and Discipline", as it may be modified by the Associate Administrator for Administration, and all FAA collective bargaining agreements still in effect at the time action is proposed.

(b) This paragraph contains the guidance and procedures for processing disciplinary actions, involuntary reduction in grade or pay, furloughs of 30 days or less (but not including placement in a nonpay status as the result of a lapse of appropriations or action by Congress), and removal actions except for employees covered by a collective bargaining agreement. Effective April 1, 1996, all actions covered by this paragraph will be taken only for such cause as will promote the efficiency of the Federal service, regardless of whether they are based on conduct or performance.

(c) Definitions

(i)     "Employee" means an employee of the FAA who is not serving a probationary or trial period, or who has served more than one year of service on a temporary appointment.

(ii)    "Employer" means any element of FAA management who exercises direct or indirect supervision over employees.

(iii)   "Suspension" means the placing of an employee, for disciplinary reasons, involuntarily in a non-duty and non-pay status.

(iv)    "Grade and pay" means the grade level or rate of basic pay fixed by law or administrative action for the position held by an employee.

(v)     "Day" means calendar day.

(d) The procedures and standards in this paragraph do not apply to:

(i)     a reduction in grade or pay of a supervisor or manager who has not completed a probationary period if such a reduction in grade or pay is to the grade and pay held immediately before becoming a supervisor or manager;

(ii)    terminations of employees on probationary/trial periods, other than a supervisory/managerial probationary period, or whose appointment is temporary;

(iii)   a political appointee;

(iv)    actions involving an employee in the FAA Executive System or on a temporary executive assignment;

(v)     an employee whose position is downgraded as a result of reclassification and who has been granted grade and pay retention;

(vi)    placement in a nonpay status as the result of a lapse of appropriations or action by Congress;

(vii)   placement on a nonduty pay status;

(viii)  actions involving an employee in a temporary appointment with less than one year in the position;

(ix)    termination of temporary promotions;

(x)     actions involving reduction in force procedures;

(xi)     termination of re-employed annuitants; or

(xii)    non-disciplinary actions involving temporary employee, i.e., furloughs, reduction in force or end of required service.

(e)  An employee is entitled to communicate with and seek advice from the servicing Human Resource Management Division, the Office of Civil Rights either in Washington or at the region/center, an Equal Employment Opportunity counselor, or a supervisor or management official of higher rank than the employee's immediate supervisor who will provide counsel on the procedures of the case, but will not review the merits.

(f)  Supervisors are responsible for determining if corrective disciplinary action is warranted. Whether the action decided upon is formal or informal, the principles set out in this section should be observed in determining the severity of the discipline. Not all factors apply in every case. Some of the factors may weigh in the employee's favor, while others may not, or may even constitute aggravating circumstances. The following factors must be considered and a responsible balance reached:

(i)     the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(ii)    the employee's job level and type of employment, including supervisor or fiduciary role, contacts with the public, and prominence of the position;

(iii)   the employee's past disciplinary record;

(iv)   the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(v)    the effect of the offense upon the employee's ability to perform at a satisfactory level, and its effect upon the supervisor's confidence in the employee's ability to perform assigned duties;

(vi)   the consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(vii)  the consistency of the penalty with any applicable agency table of penalties;

(viii) the notoriety and/or egregiousness of the offense, or its impact upon the reputation of the agency;

(ix)    the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(x)    the potential for the employee's rehabilitation;

(xi)    the mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others involved in the matter; and

(xii)    the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

(g)  All written notices of proposed disciplinary or removal actions covered by this policy must be delivered to the employee in advance of the proposed effective date, and will contain the following information:

(i)    the specific reason(s) for the proposed action in sufficient detail for the employee to make a reply;

(ii)    a statement informing the employee of the right to make an oral and/or written reply, the time limits to do so, and to whom the reply should be made;

(iii)    a statement of the employee's right to have representation during the reply period; and

(iv)    a statement of the employee's right to review all of the material relied upon to support the proposed action and copies unless otherwise prohibited by law.

(h)  Written Reprimand

(i)    A decision to issue a written reprimand is made by the official who signs the reprimand, usually the immediate supervisor. No advance notice is required. The employee may file an oral and/or written reply within 15 days from receipt of the reprimand. If the reprimand is sustained, it will be placed in the employee's Official Personnel Folder, along with the employee's response. If no reply is made within these time limits, the reprimand will be placed in the employee's Official Personnel Folder for a period of time not to exceed two years.

(i)  Suspensions

(i)    A written notice of the proposed action will be signed by the deciding official and given to the employee at least 15 days before the proposed effective date

of the suspension. Employees will have 15 days from the date they are given the notice to reply either orally and/or in writing, except as provided for in Paragraph 3(r). After receipt and consideration of the employee's timely reply, the deciding official will issue a final decision. If no reply is made within these time limits, the deciding official will issue the final decision within ten days. Documentation of the suspension shall be maintained in the employee's Official Personnel Folder.

(j)  Reduction in Grade or Pay

　　(i)　　A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days in advance of the proposed effective date. Employees will have 15 days from the date they are given the notice to respond orally and/or in writing. After receipt and consideration of the employee's timely reply, the deciding official will issue a final decision within ten days. If no reply is made within these time limits, the deciding official will issue the final decision.

(k)  Removal

　　(i)　　A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days prior to the proposed effective date, except as provided in Paragraph 3(r). Employees will have 15 days from the date they are given the notice to make an oral and/or written reply. After receipt and consideration of the employee's timely reply, the deciding official will issue the final decision within ten days. If no reply is made within these time limits, the deciding official will issue the final decision.

(l)  Furlough

　　(i)　　A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days prior to the proposed effective date. Employees will have 15 days from the date they are given the notice to make an oral and/or written reply. After receipt and consideration of the employee's timely reply, the deciding official will issue the final decision within ten days. If no reply is made within these time limits, the deciding official will issue the final decision.

(m)  The coordination requirements with the FAA Office of Civil Rights for employees who have filed Equal Employment Opportunity complaints shall remain in effect after April 1, 1996.

(n)  An employee is entitled to have a representative or attorney of his/her choice to be present during the presentation of any reply to the deciding official, provided the attendance of the representative or attorney does not require a delay in the

proceedings. The employee may also designate his/her representative to make the reply, on their behalf, to the deciding official. If the employee's representative is an FAA employee, he/she shall be excused absence, if otherwise in a duty status, to be present during the reply presentation; however, the request for representation by an FAA employee can be denied if either operational considerations or the nature of the requested representative's official duties presents a conflict. A decision to deny a request for representation by an FAA employee shall be made by the head of the requested representative's line of business or staff organization. Travel for the employee's representative will not be paid by the FAA. Employees will be accommodated with schedule changes, as necessary, to perform their duties as representatives.

(o) Employees and/or their designees will be given an opportunity to make an oral and/or written reply within the time limits specified above and to furnish affidavits and other documentation in support of their reply. If the deciding official cannot receive the oral reply personally, a management representative can be designated to receive the reply on behalf of the deciding official. In either case, the individual hearing the oral response will prepare a written summary. The written summary and a copy of any written reply will be forwarded to the deciding official. A copy of the summary will be provided to the employee.

(p) An employee who is otherwise in a paid duty status will be given up to 16 hours of excused absence to review the material relied upon and to prepare any reply to a proposed suspension, reduction in grade or pay, or removal. The timing of the grant of excused absence shall, to the maximum extent possible, (but consistent with operational needs), be scheduled at the employee's convenience.

(q) A final decision shall contain the following information:

    (i)       the effective date of the action, if appropriate;

    (ii)      a statement of which charge(s) and/or reason(s) were sustained and which were not;

    (iii)     a statement advising the employee of the right to file an appeal, the time limits to file such an appeal, and to whom such an appeal must be filed; and

    (iv)    a statement advising the employee of the right to seek counseling for an Equal Employment Opportunity complaint, the time limits for seeking counseling, and whom the employee must contact.

(r) When there is reasonable cause to believe an employee has committed a crime for which a sentence of imprisonment may be imposed, or when, by the employee's conduct, continued presence in the work place poses an imminent threat to employees and/or agency property, the advanced notice period specified above is not required.

In such cases, the employee may be given a shortened notice and reply period, but not less than seven days from the date the employee is given the notice of proposed action. In addition, an employee may be removed from the work site and placed in a nonduty pay status until the final decision is effected without prior written notice, at any time management determines that it is not in the best interest of the agency for the employee to remain in a duty status. Placement in a nonduty pay status is not an adverse action and may not be appealed by an employee.

(s) Supervisors and managers shall consult with their Human Resource representatives before issuing a proposed action under this policy.

(t) Employees may appeal:

    (i)        written reprimands, denials of within grades, and suspensions of 14 days or less by filing a written grievance as provided by the agency grievance procedure; and

    (ii)       suspensions of more than 14 days, reductions in grade or pay, furloughs of 30 days or less, and removals under the FAA Appeals Procedure.

(u) When an employee is given advance notice, the official who proposed the action will establish a disciplinary file. The file will be retained in the servicing Human Resource Management Division if the proposed action is taken. If the employee appeals, the file will become the appeal file, and a copy will be provided to the panel at the panel's request. The file shall contain the advance notice and any employee response, material relied on to support the notice, correspondence or notations of conversations with the employee, the written summary of an oral response, a copy of the final decision, and a copy of the employee's appeal.

## 4. FAA GRIEVANCE PROCEDURE

(a) Effective April 1, 1996, the following grievance procedure shall be implemented for all employees of the FAA not covered by a collective bargaining grievance procedure. This FAA Grievance Procedure shall be the sole and exclusive method by which such employees can seek relief from the FAA, Department of Transportation, and/or the United States Government for issues related to the matters covered by this paragraph. Employees and supervisors involved in grievances shall be free from restraint, interference, coercion, discrimination, reprisal, and intimidation in connection with their respective roles in such proceedings. Actions on the part of employees or supervisors intended to intimidate, coerce, or take reprisal against witnesses offering information in such cases are expressly prohibited and can result in disciplinary action.

(b) The following matters are covered by the provisions of the new FAA Grievance Procedure:

(i)      adverse or disciplinary actions covered under agency wide orders or directives, except for those matters subject to appeal under the FAA Appeals Procedure or the Executive System Appeals Procedure (this includes sustained written reprimands, denials of within grade increases, and suspensions of 14 days or less);

(ii)     matters of personal concern or dissatisfaction to an employee that are subject to control of FAA management or any matter in which an employee alleges that coercion, reprisal, or retaliation have been practiced against him/her.

(c)  The FAA Grievance Procedure shall not apply to:

(i)      any employee covered by a collective bargaining agreement;

(ii)     retirement;

(iii)    life or health insurance;

(iv)   national security determinations under 5 U.S.C. Section 73;

(v)     revocation or denial of security clearances;

(vi)    examination, certification, or appointment;

(vii)   classification of any position that does not result in reduction in grade or pay;

(viii)  removal of an employee on a trial or probationary period;

(ix)    matters relating to overtime entitlement or designation of status under Fair Labor Standards Act;

(x)     nonselection for selection priority retention or promotion from a list of properly ranked and/or certified candidates;

(xi)    decisions by a manager to fill a vacant position with no competition, either permanently or temporarily;

(xii)   an action taken in accordance with the terms of a formal agreement voluntarily entered into by an employee and the agency;

(xiii)  a decision on an earlier grievance;

(xiv)  matters involving waiver of annuity or salary offset;

(xv)   matters involving highest previous rate determinations;

(xvi)   matters involving requests for part-time work schedules;

(xvii)  matters that are covered by any other statutory appeals process; and

(xviii) matters that are subject to appeal under the FAA Appeals Procedure or the Executive System Appeals Procedure.

(d)  For purposes of this section:

(i)    "Day" means calendar day.

(ii)   "Employee" means an employee of the FAA who is not serving a probationary or trial period, or who has served more than one year service on a temporary appointment.

(iii)  "Personal relief" means a specific remedy personally benefiting the grievant(s), but shall not include disciplinary action or other action affecting another employee.

(e)  Stage 1:  Problem Solving

(i)    If an employee wishes to seek relief on a covered matter other than the denial of a within grade increase, a suspension of 14 days or less, or a written reprimand, he/she must submit the issue to his/her first level supervisor either orally or in writing within ten days of the incident, or within ten days of the time the employee knew or may have been reasonably expected to have learned of the event.

(ii)   A meeting shall be held within ten days of receipt of notification by the first level supervisor to allow the employee to freely present, receive, and exchange information and views on the situation. The employee may have a representative present during the meeting. If the representative is an FAA employee and is otherwise in a duty status, the representative will be granted excused absence for attendance at the meeting. The FAA will not pay travel or per diem. A resolution will be sought, and if one is reached, it will be acted upon with mutual agreement. Resolution is highly encouraged at this level, and the supervisor may use whatever tools necessary to resolve the issue at this level.

(iii)  If no resolution is reached within ten days after the meeting, the grievance can be elevated to the formal stage by the employee, in writing, with the next level manager. This formal grievance must be filed within 15 days of the resolution meeting.

(iv)    Grievances involving denials of within grade increases or suspensions of 14 days or less must be filed at the formal stage within ten days of receipt of the decision letter. The formal grievance must be filed with the next level above the deciding official for the denial or suspension. Grievances involving written reprimands must be filed at the formal stage within ten days of the date the reprimand was sustained with the next level above the deciding official.

(f)  Stage 2: Formal

(i)    A meeting shall be held with the manager who received a formal grievance within ten days of filing to allow the employee to freely present, receive, and exchange information and views on the situation. The employee is entitled to have a representative present during this meeting. Employees may designate their representative to present the grievance. If the employee's representative is an FAA employee, he/she shall be given duty time to be present during the presentation; however, the request for representation by an FAA employee can be denied if either operational considerations or the nature of the requested representative's official duties presents a conflict. A decision to deny a request for representation by an FAA employee shall be made by the head of the requested representative's line of business or staff organization.

(ii)    The manager has ten days from the close of the meeting with the employee to resolve the grievance. The decision shall be in writing and will specify what relief is granted or why the grievance is denied. This decision is the final decision of the FAA Grievance Procedure and shall be issued at the sole discretion of the manager. The final decision of the FAA Grievance Procedure is not subject to review in any other forum.

(g)  A grievance can be canceled:

(i)    at the employee's request;

(ii)    as the result of a settlement agreement;

(iii)    upon the death of the employee, unless the grievance involves a financial consideration on the part of the employee;

(iv)    for the failure of the grievant to comply with the appropriate time frames and procedures contained in this policy; or

(v)    when the grievant has previously filed or later files a formal appeal, complaint, or other challenge on the same matter.

# 5. FAA APPEALS PROCEDURE—GUARANTEED FAIR TREATMENT

(a) In order to provide Guaranteed Fair Treatment to employees, the FAA establishes, effective April 1, 1996, the following FAA Appeals Procedure. This procedure covers cases involving suspensions of more than 14 days; reductions in pay or grade; removals for conduct, performance or non-disciplinary removals; furloughs of 30 days or less (but not including placement in a nonpay status as the result of a lapse of appropriations or action by Congress); and reduction in force actions. The FAA Appeals Procedure is the only method by which employees not covered by a collective bargaining agreement may seek administrative review of claims arising out of a covered action, except for claims which may be reviewed under a statutorily mandated administrative appeal process.

(b) Employees and supervisors involved in appeals shall be free from restraint, interference, coercion, discrimination, reprisal, and intimidation in connection with their respective roles in such proceedings. Actions on the part of employees or supervisors intended to intimidate, coerce, or take reprisal against witnesses offering information in such cases are expressly prohibited and can result in disciplinary action.

(c) For purposes of this section:

   (i)    "Day" means calendar day.

   (ii)   "Partisan" means an employee of the FAA who is knowledgeable of the working conditions, environment, and practices where the appeal was filed. A person cannot be designated as a partisan if they were directly involved with the case. A designated partisan cannot have served as an advocate for the FAA or employee in any phase of the disciplinary or removal action being appealed. The partisan for management cannot be the proposing official or the deciding official.

   (iii)  "Employee" means a permanent employee of the FAA who is not serving a probationary or trial period.

(d) Employees wishing to appeal a covered action must submit the appeal to the next level above the deciding official within ten days of the date the decision is given to them. The appeal must be in writing and contain all of the supporting documentation and a statement of the specific relief requested.

(e) A panel will be designated within ten days of receipt of the appeal by the management official. The panel shall be comprised of three persons: one partisan selected by the deciding official from within the FAA where the appeal was generated, one partisan selected by the appellant from within the FAA, and one arbitrator. Partisans shall be

selected from an area as close as possible to the location of the hearing while meeting all the criteria for partisans outlined above. Partisans shall be on official time while performing their responsibilities as members of the panel. The arbitrator shall set aside a period of time to instruct the partisans in due process, how to weigh evidence and testimony, and how to judge the merits of the case.

(f)  A pool of three to five arbitrators will be selected and maintained by each servicing Human Resource Management Division for use in the appeals process. Selection of the arbitrator from the pool will be by mutual agreement of the appellant and the deciding official, or by alternative striking of names by the appellant and the deciding official until one selection remains. The servicing Human Resource Management Division will provide logistical support for program implementation and maintenance.

(g)  The hearing shall take place as soon as is practicable. There will be no discovery for either side but the parties shall exchange documents and witness lists ten days before the hearing. Hearings will be scheduled during normal administrative duty hours. If they choose a representative, the appellant and the deciding official shall designate their representatives and inform the other party in writing prior to the hearing date. If the appellant requests an FAA employee as a representative, that request can be denied if either operational considerations or the nature of the requested representative's official duties present a conflict. A decision to deny a request for representation by an appellant shall be made by the head of the requested representative's line of business or staff organization.

(h)  The panel will convene within the commuting area of the appellant whenever possible. If the hearing cannot be held in the commuting area, FAA shall pay the appellant's travel to the hearing, regardless of whether the appellant is in a paid duty status. The FAA will accommodate employees with schedule changes as necessary if the employee is otherwise in an active duty status, to attend and participate in the hearing as a witness, appellant, or representative. All time frames may be extended by the panel with mutual written agreement of the deciding official and the appellant.

(i)  There shall be a verbatim transcript prepared of the hearing. Copies of transcripts must be ordered by the parties from the official court reporter. All appeal records and documents from the hearing will be maintained in accordance with applicable agency rules and laws.

(j)  Each party is responsible for securing their own witnesses. Each party will be responsible for paying the travel costs for their witnesses and representatives, except for employees of the FAA who are summoned to testify by the panel as witnesses. Such employees shall be on official time, including travel and per diem.

(k)  The panel will render a written decision within ten days of hearing the case. Decisions made by the panel will be final and binding, but not precedential. The panel shall have no authority to mitigate the penalty on performance cases but shall have the

authority to mitigate the penalty on cases involving conduct. The panel shall be limited to ruling on the merits of the case and the application of agency rules and laws. The panel shall not reverse or mitigate an action based on a finding of violation of agency rules, unless the record demonstrates more likely than not, that absent the violation, the deciding official would have reached a different decision. The ruling will be made by majority vote of the panel.

(l)  The decision of the panel may include an award of back pay; however, no attorney or representation fees for the appellant will be ordered by the panel or paid by the FAA.

(m)  Decisions of the panel shall be issued as final orders of the Administrator under 49 U.S.C. Section 46110. An appellant may seek judicial review of the panel's order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit, or in the court of appeals of the United States for the circuit in which the appellant resides, no later than 60 days after the panel's decision is issued.

(n)  Claims of statutorily prohibited discrimination may not be raised in the FAA Appeals Procedure. The FAA Appeals Procedure shall be designated as an alternative disputes resolution process for purposes of 29 CFR Part 1614. Accordingly, if an employee wishes to raise a claim of statutorily prohibited discrimination, with respect to a matter that is subject to appeal under the FAA Appeals Procedure, the employee must:

   (i)   contact an Equal Employment Opportunity counselor no later than 45 days after the effective date of the action being appealed;

   (ii)   file an appeal under the FAA Appeals Procedure in accordance with the time limits stated above;

   (iii)  complete the FAA Appeals Procedure and receive a final decision; and

   (iv)  file a formal complaint of discrimination within ten days of receipt of the final FAA Appeals Procedure decision, or within 90 days of the first contact with the Equal Employment Opportunity counselor.

# 6.  FAA NATIONAL EMPLOYEE'S FORUM

(a)  The FAA shall establish an Employee's Forum so that employees will have the opportunity to express their opinion on matters affecting their membership, regardless of job, grade series, or pay band. The Employee's Forum will serve as a vehicle to gather general input on specific issues as requested by senior management and as originated by individual employees or employee groups. Special Emphasis Groups and Employee Associations whose constituency primarily focuses on civil rights matters will have an opportunity to provide input on matters related to FAA's Equal

Employment Opportunity, Affirmative Action, and diversity initiatives as mandated by law.

(b)  The Employee's Forum will have as its core members the Administrator (ex officio), the Deputy Administrator (ex officio), the Assistant Administrator for Civil Rights, the Director of Human Resource Management, the National Special Emphasis Program Managers, and the National Presidents of the Employee Associations.  Other employees may be invited to attend as deemed appropriate by the Administrator.

(c)  The FAA will provide training to members of the Forum that is designed to ensure the success of the Forum.  Such training may include team building, dispute resolution, partnering for success, Equal Employment Opportunity, Affirmative Action, and other types of training.

# CHAPTER IV: TRAINING

## 1. AUTHORIZATION TO EXPEND FUNDS

(a) All the heads of the lines of business and staff organizations, in accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, are authorized to expend funds to provide or reimburse their employees for technical, management, or career development training. This includes: reimbursement of tuition expenses in pursuit of a formal degree or certificate program at an accredited institution of higher learning, training for the purposes of qualifying for another career field when approved under a job loss retraining program, and membership fees in professional societies. To the extent authorized by regulation of the President, contributions and awards incident to training in non-Government facilities and payment of travel, subsistence, and other expenses incident to attendance at meetings, may be made to and accepted by an FAA employee without regard to 18 U.S.C. Section 209, if the contributions, awards, and payments are made by an organization determined by the Secretary of the Treasury to be an organization described by 26 U.S.C. Section 501(c)(3), as exempt from taxation under 26 U.S.C. Section 501(a). When a contribution, award, or payment, in case or in kind, is made to an FAA employee for travel, subsistence, or other expenses, an appropriate reduction shall be made from payment by FAA to the employee for travel, subsistence or other expenses incident to training in a non-Government facility or to attendance at a meeting.

## 2. TRAINING AGREEMENTS

(a) The head of a line of business or staff organization, or the Associate Administrator for Administrator on behalf of the Administrator, is authorized to enter into agreements with other agencies in any branch of the Government, on a reimbursable basis, for:

    (i)      use of Government facilities under the jurisdiction or control of the other agencies in any branch of Government;

    (ii)      extension to FAA employees of training programs of other agencies; and

    (iii)      use of FAA facilities and training programs by other Government agencies.

(b) In accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, the heads of the lines of business or staff organizations, or the Associate Administrator for Administration on behalf of the Administrator, are authorized to make agreements or other arrangements for the

training of FAA employees by, in, or through non-Government facilities. Agreements or arrangements may not be made for payment for training of an FAA employee:

(i)    by, in, or through a non-Government facility which teaches or advocates the overthrow of the Government of the United States by force or violence;

(ii)    by or through individuals concerning whom determination has been made by a proper Government administrative or investigatory authority that, on the basis of information or evidence developed in investigations and procedures authorized by law or Executive Order, there exists a reasonable doubt of their loyalty to the United States; or

(iii)    by, in, or through a non-Government facility a substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; or participating or intervening, including publishing or distributing statements, in a political campaign on behalf of a candidate for public office.

(c) In accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, heads of FAA training facilities and training programs are authorized to make agreements or other arrangements for the training of non-Government employees or use of FAA training facilities by non-Government organizations on a reimbursable basis when this serves as the mission of the agency and is otherwise consistent with applicable law.

## 3. CONTINUED SERVICE AGREEMENTS

(a) The heads of the lines of business or staff organizations, or the Associate Administrator for Administration on behalf of the Administrator, may require continuous service agreements as a condition of attending training of substantial duration or cost. Employees shall agree in writing before commencing such training that they will:

(i)    continue in the service of FAA following completion of the training for a specified period of time, not to exceed one year, for each instance of training or pay the Government the amount of the additional expense incurred by the FAA in connection with their training if they are voluntarily separated from service with FAA before the end of the period for which the employee has agreed to continue in FAA service.

(b) The payment agreed to under Paragraph 3(a)(i) is recoverable by the FAA from employees or their estates by:

(i)      set off against accrued pay, compensation, amount of retirement credit, or other amounts due the employee from the Government; and

(ii)     such other methods as provided by law for the recovery of amounts owing to the Government.

(c)  The Administrator may, in an exercise of discretion, waive in whole or in part, a right of recovery under this paragraph if the Administrator decides that the recovery would be against equity and good conscience or against the public interest.  A decision to deny waiver, either in whole or in part, shall not be reviewable in any forum.

## 4.  FEE FOR SERVICE PLAN

(a)  No later than October 1, 1996, the Associate Administrator for Administration shall submit a Fee for Service Plan to the Administrator.  This plan shall contain recommendations on the methods by which the FAA can establish a program to provide services to private or governmental entities in exchange for a fee that will be retained by the FAA.  The Administrator reserves the right to implement, either in whole or in part, any recommendation made by the Associate Administrator for Administration, provided that the recommendation is otherwise consistent with applicable law.

# CHAPTER V: LABOR RELATIONS

## 1. EMPLOYEES RIGHTS

(a) The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71. Each FAA employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal; and each employee shall be protected in the exercise of such rights.

## 2. MANAGEMENT RIGHTS

(a) Consistent with 5 U.S.C. Section 7106 and Executive Order 12871, the FAA reserves the authority of its management officials.

## 3. FAA NATIONAL LABOR-MANAGEMENT PARTNERSHIP COUNCIL

(a) The FAA and its unions have established a National Labor-Management Partnership Council (NLMPC). This council will integrate and coordinate activities of the various labor management partnerships within the agency and will interact with the Department of Transportation's Labor Management Partnership Council.

(b) The NLMPC shall be strategically focused and shall provide direction for agency partnerships. It will also assure that adequate resources and training are provided to the partnerships, establish policy and guidelines for measuring and evaluating the effectiveness of partnerships, and measure and evaluate responsiveness to the public.

(c) The NLMPC will be comprised of thirteen members: four Associate Administrators or designees from lines of business with bargaining units, seven union representatives (one from each union within FAA), one representative from the Office of Civil Rights, and one Executive Advisor (Program Director of Labor and Employee Relations). All members of the NLMPC shall be current employees of the FAA.

(d) The NLMPC will operate under the following guidelines:

    (i)       conduct the initial NLMPC organizational meeting prior to June 30, 1996, with subsequent quarterly meetings;

(ii)    will approve and issue a Partnership Model;

(iii)   respect institutional values of the agency, as well as each line of business or staff organization, unions, and recognized organizations;

(iv)    assess issues to be addressed in terms of probability of success and strategic goals of the agency;

(v)     balance the interest of the public and FAA employees;

(vi)    utilize a binding consensus decision making process, (the decisions of the NLMPC are not subject to third party review); and

(vii)   publish agendas and minutes of NLMPC meetings.

# CHAPTER VI: EXECUTIVE SYSTEMS

## 1. REASSIGNMENTS

(a) Employees in the FAA Executive System may not be involuntarily reassigned within 120 days after the appointment of the Administrator, or within 120 days after the appointment of the employee's most immediate supervisor who is a political appointee and has the authority to make an initial appraisal of the employee's performance.

## 2. EXECUTIVE SYSTEM PERFORMANCE INCENTIVE PLAN

(a) Effective April 1, 1996, the Administrator or the head of a line of business or staff organization may pay a performance incentive to an employee in the Executive System in accordance with the criteria that were in effect for Senior Executive Service employees on March 31, 1996; no approval other than that of the Administrator's shall be necessary or required for the payment of such an incentive. The total amount available to a line of business or staff organization to pay incentives to employees in the Executive System after April 1, 1996, shall be determined solely by the Administrator.

(b) No later than April 1, 1997, the Associate Administrator for Administration shall present a draft Executive System Performance Incentive Plan to the heads of the lines of business and staff organizations for review and comment. This plan shall design a long-term incentive plan for the Executive System that will include procedures for establishing and reporting long-term objectives.

(c) After reviewing the comments by the heads of the lines of business and staff organizations, and making such changes as deemed appropriate, the Associate Administrator for Administration shall forward a final Executive Systems Incentive Plan to the Administrator no later than June 1, 1997. The Administrator reserves the right to implement, either in whole or in part, any recommendations made by the Associate Administrator for Administration in the final plan.

## 3. ADVERSE AND DISCIPLINARY ACTIONS

(a) Except as provided below, effective April 1, 1996, employees in the FAA Executive System may be disciplined, downgraded, suspended, and/or removed in accordance with the procedures and standards contained in Chapter III that are applicable to all other agency employees.

(b) The FAA Administrator or the heads of the lines of business or staff organizations, for employees in their organizations, shall be the final authority on whether any FAA Executive System employee should be disciplined, downgraded, suspended, and/or removed.

(c) An Executive System employee wishing to appeal an adverse or disciplinary action must use the agency wide appeal procedure unless and until the Administrator approves another procedure.


**Employee Site**

# FAA Personnel Management System (FAA PMS)

Updated: 10:24 am ET November 8, 2006

March 28, 1996

## I. Introduction

In Section 347 of the 1996 DOT Appropriations Act, Congress directed the Federal Aviation Administration (FAA) to develop and implement a new personnel management system that addresses the unique demands on the agency's workforce. By signing this document, I am implementing a new personnel management system for FAA that will be more efficient; cost less to operate; provide greater flexibility in the hiring, training, compensation, and location of FAA personnel; and, above all, be fundamentally fair.

## II. Applicable Statutes

Under Section 347(b), FAA's new personnel management system is exempt from all of Title 5 of the United States Code (U.S.C.) except for the following:

- Section 2302(b), relating to whistleblower protection;
- Sections 3308-3320, relating to veterans' preference;
- Section 7116(b)(7), relating to limitations on the right to strike;
- Section 7204, relating to antidiscrimination;
- Chapter 73, relating to suitability, security, and conduct;
- Chapter 81, relating to compensation for work injury; and
- Chapters 83-85, 87, and 89, relating to retirement, unemployment compensation, and insurance coverage.

Section 347(b) does not wholly exempt FAA from all of Title 5. The FAA continues to be subject to the following portions of Title 5:

- 5 U.S.C. Chapter 3 (Powers);
- 5 U.S.C. Chapter 5 (Administrative Procedure);
- 5 U.S.C. Chapter 15 (Political Activity of Certain State and Local Employees); and
- 5 U.S.C. Chapter 91 (Access to Criminal History Records for National Security Purposes).

Furthermore, FAA's new personnel management system is covered by the non-personnel management provisions of Title 5 and those portions of Title 5 that specifically apply to the Secretary, including:

- 5 U.S.C. Section 3307 (Maximum Entry Age);
- 5 U.S.C. Section 5501 (Disposition of Lapsed Salaries);
- 5 U.S.C. Section 5502 (Unauthorized Office);
- 5 U.S.C. Section 5503 (Recess Appointments);
- 5 U.S.C. Sections 5511-20 (Withholding Pay);
- 5 U.S.C. Sections 5533-37 (Dual Pay);
- 5 U.S.C. Sections 5561-70 (Payments to Missing Employees); and

- 5 U.S.C. Chapter 79 (Services to Employees).

Although Section 347(b) exempts the new personnel system from substantially all of Title 5, FAA has the discretion to adopt the substance of any portion of Title 5 as deemed appropriate. In some instances, I have decided that FAA employees should be covered by the same provisions that apply to all other Federal employees. Therefore, the following sections of Title 5 are incorporated by reference in FAA's new personnel management system:

- 5 U.S.C. Sections 2901-06 (Commissions, Oaths);
- 5 U.S.C. Section 3111 (Acceptance of Volunteer Service);
- 5 U.S.C. Sections 3331-33 (Oath of Office);
- 5 U.S.C. Sections 5351-5356 (Student-Employees); and
- 5 U.S.C. Sections 5511-20 (Withholding Pay).

## III. Labor Management Relations

Congress did not include Chapter 71 of Title 5, "Labor Management Relations," in the list of sections that will continue to apply to FAA's new personnel management system. The FAA has elected to continue the rights and benefits of union representation to our employees by providing for recognition of exclusive representatives, collective bargaining, and union representation in accordance with the provisions of Chapter 71. Accordingly, present and future changes and ongoing matters related to FAA's personnel management system under this directive shall not be implemented for bargaining unit members until after the completion of substantive and/or impact and implementation bargaining to the same extent as would be required by Chapter 71.

## IV. Modification of this System

FAA reserves the right to modify, add to, or delete any portion of this personnel management system, either in whole or in part, as deemed appropriate by the Administrator.

## V. Administrative Authority

The Associate Administrator for Administration is responsible for setting the broad agency human resources policies and operating principles. These policies and principles provide the agency framework for the lines of business and staff organizations to establish the human resources programs necessary to accomplish their organizations' missions. The Director of Human Resources Management, under the executive direction of the Associate Administrator for Administration, is authorized to issue these policies and other guidance following appropriate coordination.

## VI. Pilot Programs

With the advance approval of the Associate Administrator for Administration, the head of a line of business or staff organization is authorized to implement a pilot program that deviates from the provisions of this directive. A pilot program must:

- **(a)** last for a set period of time, but no more than 3 years;
- **(b)** include specific objectives and criteria by which success will be measured; and
- **(c)** otherwise be consistent with applicable law.

## VII. Merit Principles

The FAA personnel management system shall be implemented consistent with the following merit system principles:

- **(a)** Recruitment should be from qualified individuals from appropriate sources in an endeavor to achieve a workforce from all segments of society; selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, after fair and open competition, which assures that all receive equal opportunity.
- **(b)** All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, sexual orientation, marital status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.
- **(c)** Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector; appropriate incentives and recognition should be provided for excellence in performance.
- **(d)** All employees should maintain high standards of integrity, conduct, and concern for the public interest.
- **(e)** The Federal workforce should be used efficiently and effectively.
- **(f)** Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards.
- **(g)** Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.
- **(h)** Employees should be:
  - **(i)** protected against arbitrary action, personal favoritism, or coercion for partisan political purposes; and
  - **(ii)** prohibited from using their official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for election.
- **(i)** Employees should be protected against reprisal for the lawful disclosure of information which the employees reasonably believe evidences:
  - **(i)** a violation of any law, rule, or regulation; or
  - **(ii)** mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

---

## VIII. Prohibited Personnel Practices

- **(a)** Any FAA employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority:
  - **(i)** discriminate for or against any employee or applicant for employment, on the basis of:
    - race, color, religion. sex, or national origin, as prohibited under Section 717 of the Civil Rights Acts of 1964 (42 U.S.C. 2000e-16);
    - age, as prohibited under Sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a);
    - sex, as prohibited under Section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206 (d));
    - handicapping condition, as prohibited under Section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791); or
    - marital status, sexual orientation, or political affiliation, as prohibited under any law, rule, or regulation;
  - **(ii)** coerce the political activity of any person (including the providing of any political contribution or service) or take any action against any employee or applicant for employment as a reprisal for the refusal of any person to engage in such political activity;

- ○ **(iii)** deceive or willfully obstruct any person to withdraw with respect to such person's right to compete for employment;
- ○ **(iv)** influence any person to withdrawal from competition for any position for the purpose of improving or injuring the prospects of any other person for employment;
- ○ **(v)** grant any preference or advantage not authorized by law, rule, or regulation to any employee or applicant for employment (including defining the scope or manner of competition or the requirements for any position) for the purpose of improving or injuring the prospects of any particular person for employment;
- ○ **(vi)** take or fail to take, or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of:
  - ● any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences: a violation of any law, rule or regulation; gross mismanagement, a gross waste of funds, an abuse of authority; or a substantial and specific danger to public health or safety, if such disclosure is not specifically prohibited by law, and if such information is not specifically required by Executive Order to be kept secret in the interest of national defense or the conduct of foreign affairs; or
  - ● any disclosure to the Special Counsel or to the Inspector General of an agency, or another employee designated by the head of the agency to receive such disclosures of information which the employee or applicant reasonably believes evidences a violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;
- ○ **(vii)** to take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant for employment because of:
  - ● the exercise of any appeal, complaint, or grievance right granted by law, rule, or regulation;
  - ● testifying for or otherwise lawfully assisting of any individual in the exercise of any right referred to in subparagraph VIII (a);
  - ● cooperating with or disclosing information to the Inspector General of any agency, or the Special Counsel, in accordance with applicable provision of the law; or
  - ● for refusing to obey an order that would require the individual to violate a law;
- ○ **(viii)** discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee or applicant or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account, in determining suitability or fitness, any conviction of the employee or applicant for any crime under the laws of any State, of the District of Columbia, or the United States; or
- ○ **(ix)** take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation, implementing or directly concerning, the merit system principles contained in this paragraph.
- ● **(b)** Paragraph VIII (a) shall not be construed to authorize the withholding of information from the Congress or the taking of any personnel action against an employee who discloses information to the Congress.
  - ○ **(i)** The head of each line of business or staff organization shall be responsible for the prevention of prohibited personnel practices, for the compliance with and enforcement of applicable civil service laws, rules, and regulations, and other aspects of personnel management. Any individual to whom the head of a line of business or staff organization delegates authority for personnel management, or for any aspect thereof, shall be similarly responsible within the limits of the delegation.
  - ○ **(ii)** This section shall not be construed to extinguish or lessen any effort to achieve equal employment opportunity through affirmative action or any right or remedy available to employee or applicant for employment in the civil service under:
    - ● Section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), prohibiting discrimination on the basis of race, color, religion, sex, or national origin;
    - ● Sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), prohibiting discrimination on the basis of age;

- Section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206 (d)), prohibiting discrimination on the basis of sex;
- Section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791), prohibiting discrimination on the basis of handicapping condition; or
- the provision of any law, rule, or regulation prohibiting discrimination on the basis of marital status, sexual orientation, or political affiliation.

David R. Hinson

## Table of Contents

Chapter I: Staffing
1. General Authority to Employ
2. Employment of Relatives
3. Types of Employees
4. Employment Status
5. Notification of Employment Status
6. Probationary Period
7. Selection of Employees
8. Permanent Internal Assignments
9. Temporary Internal Assignments
10. Promotion Qualifications
11. Return Rights
12. Air Traffic Controller
13. Equal Employment Opportunity Complaints
14. Downsizing
15. Flexible and Compressed Work Schedules

Chapter II: Compensation
1. Base Pay, Personnel Compensation, and Benefits
2. Classification of Positions
3. Waiver of Restriction on Re-employed Retirement Offset
4. Biweekly Pay Periods
5. Premium Pay
6. Permanent Change of Station Benefits
7. Federal Employees Pay Comparability Act
8. Highest Rate Previously Paid
9. Back Pay
10. Attendance at Meetings

Chapter III: Performance Management
1. Performance Evaluations
2. Awards
3. Discipline and Removals
4. FAA Grievance Procedure
5. FAA Appeals Procedure-Guaranteed Fair Treatment
6. FAA National Employee's Forum

Chapter IV: Training
1. Authorization to Expend Funds

2. Training Agreements
3. Continued Service Agreements
4. Fee for Service Plan

Chapter V: Labor Relations
1. Employees Rights
2. Management Rights
3. FAA National Labor-Management Partnership Council

Chapter VI: Executive Systems
1. Reassignments
2. Executive System Performance Incentive Plan
3. Adverse and Disciplinary Actions

---

# Chapter I: Staffing

1. General Authority to Employ
2. Employment of Relatives
3. Types of Employees
4. Employment Status
5. Notification of Employment Status
6. Probationary Period
7. Selection of Employees
8. Permanent Internal Assignments
9. Temporary Internal Assignments
10. Promotion Qualifications
11. Return Rights
12. Air Traffic Controller
13. Equal Employment Opportunity Complaints
14. Downsizing
15. Flexible and Compressed Work Schedules

### 1. General Authority to Employ

1. The FAA may employ such number of employees as permitted under the appropriations provided by Congress from year to year. The number of employees employed in FAA shall be determined solely by reference to the amount of funds available for the payment of personnel, compensation, and benefits. Each head of a line of business or staff organization is authorized to determine the number of employees for their organization based on the amount of funds allocated to the line of business or staff organization by the Administrator, except to the extent as the Administrator may otherwise direct.

### 2. Employment of Relatives

1. No FAA official may, with respect to any position in the FAA, appoint, employ, promote, advance, or advocate for appointment, employment, promotion or advancement, any relative. An individual may not be appointed, employed, promoted, or advanced in or to a civilian position in FAA if such appointment, employment, promotion, or advancement has been advocated by an FAA official who is a relative of the individual.

2. For purposes of this provision, "official" means any FAA employee who has the authority to appoint, employ, promote, or advance an individual, or to recommend an individual for appointment, employment, promotion, or

Case 1:08-cv-00481-RMC   Document 16   Filed 06/10/2008   Page 7 of 26

advancement in connection with employment in FAA.

3. For purposes of this provision, "relative" means an individual who is related to an FAA official as father, mother, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, husband, wife, father-in-law, mother-in-law, son-in-law, daughter-in law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepbrother, stepsister, half brother, or half sister.

## 3. Types of Employees

1. Except as restricted by this directive, each line of business and staff organization is authorized to hire any type or category of employee it deems necessary for the performance of duties related to their respective responsibilities.

## 4. Employment Status

- **(a)** Effective April 1, 1996, FAA shall use temporary and permanent appointments and utilize the following categories of employees:
  - ○ Political Appointees;
  - ○ Executive System Employees; (See PRIB 13 - "FAA Executive System")
  - ○ Permanent Employees; (See PRIB 18 - "External Hiring Options" and PRIB 22 - "Permanent Internal Assignment")
  - ○ Temporary Employees; and (See PRIB 18 - "External Hiring Options", and PRIB 23 -"Temporary Internal Assignment")
  - ○ Support Service Employees.
- **(b)** All persons in FAA occupying political appointee positions, as defined on March 31, 1996, shall continue to be political appointees after April 1, 1996. The pay, benefits, and employment rights of political appointees in FAA shall continue to be determined in accordance with the standards and procedures in effect for political appointees of the Federal Government.
- **(c)** The Executive System shall be composed of:

- ○ **Officers**: The Chief of Staff and all nonpolitical Associate Administrators and Assistant Administrators.
- ○ **Executives**: All nonpolitical positions that were designated as Senior Executive Service positions on March 31, 1996, that are not Officers. These positions may be filled on a term basis.
- ○ **Senior Professionals:** All positions that were designated as ST or SL on March 31, 1996. These positions may be filled on a temporary basis.

- **(d)** All nonpolitical positions that were in the competitive and excepted service on March 31, 1996, and that were not subject to a time-limited appointment, are converted to the status of permanent positions. Any employee encumbering such a position on or after April 1, 1996, except those employees serving under a time-limited appointment, and any employee hired into such positions on or after April 1, 1996, shall be a permanent employee for purposes of this directive.
- **(e)** All employees who were serving under a time-limited appointment on March 31, 1996, or who are hired for other than a permanent position after April 1, 1996, shall be temporary employees for purposes of this directive.
- **(f)** All employees providing support services to FAA pursuant to a contract shall be considered support service employees for purposes of this directive. Support service employees are not employees of FAA.

## 5. Notification of Employment Status

- **(a)** All employees of FAA shall be provided with written notification of their status under this directive by the Director of Human Resource Management no later than October 1, 1996.

## 6. Probationary Period

- **(a)** There shall be a probationary period of one year for new FAA employees and for FAA employees entering into a supervisory or managerial position for the first time. (See PRIB 20 - "Probationary Period")

### 7. Selection of Employees

- **(a)** Executive System
  - **(i)** Effective April 1, 1996, no vacant Officer position in the FAA shall be filled by any means other than selection and approval by the Administrator. The Administrator may, at his/her sole discretion, first solicit and consider applications for an Officer position from current Executive and/or permanent employees of FAA before advertising the position to non-FAA candidates.
  - **(ii)** Effective April 1, 1996, no vacant Executive or Senior Professional position in FAA shall be filled by any means other than selection by the head of the line of business or staff organization in which the position is located, and approval by the Administrator. The head of a line of business or staff organization may, with the approval of the Administrator, first solicit and consider applications for a vacant Executive or Senior Professional position from current FAA employees before advertising the position to non-FAA candidates. All FAA employees shall be eligible for selection to any vacant permanent and/or Executive Systems position for which they are qualified regardless of their employment status on March 31, 1996.
  - **(iii)** Nothing in this provision shall prohibit the temporary assignment of an employee into a vacant Officer, Executive position, or the designation of an individual to serve in an acting capacity during the absence of an Officer or Executive.
- **(b)** Permanent and Temporary Employees (See PRIB 18 - "External Hiring Options", PRIB 22 - "Permanent Internal Assignment" and PRIB 23 - "Temporary Internal Assignment")
  - **(i)** Effective April 1, 1996, each head of a line of business or staff organization is authorized to use any of the following methods to solicit applications from outside applicants:
  - **Central Register:** used to realize economies of scale while managing large numbers of pre-screened and highly qualified applicants.
  - **Announced Vacancies:** used to solicit applications locally, or from discontinuous geographical areas, to obtain the best available candidates through targeted recruitment.
  - **On the Spot:** used to accommodate special program needs and to staff hard-to-fill positions or facilities.
- **(c)** Support Service Employees
  - **(i)** All support service employee contracts must adhere to the standards, procedures, and limitations issued by the Associate Administrator for Research and Acquisitions.

### 8. Permanent Internal Assignments

- **(a)** Effective April 1, 1996, all FAA employees shall be eligible for selection to any vacant permanent position regardless of their employment status on March 31, 1996. A line of business or staff organization is authorized, subject to guidance from the Associate Administrator for Administration, and to use the following procedures to solicit and consider applications from FAA employees prior to advertisement of a position:

  **(i)** open competition;
  **(ii)** automatic consideration; and
  **(iii)** no formal competition.
  (See PRIB 22 - "Permanent Internal Assignment")

#### 9. Temporary Internal Assignments

- **(a)** Effective April 1, 1996, the head of a line of business or staff organization is authorized, subject to guidance from the Associate Administrator for Administration, to fill a non-Executive System position temporarily with an FAA employee either with competition or with no competition.

(See PRIB 23 - "Temporary Internal Assignment")

**10. Promotion Qualifications**

- **(a)** Effective April 1, 1996, all time in grade requirements, other than qualification requirements, for promotion of FAA employees are abolished. Time requirements may only be maintained as part of the qualification standards for a position. Employees shall be eligible for career ladder promotions when qualifications for that grade are met; however, eligibility for promotion shall not create any entitlement to promotion until all administrative requirements have been met.
  (See PRIB 21 - "Promotion Qualifications")

**11. Return Rights**

- **(a)** Effective April 1, 1996, no vacancy announcement shall include an offer of return rights unless:
  - o **(i)** the offer is required by an existing collective bargaining agreement;
  - o **(ii)** the line of business or staff organization has made a written determination that an offer of return rights is necessary for attracting employees to hard-to-staff positions or locations where other methods have failed to attract qualified applicants; or
  - o **(iii)** the offer is related to an international assignment and interchange agreements, as appropriate.
- **(b)** A determination that a position or location is hard-to-staff must be made in accordance with the following guidelines:
  - o **(i)** FAA supports interchange programs with Federal, state and local governments, educational institutions, non-profit organizations, private industry, public international organizations, and foreign governments through voluntary assignments of FAA employees and/or through hosting employees of other organizations. The FAA also may support the use of return rights to positions within FAA, when appropriate.
  - o **(ii)** FAA will no longer have a mandatory return rights program. Each line of business or staff organization should determine if there are any positions for which "blanket" return rights should be granted. Whether or not there are any "blanket" occupations/locations for which return rights are always granted (e.g., remote locales), there may be specific circumstances for which return rights would be appropriate. Each line of business or staff organization may also determine whether or not to grant return rights as the situations arise.
- **(c)** Once it has been determined that an employee will be guaranteed return rights, an individualized contract must be developed and signed by the employee and an authorized Executive in the line of business or staff organization, and filed in the employee's Official Personnel Folder or equivalent.
- **(d)** No employee will be granted return rights without a validly executed return rights agreement that fully complies with the standards and criteria established by the Associate Administrator for Administration.
- **(e)** All return right obligations incurred prior to April 1, 1996 shall be honored.**( See FAPM Letter 352-1, Reemployment Rights )**

**12. Air Traffic Controller**

- **(a)** For purposes of this directive, "air traffic controller" or "controller" means a civilian employee of FAA who, in an air traffic control facility or flight service station facility, is:
  - o **(i)** actively engaged in the separation and control of air traffic; or
  - o **(ii)** providing preflight, inflight, or airport advisory service to aircraft operations; or
  - o **(iii)** the immediate supervisor of any employee described in Paragraph 12 (a)(i) or (a)(ii).

**13. Equal Employment Opportunity Complaints**

- **(a)** Effective April 1, 1996, the Administrator of FAA shall be the "head of the agency" for purposes of receiving recommended decisions from Equal Employment Opportunity Commission administrative judges and issuing final

agency decisions under 29 CFR Part 1614 for all administrative complaints pending or filed with respect to FAA by current or former FAA employees. The Assistant Administrator for Civil Rights and the Associate Administrator for Administration are directed and authorized to take all steps necessary to effect this change.

### 14. Downsizing

- **(a)** Until superseded, the existing FAA procedures for conducting reductions in force will apply, including provisions for calculating severance pay. The Associate Administrator for Administration is authorized to determine whether employees who are eligible for severance payments will be offered the opportunity to elect payment in one or two lump sum payments, rather than on the current bi-weekly basis.
- **(b)** The Director of Human Resource Management will prepare a recommendation for the Administrator, no later than June 30, 1996, of actions that can be used to mitigate the adverse effects of a reduction in force. The recommendations might include, but are not limited to, the use of buyouts, negotiated job exchanges, and alternative separation packages. The Administrator reserves the right to modify and/or implement either in whole or in part any recommendations made by the Director.
- **(c)** Career Transition Services
  - **(i)** The Associate Administrator for Administration shall develop an agency wide Career Transition Service Program. This program will provide options for employees in an organization, facility, occupation, or position that is to be reduced. The options should include such features as: skills assessment, retraining for other FAA positions, and counseling. A reasonable amount of official time to use these services or engage in job searches will be made available to affected employees. The definition of "reasonable" will be based solely on the need to accomplish the agency mission. The amount of time will be determined on a case-by-case basis and will be applied equitably for all affected employees.
  - **(ii)** When retraining is an option, employees generally will be offered retraining opportunities for positions in FAA where managers determine that there is the greatest need. In no case will retraining be made available to an employee who has declined a continuing job with FAA that does not involve a reduction in pay. Employees receiving retraining under this provision will be required to execute an agreement to continue in service for an appropriate amount of time or to repay the cost of retraining on a pro-rated basis.
- **(d)** Selection Priority
  - **(i)** Permanent employees who receive reduction in force notices will be eligible for selection priority. This means that the employee must be selected before any non-FAA candidate for any vacancy in the employee's local commuting area, so long as the employee is well-qualified for the vacancy. At the time an employee is given a reduction in force notice, he or she may choose another location (city and state) for this consideration. In this case, the employee will agree to pay relocation costs.
  - **(ii)** Selection priority will begin as soon as the reduction in force notice is issued and will continue:
    - for 2 years from the date of separation;
    - until the employee, or former employee, accepts a permanent position at the same or a higher salary with any organization, Federal or non-Federal;
    - until the employee, or former employee, either fails to respond to or declines a job offer; or
    - asks to be removed from the program.
  - **(iii)** The employee is responsible for completing any application forms that may be required. If more than one employee is eligible for selection priority, the selecting official may choose from all eligibles.
- **(e)** Individuals who are entitled to priority consideration on the basis of recovery from compensable illness, injury, or return from military service will be given consideration in accordance with existing regulations.
  (See PRIB 24 - "Career Transition and Priority Selection")

### 15. Flexible and Compressed Work Schedules

- **(a)** FAA employees shall continue to be eligible to work flexible and compressed work schedules under the same criteria,

procedures, and limitations that were applicable on March 31, 1996, provided that effective April 1, 1996, the head of a line of business or staff organization shall have the authority to approve a part-time work schedule for any permanent employee in their line of business or staff organization. This authority may be redelegated.( See PRIB 24-"Career Transition and Priority Selection".

## Chapter II: Compensation

1. Base Pay, Personnel Compensation, and Benefits
2. Classification of Positions
3. Waiver of Restriction on Re-employed Retirement Offset
4. Biweekly Pay Periods
5. Premium Pay
6. Permanent Change of Station Benefits
7. Federal Employees Pay Comparability Act
8. Highest Rate Previously Paid
9. Back Pay
10. Attendance at Meetings

## 1. BASE PAY, PERSONNEL COMPENSATION, AND BENEFITS

- **(a)** From April 1, 1996 until September 30, 1997, the base pay for all FAA positions shall be determined at the rate of base pay in effect for that position on March 31, 1996, plus any periodic step increases, promotions, comparability increases, or locality pay otherwise available or granted to Federal employees.
- **(b)** Except as provided below, from April 1, 1996 until September 30, 1997, the personnel compensation and benefits of all FAA employees shall continue to be determined in accordance with the standards and procedures that were in effect on March 31, 1996.
- **(c)** No later than April 1, 1997, the Associate Administrator for Administration shall submit a draft Compensation Revision Plan to the heads of the lines of business and staff organizations for review. The draft shall include recommendations for further changes to FAA's method of determining the personnel compensation and pay benefits of FAA employees. After reviewing the comments of the heads of the lines of business and staff organizations, and making such changes as deemed appropriate, the Associate Administrator for Administration shall forward a final Compensation Revision Plan to the Administrator no later than September 30, 1997.
- **(d)** In drafting the Compensation Revision Plan, the Associate Administrator for Administration shall address the following initiatives and concepts:
  - **(i)** classification standards;
  - **(ii)** FAA-wide pay system;
  - **(iii)** specialized pay systems for lines of business or staff organizations;
  - **(iv)** salary-based pay system for lines of business or staff organizations;
  - **(v)** Airway Facilities Pay and Fiscal Management System;
  - **(vi)** air traffic pay system that values job complexity and compensates employees based on the level of work performed;
  - **(vii)** FLSA status of all FAA employees;
  - **(viii)** premium pay structure;
  - **(ix)** executive pay systems;
  - **(x)** time off compensation instead of double pay for an in-lieu-of-holiday;
  - **(xi)** locality pay and FAA-wide cost-of-living allowance;

Case 1:08-cv-00481-RMC    Document 16-3    Filed 06/10/2008    Page 19 of 26

- o **(xii)** pay compression;
- o **(xiii)** use of compensatory time rather than overtime;
- o **(xiv)** payment of appropriate salary or annuities to retired members of the Federal and uniform services; (PRIB 8)
- o **(xv)** line of business or staff organization flexibility to attract and retain employees for hard-to-staff facilities or positions; (PRIB 9)
- o **(xvi)** gainsharing programs; (PRIB 10)
- o **(xvii)** pay system pilot programs;
- o **(xviii)** first 40/80 hour work schedules; (PRIB 11)
- o **(xix)** permanent change of station entitlements, including more flexible reporting dates; (PRIB 12)
- o **(xx)** travel and temporary duty programs;
- o **(xxi)** annual, sick and compensatory time policy;
- o **(xxii)** pay and grade retention;
- o **(xxiii)** dual career tracks;
- o **(xxiv)** leave bank program;
- o **(xxv)** sick leave buyback exchange program;
- o **(xxvi)** reduction in force procedures;
- o **(xxvii)** permanent change of station; and
- o **(xxviii)** student loan repayments.
- • **(e)** The Associate Administrator for Administration may submit portions of the final Compensation Revision Plan to the Administrator for approval prior to September 30, 1997. The Administrator reserves the right to modify and/or implement, either in whole or in part, any recommendations made by the Associate Administrator for Administration in the final Compensation Revision Plan.

## 2. Classification of Positions

- • **(a)** The Office of Personnel Management classification standards and companion FAA classification guides shall continue to be used by FAA for classification of positions until replaced or supplemented by the Associate Administrator for Administration.
- • **(b)** No later than April 1, 1997, each head of a line of business or staff organization shall conduct a classification review of all positions in their organization. As part of this review, the number of position descriptions shall be consolidated and reduced to the maximum extent feasible. Classification level and Fair Labor Standards Act status will be verified for all remaining positions.

## 3. Waiver of Restriction on Re-Employed Retirement Offset

- • **(a)** Effective April 1, 1996, under special circumstances, a head of a line of business or staff organization may request that the Administrator approve a full to partial waiver of the required reduction to retired or retainer pay of military retirees employed by FAA. All authority to approve the waiver of salary or annuity offset that was previously vested in the Office of Personnel Management with respect to FAA on March 31, 1996, shall, to the extent permitted consistent with Chapter 83 of Title 5 of the United States Code, transfer to the Administrator of FAA effective April 1, 1996. The exercise of this authority, or the authority to approve the request for a waiver, shall rest in the sole discretion of the Administrator and shall not be delegated or reviewable in any other forum. The Administrator will exercise this authority on a case by case basis for employees in positions for which there is an exceptional difficulty in recruiting or retaining a qualified employee or in emergency situations involving a direct threat of life or property or other unusual circumstances.
- • **(b)** At the request of a head of a line of business or staff organization, the Administrator may seek a partial to full waiver from Office of Personnel Management of the required reduction of re-employed civilian annuitants' retirement pay.

**4. Biweekly Pay Periods**

- **(a)** The pay period for FAA employees will continue to cover two administrative work weeks.
- **(b)** When it is necessary for computation of pay to covert an annual rate of basic pay to a basic hourly, daily, weekly, or biweekly rate, the following rules govern:
  - **(i)** To derive an hourly rate, divide the annual rate by 2,087.
  - **(ii)** To derive a daily rate, multiply the hourly rate by the number of daily hours of service required.
  - **(iii)** To derive a weekly or biweekly rate, multiply the hourly rate by 40 or 80, as the case may be.
- **(c)** Rates are computed to the nearest cent, counting one-half and over as a whole cent.

**5. Premium Pay**

- **(a)** Eligibility for Overtime Pay
  - **(i)** Overtime work will include officially ordered and approved hours of work in excess of an employee's scheduled tour of duty, e.g., hours in excess of 40 hours in an administrative workweek, 80 hours in a pay period, five 8hour days, four 10-hour days. In the case of "quick turnarounds," time worked in excess of 8 hours in a 24 hour period, but within an employee's regularly scheduled tour of duty, does not qualify as overtime and will be paid at the basic rate. (See PRIB 6)
- **(b)** Compensatory Time Off
  - **(i)** An FAA employee whose personal religious beliefs require the abstention from work during certain periods of time may, after advance approval by his/her supervisor, elect to engage in overtime work for time lost for meeting those religious requirements. Any employee who so elects shall be granted equal compensatory time off from his/her scheduled tour of duty (in lieu of overtime pay) for such religious reasons, notwithstanding any other provision of law. Requests for compensatory time off for religious observances shall be granted unless to do so would interfere with FAA's ability to efficiently carry out the mission of the agency.
- **(c)** Sunday and Night Differential
  - **(i)** Effective April 1, 1996, or as soon thereafter as may practically be implemented, non wage-grade employees will earn Sunday premium pay at an additional rate of 25 percent of hourly base and night differential at an additional rate of 10 percent of hourly base pay for those hours actually worked on Sunday or between the hours of 6:00 PM and 6:00 AM respectively. Employees working between the Sunday hours of 6:00 PM and 11:59 PM or 12:00 AM and 6:00 AM will receive both Sunday premium pay and night differential. (Modified by PRIB 25, attachment 2)
  - **(ii)** thru (vi) Added by PRIB 25, attachment 2

**6. Permanent Change of Station Benefits**

- **(a)** Effective April 1, 1996, no employee shall be entitled to permanent change of station benefits simply by virtue of competitive selection to a position with higher grade, pay, or promotion potential. Such selections will not be considered primarily for the benefit of the Government unless the vacancy announcement or solicitation for applications included a specific statement that permanent change of station benefits were available. (See PRIB 12)

**7. Federal Employees Pay Comparability Act**

- **(a)** Effective April 1, 1996, all authority to approve payments to FAA employees under all provisions of the Federal Employees Pay Comparability Act shall be vested solely in the Administrator. This authority may be redelegated by the Administrator. (See Order 3550.15)

**8. Highest Rate Previously Paid**

- **(a)** Effective April 1, 1996, the heads of the lines of business and staff organizations shall have the authority to determine whether the pay of an employee entering into, returning to, or remaining in their organizations shall be retained at the highest rate previously paid to the employee. (See PRIB 5)

**9. Back Pay**

- **(a)** Agency funds may be used to pay back pay to an FAA employee or former employee who, as the result of a decision or settlement under the FAA Grievance Procedure, a collective bargaining agreement, FAA Appeals Procedure, or the Executive System Appeals Procedure is found by an appropriate authority to have been affected by an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due to the employee.
- **(b)** The amount of back pay shall be limited to making the employee financially whole, to the extent possible, for losses of pay (other than premium pay) to which the employee was entitled by statute or regulation by virtue of the performance of a Federal function. No employee shall be granted more pay, allowances, or differentials in back pay than would have been received if the unjustified or unwarranted personnel action had not occurred.
- **(c)** "Unjustified or unwarranted personnel action" means an act of commission or omission that an appropriate authority subsequently determines, on the basis of substantive or procedural defects, to have been unjustified or unwarranted under applicable law, Executive Order, rule, regulation, or mandatory personnel policy established by FAA or through a collective bargaining agreement. Such actions include personnel actions and pay actions, alone or in combination.
- **(d)** In calculating a back pay award, no back pay shall be awarded for:
  - o **(i)** any period during which the employee was not ready, willing, and able to perform his or her duties because of an incapacitating illness or injury; provided, however, that an employee, upon written request, may be granted any sick or annual leave available to them for a period of incapacitation if the employee can establish that the period of incapacitation was the result of illness or injury; and
  - o **(ii)** any period during which the employee was unavailable to perform their duties for reasons other than those related to the unjustified or unwarranted personnel action.
- **(e)** The following amounts shall be deducted from any amount of back pay award:
  - o **(i)** any amounts earned by an employee from other employment undertaken during the time the employee was separated or unable to perform duties because of the unjustified or unwarranted personnel action, but not including additional or "moonlight" employment the employee could have engaged in if the unjustified or unwarranted personnel action had not occurred;
  - o **(ii)** any payments received from the Government as a result of the unjustified or unwarranted personnel action which, in the case of payments received from a Federal employee retirement system, shall be returned to the appropriate system. Such payments shall be recovered from the back pay award prior to payment in the following order:
    - retirement annuity payments (except health benefits and life insurance premiums);
    - refunds of retirement contributions;
    - severance pay;
    - lump-sum payment for annual leave (and the annual leave shall be recredited for the employee's use);
    - health benefits and life insurance premiums, if coverage continued during the period of erroneous separation; and
    - other authorized deductions.
- **(f)** Annual leave restored to an employee under this provision shall be accredited to a separate leave account for use by the employee, and must be used in accordance with standards issued by the Associate Administrator for Administration.
- **(g)** Agency funds may not be used to pay either interest or attorney fees as the result of a decision in FAA Grievance

Procedure, FAA Appeals Procedure, or the Executive System Appeals Procedure.

**10. Attendance at Meetings**

- **(a)** FAA funds may be expended for attendance at meetings concerned with the functions or activities of the line of business or staff organization which will contribute to improved conduct, supervision, or management of the functions or activities of the line of business or staff organization. The amount of funds available for such training or attendance at meetings shall be determined by the head of a line of business or staff organization based on the strategic goals of the organization. Funds may be used for payment or reimbursement for travel and per diem.

---

# Chapter III: Performance Management

1. Performance Evaluations
2. Awards
3. Discipline and Removals
4. FAA Grievance Procedure
5. FAA Appeals Procedure-Guaranteed Fair Treatment
6. FAA National Employee's Forum

**1. Performance Evaluations**

- **(a)** The Performance Planning and Recognition System issued by the Director of Human Resource Management and implemented by FAA on October 1, 1995 shall remain in effect for FAA employees unless modified by the head of a line of business or staff organization.
- **(b)** FAA's Senior Executive Service Performance Plan is hereby retitled as FAA's Executive System Performance Plan. It shall remain in effect for Executive System employees for the rating periods of October 1, 1995 to September 30, 1996. No later than September 1, 1996, the Associate Administrator for Administration shall present the Administrator with a proposal on what changes, if any, should be made to FAA's Executive System Performance Plan.

**2. Awards**

- **(a)** Effective April 1, 1996, the heads of the lines of business and staff organizations are authorized to give individual or group cash, nonmonetary, or time off awards to any FAA employees for performance as part of a unit, based on the overall achievements of the unit.

**3. Discipline and Removals**

- **(a)** Except as described below, disciplinary and removal actions taken for conduct occurring on or after April 1, 1996 shall continue to be administered in accordance with FAA Order 3750.4A, "Conduct and Discipline", as it may be modified by the Associate Administrator for Administration, and all FAA collective bargaining agreements still in effect at the time action is proposed.
- **(b)** This paragraph contains the guidance and procedures for processing disciplinary actions, involuntary reduction in grade or pay, furloughs of 30 days or less (but not including placement in a nonpay status as the result of a lapse of appropriations or action by Congress), and removal actions except for employees covered by a collective bargaining agreement. Effective April 1, 1996, all actions covered by this paragraph will be taken only for such cause as will promote the efficiency of the Federal service, regardless of whether they are based on conduct or performance.
- **(c)** Definitions
  - **(i)** "Employee" means an employee of FAA who is not serving a probationary or trial period, or who has served

more than one year of service on a temporary appointment.

- o **(ii)** "Employer" means any element of FAA management who exercises direct or indirect supervision over employees.
- o **(iii)** "Suspension" means the placing of an employee, for disciplinary reasons, involuntarily in a non-duty and non-pay status.
- o **(iv)** "Grade and pay" means the grade level or rate of basic pay fixed by law or administrative action for the position held by an employee.
- o **(v)** "Day" means calendar day.
- **(d)** The procedures and standards in this paragraph do not apply to:
  - o **(i)** a reduction in grade or pay of a supervisor or manager who has not completed a probationary period if such a reduction in grade or pay is to the grade and pay held immediately before becoming a supervisor or manager;
  - o **(ii)** terminations of employees on probationary/trial periods, other than a supervisory/managerial probationary period, or whose appointment is temporary;
  - o **(iii)** a political appointee;
  - o **(iv)** actions involving an employee in FAA Executive System or on a temporary executive assignment;
  - o **(v)** an employee whose position is downgraded as a result of reclassification and who has been granted grade and pay retention;
  - o **(vi)** placement in a nonpay status as the result of a lapse of appropriations or action by Congress;
  - o **(vii)** placement on a nonduty pay status;
  - o **(viii)** actions involving an employee in a temporary appointment with less than one year in the position;
  - o **(ix)** termination of temporary promotions;
  - o **(x)** actions involving reduction in force procedures;
  - o **(xi)** termination of re-employed annuitants; or
  - o **(xii)** non-disciplinary actions involving temporary employee, i.e., furloughs, reduction in force or end of required service.
- **(e)** An employee is entitled to communicate with and seek advice from the servicing Human Resource Management Division, the Office of Civil Rights either in Washington or at the region/center, an Equal Employment Opportunity counselor, or a supervisor or management official of higher rank than the employee's immediate supervisor who will provide counsel on the procedures of the case, but will not review the merits.
- **(f)** Supervisors are responsible for determining if corrective disciplinary action is warranted. Whether the action decided upon is formal or informal, the principles set out in this section should be observed in determining the severity of the discipline. Not all factors apply in every case. Some of the factors may weigh in the employee's favor, while others may not, or may even constitute aggravating circumstances. The following factors must be considered and a responsible balance reached:
  - o **(i)** the nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
  - o **(ii)** the employee's job level and type of employment, including supervisor or fiduciary role, contacts with the public, and prominence of the position;
  - o **(iii)** the employee's past disciplinary record;
  - o **(iv)** the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
  - o **(v)** the effect of the offense upon the employee's ability to perform at a satisfactory level, and its effect upon the supervisor's confidence in the employee's ability to perform assigned duties;
  - o **(vi)** the consistency of the penalty with those imposed upon other employees for the same or similar offenses;
  - o **(vii)** the consistency of the penalty with any applicable agency table of penalties;
  - o **(viii)** the notoriety and/or egregiousness of the offense, or its impact upon the reputation of the agency;

- o **(ix)** the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;
- o **(x)** the potential for the employee's rehabilitation;
- o **(xi)** the mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice, or provocation on the part of others involved in the matter; and
- o **(xii)** the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.
- **(g)** All written notices of proposed disciplinary or removal actions covered by this policy must be delivered to the employee in advance of the proposed effective date, and will contain the following information:
  - o **(i)** the specific reason(s) for the proposed action in sufficient detail for the employee to make a reply;
  - o **(ii)** a statement informing the employee of the right to make an oral and/or written reply, the time limits to do so, and to whom the reply should be made;
  - o **(iii)** a statement of the employee's right to have representation during the reply period; and
  - o **(iv)** a statement of the employee's right to review all of the material relied upon to support the proposed action and copies unless otherwise prohibited by law.
- **(h)** Written Reprimand
  - o **(i)** A decision to issue a written reprimand is made by the official who signs the reprimand, usually the immediate supervisor. No advance notice is required. The employee may file an oral and/or written reply within 15 days from receipt of the reprimand. If the reprimand is sustained, it will be placed in the employee's Official Personnel Folder, along with the employee's response. If no reply is made within these time limits, the reprimand will be placed in the employee's Official Personnel Folder for a period of time not to exceed two years.
- **(i)** Suspensions
  - o **(i)** A written notice of the proposed action will be signed by the deciding official and given to the employee at least 15 days before the proposed effective date of the suspension. Employees will have 15 days from the date they are given the notice to reply either orally and /or in writing, except as provided for in Paragraph 3(r). After receipt and consideration of the employee's timely reply, the deciding official will issue a final decision. If no reply is made within these time limits, the deciding official will issue the final decision within ten days. Documentation of the suspension shall be maintained in the employee's Official Personnel Folder.
- **(j)** Reduction in Grade or Pay
  - o **(i)** A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days in advance of the proposed effective date. Employees will have 15 days from the date they are given the notice to respond orally and/or in writing. After receipt and consideration of the employee's timely reply, the deciding official will issue a final decision within ten days. If no reply is made within these time limits, the deciding official will issue the final decision.
- **(k)** Removal
  - o **(i)** A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days prior to the proposed effective date, except as provided in Paragraph 3(r). Employees will have 15 days from the date they are given the notice to make an oral and/or written reply. After receipt and consideration of the employee's timely reply, the deciding official will issue the final decision within ten days. If no reply is made within these time limits, the deciding official will issue the final decision.
- **(l)** Furlough
  - o **(i)** A written notice of the proposed action will be signed by the deciding official and given to the employee at least 30 days prior to the proposed effective date. Employees will have 15 days from the date they are given the notice to make an oral and/or written reply. After receipt and consideration of the employee's timely reply, the deciding official will issue the final decision within ten days. If no reply is made within these time limits, the

deciding official will issue the final decision.

- **(m)** The coordination requirements with FAA Office of Civil Rights for employees who have filed Equal Employment Opportunity complaints shall remain in effect after April 1, 1996.
- **(n)** An employee is entitled to have a representative or attorney of his/her choice to be present during the presentation of any reply to the deciding official, provided the attendance of the representative or attorney does not require a delay in the proceedings. The employee may also designate his/her representative to make the reply, on their behalf, to the deciding official. If the employee's representative is an FAA employee, he/she shall be excused absence, if otherwise in a duty status, to be present during the reply presentation; however, the request for representation by an FAA employee can be denied if either operational considerations or the nature of the requested representative's official duties presents a conflict. A decision to deny a request for representation by an FAA employee shall be made by the head of the requested representative's line of business or staff organization. Travel for the employee's representative will not be paid by FAA. Employees will be accommodated with schedule changes, as necessary, to perform their duties as representatives.
- **(o)** Employees and/or their designees will be given an opportunity to make an oral and/or written reply within the time limits specified above and to furnish affidavits and other documentation in support of their reply. If the deciding official cannot receive the oral reply personally, a management representative can be designated to receive the reply on behalf of the deciding official. In either case, the individual hearing the oral response will prepare a written summary. The written summary and a copy of any written reply will be forwarded to the deciding official. A copy of the summary will be provided to the employee.
- **(p)** An employee who is otherwise in a paid duty status will be given up to 16 hours of excused absence to review the material relied upon and to prepare any reply to a proposed suspension, reduction in grade or pay, or removal. The timing of the grant of excused absence shall, to the maximum extent possible, (but consistent with operational needs), be scheduled at the employee's convenience.
- **(q)** A final decision shall contain the following information:
  - ○ **(i)** the effective date of the action, if appropriate;
  - ○ **(ii)** a statement of which charge(s) and/or reason(s) were sustained and which were not;
  - ○ **(iii)** a statement advising the employee of the right to file an appeal, the time limits to file such an appeal, and to whom such an appeal must be filed; and
  - ○ **(iv)** a statement advising the employee of the right to seek counseling for an Equal Employment Opportunity complaint, the time limits for seeking counseling, and whom the employee must contact.
- **(r)** When there is reasonable cause to believe an employee has committed a crime for which a sentence of imprisonment may be imposed, or when, by the employee's conduct, continued presence in the work place poses an imminent threat to employees and/or agency property, the advanced notice period specified above is not required. In such cases, the employee may be given a shortened notice and reply period, but not less than seven days from the date the employee is given the notice of proposed action. In addition, an employee may be removed from the work site and placed in a nonduty pay status until the final decision is effected without prior written notice, at any time management determines that it is not in the best interest of the agency for the employee to remain in a duty status. Placement in a nonduty pay status is not an adverse action and may not be appealed by an employee.
- **(s)** Supervisors and managers shall consult with their Human Resource representatives before issuing a proposed action under this policy.
- **(t)** Employees may appeal:
  - ○ **(i)** written reprimands, denials of within grades, and suspensions of 14 days or less by filing a written grievance as provided by the agency grievance procedure; and
  - ○ **(ii)** suspensions of more than 14 days, reductions in grade or pay, furloughs of 30 days or less, and removals under FAA Appeals Procedure.
- **(u)** When an employee is given advance notice, the official who proposed the action will establish a disciplinary file. The file will be retained in the servicing Human Resource Management Division if the proposed action is taken. If the

Case 1:08-cv-00481-RMC Document 16-3 Filed 06/10/2008 Page 19 of 26

employee appeals, the file will become the appeal file, and a copy will be provided to the panel at the panel's request. The file shall contain the advance notice and any employee response, material relied on to support the notice, correspondence or notations of conversations with the employee, the written summary of an oral response, a copy of the final decision, and a copy of the employee's appeal.

**4. FAA Grievance Procedure**

- **(a)** Effective April 1, 1996, the following grievance procedure shall be implemented for all employees of FAA not covered by a collective bargaining grievance procedure. This FAA Grievance Procedure shall be the sole and exclusive method by which such employees can seek relief from the FAA, Department of Transportation, and/or the United States Government for issues related to the matters covered by this paragraph. Employees and supervisors involved in grievances shall be free from restraint, interference, coercion, discrimination, reprisal, and intimidation in connection with their respective roles in such proceedings. Actions on the part of employees or supervisors intended to intimidate, coerce, or take reprisal against witnesses offering information in such cases are expressly prohibited and can result in disciplinary action.
- **(b)** The following matters are covered by the provisions of the new FAA Grievance Procedure:
  - **(i)** adverse or disciplinary actions covered under agency wide orders or directives, except for those matters subject to appeal under the FAA Appeals Procedure or the Executive System Appeals Procedure (this includes sustained written reprimands, denials of within grade increases, and suspensions of 14 days or less);
  - **(ii)** matters of personal concern or dissatisfaction to an employee that are subject to control of FAA management or any matter in which an employee alleges that coercion, reprisal, or retaliation have been practiced against him/her.
- **(c)** The FAA Grievance Procedure shall not apply to:
  - **(i)** any employee covered by a collective bargaining agreement;
  - **(ii)** retirement;
  - **(iii)** life or health insurance;
  - **(iv)** national security determinations under 5 U.S.C. Section 73;
  - **(v)** revocation or denial of security clearances;
  - **(vi)** examination, certification, or appointment;
  - **(vii)** classification of any position that does not result in reduction in grade or pay;
  - **(viii)** removal of an employee on a trial or probationary period;
  - **(ix)** matters relating to overtime entitlement or designation of status under Fair Labor Standards Act;
  - **(x)** nonselection for selection priority retention or promotion from a list of properly ranked and/or certified candidates;
  - **(xi)** decisions by a manager to fill a vacant position with no competition, either permanently or temporarily;
  - **(xii)** an action taken in accordance with the terms of a formal agreement voluntarily entered into by an employee and the agency;
  - **(xiii)** a decision on an earlier grievance;
  - **(xiv)** matters involving waiver of annuity or salary offset;
  - **(xv)** matters involving highest previous rate determinations;
  - **(xvi)** matters involving requests for part-time work schedules;
  - **(xvii)** matters that are covered by any other statutory appeals process; and
  - **(xviii)** matters that are subject to appeal under FAA Appeals Procedure or the Executive System Appeals Procedure.
- **(d)** For purposes of this section:
  - **(i)** "Day" means calendar day.
  - **(ii)** "Employee" means an employee of FAA who is not serving a probationary or trial period, or who has served more than one year service on a temporary appointment.

- o **(iii)** "Personal relief" means a specific remedy personally benefiting the grievant(s), but shall not include disciplinary action or other action affecting another employee.
- **(e)** Stage 1: Problem Solving
  - o **(i)** If an employee wishes to seek relief on a covered matter other than the denial of a within grade increase, a suspension of 14 days or less, or a written reprimand, he/she must submit the issue to his/her first level supervisor either orally or in writing within ten days of the incident, or within ten days of the time the employee knew or may have been reasonably expected to have learned of the event.
  - o **(ii)** A meeting shall be held within ten days of receipt of notification by the first level supervisor to allow the employee to freely present, receive, and exchange information and views on the situation. The employee may have a representative present during the meeting. If the representative is an FAA employee and is otherwise in a duty status, the representative will be granted excused absence for attendance at the meeting. The FAA will not pay travel or per diem. A resolution will be sought, and if one is reached, it will be acted upon with mutual agreement. Resolution is highly encouraged at this level, and the supervisor may use whatever tools necessary to resolve the issue at this level.
  - o **(iii)** If no resolution is reached within ten days after the meeting, the grievance can be elevated to the formal stage by the employee, in writing, with the next level manager. This formal grievance must be filed within 15 days of the resolution meeting.
  - o **(iv)** Grievances involving denials of within grade increases or suspensions of 14 days or less must be filed at the formal stage within ten days of receipt of the decision letter. The formal grievance must be filed with the next level above the deciding official for the denial or suspension. Grievances involving written reprimands must be filed at the formal stage within ten days of the date the reprimand was sustained with the next level above the deciding official.
- **(f)** Stage 2: Formal
  - o **(i)** A meeting shall be held with the manager who received a formal grievance within ten days of filing to allow the employee to freely present, receive, and exchange information and views on the situation. The employee is entitled to have a representative present during this meeting. Employees may designate their representative to present the grievance. If the employee's representative is an FAA employee, he/she shall be given duty time to be present during the presentation; however, the request for representation by an FAA employee can be denied if either operational considerations or the nature of the requested representative's official duties presents a conflict. A decision to deny a request for representation by an FAA employee shall be made by the head of the requested representative's line of business or staff organization.
  - o **(ii)** The manager has ten days from the close of the meeting with the employee to resolve the grievance. The decision shall be in writing and will specify what relief is granted or why the grievance is denied. This decision is the final decision of FAA Grievance Procedure and shall be issued at the sole discretion of the manager. The final decision of FAA Grievance Procedure is not subject to review in any other forum.
- **(g)** A grievance can be canceled:
  - o **(i)** at the employee's request;
  - o **(ii)** as the result of a settlement agreement;
  - o **(iii)** upon the death of the employee, unless the grievance involves a financial consideration on the part of the employee;
  - o **(iv)** for the failure of the grievant to comply with the appropriate time frames and procedures contained in this policy; or
  - o **(v)** when the grievant has previously filed or later files a formal appeal, complaint, or other challenge on the same matter.

## 5. FAA Appeals Procedure-Guaranteed Fair Treatment

- **(a)** In order to provide Guaranteed Fair Treatment to employees, the FAA establishes, effective April 1, 1996, the

Case 1:08-cv-00481-RMC    Document 16-3    Filed 06/10/2008    Page 21 of 26

following FAA Appeals Procedure. This procedure covers cases involving suspensions of more than 14 days; reductions in pay or grade; removals for conduct, performance or non-disciplinary removals; furloughs of 30 days or less (but not including placement in a nonpay status as the result of a lapse of appropriations or action by Congress); and reduction in force actions. The FAA Appeals Procedure is the only method by which employees not covered by a collective bargaining agreement may seek administrative review of claims arising out of a covered action, except for claims which may be reviewed under a statutorily mandated administrative appeal process.

- **(b)** Employees and supervisors involved in appeals shall be free from restraint, interference, coercion, discrimination, reprisal, and intimidation in connection with their respective roles in such proceedings. Actions on the part of employees or supervisors intended to intimidate, coerce, or take reprisal against witnesses offering information in such cases are expressly prohibited and can result in disciplinary action.
- **(c)** For purposes of this section:
  - o **(i)** "Day" means calendar day.
  - o **(ii)** "Partisan" means an employee of FAA who is knowledgeable of the working conditions, environment, and practices where the appeal was filed. A person cannot be designated as a partisan if they were directly involved with the case. A designated partisan cannot have served as an advocate for FAA or employee in any phase of the disciplinary or removal action being appealed. The partisan for management cannot be the proposing official or the deciding official.
  - o **(iii)** "Employee" means a permanent employee of the FAA who is not serving a probationary or trial period.
- **(d)** Employees wishing to appeal a covered action must submit the appeal to the next level above the deciding official within ten days of the date the decision is given to them. The appeal must be in writing and contain all of the supporting documentation and a statement of the specific relief requested.
- **(e)** A panel will be designated within ten days of receipt of the appeal by the management official. The panel shall be comprised of three persons: one partisan selected by the deciding official from within the FAA where the appeal was generated, one partisan selected by the appellant from within FAA, and one arbitrator. Partisans shall be selected from an area as close as possible to the location of the hearing while meeting all the criteria for partisans outlined above. Partisans shall be on official time while performing their responsibilities as members of the panel. The arbitrator shall set aside a period of time to instruct the partisans in due process, how to weigh evidence and testimony, and how to judge the merits of the case.
- **(f)** A pool of three to five arbitrators will be selected and maintained by each servicing Human Resource Management Division for use in the appeals process. Selection of the arbitrator from the pool will be by mutual agreement of the appellant and the deciding official, or by alternative striking of names by the appellant and the deciding official until one selection remains. The servicing Human Resource Management Division will provide logistical support for program implementation and maintenance.
- **(g)** The hearing shall take place as soon as is practicable. There will be no discovery for either side but the parties shall exchange documents and witness lists ten days before the hearing. Hearings will be scheduled during normal administrative duty hours. If they choose a representative, the appellant and the deciding official shall designate their representatives and inform the other party in writing prior to the hearing date. If the appellant requests an FAA employee as a representative, that request can be denied if either operational considerations or the nature of the requested representative's official duties present a conflict. A decision to deny a request for representation by an appellant shall be made by the head of the requested representative's line of business or staff organization.
- **(h)** The panel will convene within the commuting area of the appellant whenever possible. If the hearing cannot be held in the commuting area, FAA shall pay the appellant's travel to the hearing, regardless of whether the appellant is in a paid duty status. The FAA will accommodate employees with schedule changes as necessary if the employee is otherwise in an active duty status, to attend and participate in the hearing as a witness, appellant, or representative. All time frames may be extended by the panel with mutual written agreement of the deciding official and the appellant.
- **(i)** There shall be a verbatim transcript prepared of the hearing. Copies of transcripts must be ordered by the parties

from the official court reporter. All appeal records and documents from the hearing will be maintained in accordance with applicable agency rules and laws.

- **(j)** Each party is responsible for securing their own witnesses. Each party will be responsible for paying the travel costs for their witnesses and representatives, except for employees of FAA who are summoned to testify by the panel as witnesses. Such employees shall be on official time, including travel and per diem.

- **(k)** The panel will render a written decision within ten days of hearing the case. Decisions made by the panel will be final and binding, but not precedential. The panel shall have no authority to mitigate the penalty on performance cases but shall have the authority to mitigate the penalty on cases involving conduct. The panel shall be limited to ruling on the merits of the case and the application of agency rules and laws. The panel shall not reverse or mitigate an action based on a finding of violation of agency rules, unless the record demonstrates more likely than not, that absent the violation, the deciding official would have reached a different decision. The ruling will be made by majority vote of the panel.

- **(l)** The decision of the panel may include an award of back pay; however, no attorney or representation fees for the appellant will be ordered by the panel or paid by FAA.

- **(m)** Decisions of the panel shall be issued as final orders of the Administrator under 49 U.S.C. Section 46110. An appellant may seek judicial review of the panel's order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit, or in the court of appeals of the United States for the circuit in which the appellant resides, no later than 60 days after the panel's decision is issued.

- **(n)** Claims of statutorily prohibited discrimination may not be raised in FAA Appeals Procedure. The FAA Appeals Procedure shall be designated as an alternative disputes resolution process for purposes of 29 CFR Part 1614. Accordingly, if an employee wishes to raise a claim of statutorily prohibited discrimination, with respect to a matter that is subject to appeal under FAA Appeals Procedure, the employee must:

  - o **(i)** contact an Equal Employment Opportunity counselor no later than 45 days after the effective date of the action being appealed;
  - o **(ii)** file an appeal under FAA Appeals Procedure in accordance with the time limits stated above;
  - o **(iii)** complete FAA Appeals Procedure and receive a final decision; and
  - o **(iv)** file a formal complaint of discrimination within ten days of receipt of the final FAA Appeals Procedure decision, or within 90 days of the first contact with the Equal Employment Opportunity counselor.

## 6. FAA National Employee's Forum

- **(a)** The FAA shall establish an Employee's Forum so that employees will have the opportunity to express their opinion on matters affecting their membership, regardless of job, grade series, or pay band. The Employee's Forum will serve as a vehicle to gather general input on specific issues as requested by senior management and as originated by individual employees or employee groups. Special Emphasis Groups and Employee Associations whose constituency primarily focuses on civil rights matters will have an opportunity to provide input on matters related to FAA's Equal Employment Opportunity, Affirmative Action, and diversity initiatives as mandated by law.

- **(b)** The Employee's Forum will have as its core members the Administrator (ex officio), the Deputy Administrator (ex officio), the Assistant Administrator for Civil Rights, the Director of Human Resource Management, the National Special Emphasis Program Managers, and the National Presidents of the Employee Associations. Other employees may be invited to attend as deemed appropriate by the Administrator.

- **(c)** The FAA will provide training to members of the Forum that is designed to ensure the success of the Forum. Such training may include team building, dispute resolution, partnering for success, Equal Employment Opportunity, Affirmative Action, and other types of training.

## Chapter IV: Training

1. Authorization to Expend Funds
2. Training Agreements
3. Continued Service Agreements
4. Fee for Service Plan

## 1. Authorization to Extend Funds

- **(a)** All the heads of the lines of business and staff organizations, in accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, are authorized to expend funds to provide or reimburse their employees for technical, management, or career development training. This includes: reimbursement of tuition expenses in pursuit of a formal degree or certificate program at an accredited institution of higher learning, training for the purposes of qualifying for another career field when approved under a job loss retraining program, and membership fees in professional societies. To the extent authorized by regulation of the President, contributions and awards incident to training in non-Government facilities and payment of travel, subsistence, and other expenses incident to attendance at meetings, may be made to and accepted by an FAA employee without regard to 18 U.S.C. Section 209, if the contributions, awards, and payments are made by an organization determined by the Secretary of the Treasury to be an organization described by 26 U.S.C. Section 501(c)(3), as exempt from taxation under 26 U.S.C. Section 501(a). When a contribution, award, or payment, in case or in kind, is made to an FAA employee for travel, subsistence, or other expenses, an appropriate reduction shall be made from payment by FAA to the employee for travel, subsistence or other expenses incident to training in a non-Government facility or to attendance at a meeting.

## 2. Training Agreements

- **(a)** The head of a line of business or staff organization, or the Associate Administrator for Administrator on behalf of the Administrator, is authorized to enter into agreements with other agencies in any branch of the Government, on a reimbursable basis, for:
  - **(i)** use of Government facilities under the jurisdiction or control of the other agencies in any branch of Government;
  - **(ii)** extension to FAA employees of training programs of other agencies; and
  - **(iii)** use of FAA facilities and training programs by other Government agencies.
- **(b)** In accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, the heads of the lines of business or staff organizations, or the Associate Administrator for Administration on behalf of the Administrator, are authorized to make agreements or other arrangements for the training of FAA employees by, in, or through non-Government facilities. Agreements or arrangements may not be made for payment for training of an FAA employee:
  - **(i)** by, in, or through a non-Government facility which teaches or advocates the overthrow of the Government of the United States by force or violence;
  - **(ii)** by or through individuals concerning whom determination has been made by a proper Government administrative or investigatory authority that, on the basis of information or evidence developed in investigations and procedures authorized by law or Executive Order, there exists a reasonable doubt of their loyalty to the United States; or
  - **(iii)** by, in, or through a non-Government facility a substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; or participating or intervening, including publishing or distributing statements, in a political campaign on behalf of a candidate for public office.
- **(c)** In accordance with such written guidance as the Associate Administrator for Administration may deem appropriate, heads of FAA training facilities and training programs are authorized to make agreements or other arrangements for the training of non-Government employees or use of FAA training facilities by non-Government organizations on a reimbursable basis when this serves as the mission of the agency and is otherwise consistent with

applicable law.

### 3. Continued Service Agreements

- **(a)** The heads of the lines of business or staff organizations, or the Associate Administrator for Administration on behalf of the Administrator, may require continuous service agreements as a condition of attending training of substantial duration or cost. Employees shall agree in writing before commencing such training that they will:
  - ○ **(i)** continue in the service of FAA following completion of the training for a specified period of time, not to exceed one year, for each instance of training or pay the Government the amount of the additional expense incurred by FAA in connection with their training if they are voluntarily separated from service with FAA before the end of the period for which the employee has agreed to continue in FAA service.
- **(b)** The payment agreed to under Paragraph 3(a)(i) is recoverable by FAA from employees or their estates by:
  - ○ **(i)** set off against accrued pay, compensation, amount of retirement credit, or other amounts due the employee from the Government; and
  - ○ **(ii)** such other methods as provided by law for the recovery of amounts owing to the Government.
- **(c)** The Administrator may, in an exercise of discretion, waive in whole or in part, a right of recovery under this paragraph if the Administrator decides that the recovery would be against equity and good conscience or against the public interest. A decision to deny waiver, either in whole or in part, shall not be reviewable in any forum.

### 4. Fee for Service Plan

- **(a)** No later than October 1, 1996, the Associate Administrator for Administration shall submit a Fee for Service Plan to the Administrator. This plan shall contain recommendations on the methods by which FAA can establish a program to provide services to private or governmental entities in exchange for a fee that will be retained by FAA. The Administrator reserves the right to implement, either in whole or in part, any recommendation made by the Associate Administrator for Administration, provided that the recommendation is otherwise consistent with applicable law.

---

## Chapter V: Labor Relations

1. Employees Rights
2. Management Rights
3. FAA National Labor-Management Partnership Council

### 1. Employees Rights

- **(a)** The FAA, all FAA employees, and all labor organizations representing FAA employees shall have the same rights, and be subject to the same responsibilities and limitations, as are available to all Federal agencies, employees, and labor organizations under 5 U.S.C. Chapter 71. Each FAA employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal; and each employee shall be protected in the exercise of such rights.

### 2. Management Rights

- **(a)** Consistent with 5 U.S.C. Section 7106 and Executive Order 12871, FAA reserves the authority of its management officials.

### 3. FAA National Labor-Management Partnership Council

- **(a)** The FAA and its unions have established a National Labor-Management Partnership Council (NLMPC). This

council will integrate and coordinate activities of the various labor management partnerships within the agency and will interact with the Department of Transportation's Labor Management Partnership Council.

- **(b)** The NLMPC shall be strategically focused and shall provide direction for agency partnerships. It will also assure that adequate resources and training are provided to the partnerships, establish policy and guidelines for measuring and evaluating the effectiveness of partnerships, and measure and evaluate responsiveness to the public.
- **(c)** The NLMPC will be comprised of thirteen members: four Associate Administrators or designees from lines of business with bargaining units, seven union representatives (one from each union within FAA), one representative from the Office of Civil Rights, and one Executive Advisor (Program Director of Labor and Employee Relations). All members of the NLMPC shall be current employees of FAA.
- **(d)** The NLMPC will operate under the following guidelines:
  - **(i)** conduct the initial NLMPC organizational meeting prior to June 30, 1996, with subsequent quarterly meetings;
  - **(ii)** will approve and issue a Partnership Model;
  - **(iii)** respect institutional values of the agency, as well as each line of business or staff organization, unions, and recognized organizations;
  - **(iv)** assess issues to be addressed in terms of probability of success and strategic goals of the agency;
  - **(v)** balance the interest of the public and FAA employees;
  - **(vi)** utilize a binding consensus decision making process, (the decisions of the NLMPC are not subject to third party review); and
  - **(vii)** publish agendas and minutes of NLMPC meetings.

---

## Chapter VI: Executive Systems

1. Reassignments
2. Executive System Performance Incentive Plan
3. Adverse and Disciplinary Actions

### 1. Reassignments

- **(a)** Employees in FAA Executive System may not be involuntarily reassigned within 120 days after the appointment of the Administrator, or within 120 days after the appointment of the employee's most immediate supervisor who is a political appointee and has the authority to make an initial appraisal of the employee's performance.

### 2. Executive System Performance Incentive Plan

- **(a)** Effective April 1, 1996, the Administrator or the head of a line of business or staff organization may pay a performance incentive to an employee in the Executive System in accordance with the criteria that were in effect for Senior Executive Service employees on March 31, 1996; no approval other than that of the Administrator's shall be necessary or required for the payment of such an incentive. The total amount available to a line of business or staff organization to pay incentives to employees in the Executive System after April 1, 1996, shall be determined solely by the Administrator.
- **(b)** No later than April 1, 1997, the Associate Administrator for Administration shall present a draft Executive System Performance Incentive Plan to the heads of the lines of business and staff organizations for review and comment. This plan shall design a long-term incentive plan for the Executive System that will include procedures for establishing and reporting long-term objectives.
- **(c)** After reviewing the comments by the heads of the lines of business and staff organizations, and making such changes as deemed appropriate, the Associate Administrator for Administration shall forward a final Executive Systems Incentive Plan to the Administrator no later than June 1, 1997. The Administrator reserves the right to

Case 1:08-cv-00481-RMC   Document 16-3   Filed 06/10/2008   Page 20 of 26

implement, either in whole or in part, any recommendations made by the Associate Administrator for Administration in the final plan.

**3. Adverse and Disciplinary Actions**

- **(a)** Except as provided below, effective April 1, 1996, employees in FAA Executive System may be disciplined, downgraded, suspended, and/or removed in accordance with the procedures and standards contained in Chapter III that are applicable to all other agency employees.
- **(b)** The FAA Administrator or the heads of the lines of business or staff organizations, for employees in their organizations, shall be the final authority on whether any FAA Executive System employee should be disciplined, downgraded, suspended, and/or removed.
- **(c)** An Executive System employee wishing to appeal an adverse or disciplinary action must use the agency wide appeal procedure unless and until the Administrator approves another procedure.



This page can be viewed online at:
https://employees.faa.gov/org/staffoffices/ahr/policy_guidance/hr_policies/pms/personnel/

Case 1:08-cv-00481-RMC #23 Document 16-4 Filed 10/10/2008


**Employee Site**

# FAA National PRIB #25 - Quarter Report 4/1-6/30/96

Updated: 12:58 pm ET November 8, 2006

## Quarter Report 4/1-6/30/96

July 1, 1996

**Purpose:** To communicate changes issued to the Personnel Management System (FAA PMS) and to Personnel Reform Implementation Bulletins (PRIB's) from April 1 - June 30, 1996.

**SUMMARY OF CHANGES**

**EXPLANATION OF CHANGES:**

1. FAA PMS Modification No. 1 - Dated: 6/11/96 Sunday/Night Pay

Modification No. 1 Amends Chapter 2, Section 5 (c), Sunday and Night Differential.

2. Federal Aviation Personnel Manual (FAPM) Bulletin 5545 - Dated: 6/7/96 Sunday/ Night Pay

Changes PRIB #007 to clarify night differential and unscheduled overtime, and revises the list of FAA Order 3550.10 paragraphs deleted by PRIB #007.

**Implementing authority:**

/s/
**R. B. Thoman**
**Director of Human Resource Management**

For additional information or assistance, contact your servicing Human Resource Management Division.

ATTACHMENT I

**FEDERAL AVIATION PERSONNEL MANUAL FAPM BULLETIN**

**FAPM Bulletin No. 5545**

**SUBJECT:** Sunday/Night Pay

**DATED:** May 31, 1996

To clarify night differential and unscheduled overtime, and revise the listing of 3550.10 paragraphs deleted by PRIB #007.

This Bulletin should be used with FAA Personnel Management System (FAAPMS) document dated March 28, 1996, modifications to FAAPMS, and PRIB #007 effective April 1, 1996.

**Policy/Guidance**

Full-time GS employees will earn Sunday, premium pay at an additional rate of 25% of their hourly rate of basic pay for all non-overtime hours actually worked on Sunday. All GS employees will earn night differential at an additional rate of 10% of their hourly rate of basic pay for all regularly scheduled hours actually worked between 12 am and 6 am, and/or 6 pm and 12 am. Unscheduled overtime hours are excluded from night differential as they were prior to April 1, 1996.

**This Bulletin deletes the following:**

FAA Order 3550. 10. Paragraphs as follows.
.62g (1) and (3); 62h; 62i; 62j(l) and (2), and 62k;
.96c; 97a; 97b; 97c, 97f and 97g;
.98a(2), (3) and (4); 98b (all), and 98c(2) and (3)

**This is a comprehensive listing of delete paragraphs and replaces the listing contained in PRIB #007.**

Use this Bulletin in conjunction with:

FAA Personnel Management System (FAA PMS) Chapter II.
Section 5 (c) FAA Order 3550. 10. except those paragraphs indicated above

**Implementing authority:**

/s/
**Kay Frances Dolan**
**Director of Human Resource Management**

**Inquiries:** Pay and Performance Management Functional Team. AHR-28
**Distribution:** All Operating Payroll Offices and Human Resource Management Offices
FAPM Bulletin Expires when PRIB #007 is replaced

### ATTACHMENT II

**MODIFICATION TO FAA PERSONNEL MANAGEMENT SYSTEM**
**MODIFICATION NUMBER: I**
**SUBJECT:** Sunday/Night Pay

Pursuant to my authority under Paragraph IV, page iii of the Federal Aviation Administration Personnel Management System, March 28. 1996, I hereby amend Chapter 2, Section 5 of FAA's Personnel Management System to read as follows:

(c) Sunday and Night Differential

(i) Effective April 1. 1996, or as soon thereafter as may practically be implemented, full-time GS employees will earn Sunday premium pay at an additional rate of 25 percent of hourly base for those non overtime hours actually worked on Sunday.

(ii) Effective April 1, 1996, or as soon thereafter as may practically be implemented. GS employees will earn night differential at an additional rate of 10 percent of hourly base pay for those regularly scheduled hours actually worked between the hours of 6 pm and 6 am.

(iii) Employees working between the Sunday hours of 12 am and 6 am and/or 6 pm and 12 am will receive both Sunday premium pay and night differential.

(iv) Definitions:

(a) "Regularly scheduled hours" are those hours to be worked which are identified in advance of the administrative workweek.

(b) "Actually worked hours" do not include hours of paid leave.

/s/
**David Hinson**
**Administrator**